## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| NORTHWEST HARDWOODS, INC., *et al.*,[1] | ) | Case No. 20-13005 (___) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

## MOTION OF DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO (A) PAY CLAIMS OF TRADE CREDITORS AND (B) MAINTAIN CUSTOMER PROGRAMS AND SATISFY RELATED PREPETITION OBLIGATIONS, AND (II) GRANTING RELATED RELIEF

Northwest Hardwoods, Inc. and its affiliated debtors and debtors-in-possession (each, a "Debtor," and collectively, the "Debtors") respectfully submit this motion (this "Motion") for entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** (the "Interim Order") and **Exhibit B** (the "Final Order" and, together with the Interim Order, the "Proposed Orders"), pursuant to sections 105(a), 363(b), 503(b)(9), 1107(a) and 1108 of title 11 the United States Code (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9013-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), that (i) authorize, but do not direct, the Debtors to (a) pay certain allowed claims (the "Trade Claims") for goods or services related to the Debtors' operations and other claims of creditors (collectively, the "Trade Creditors") arising prepetition and in the ordinary course of business, consistent with past practice and (b) maintain their customer programs

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Northwest Hardwoods, Inc. (5401), Hardwoods Intermediate Holdings II, Inc. (7760), and Hardwoods Holdings, Inc. (3443).  The location of the Debtors' service address in these chapter 11 cases is: 1313 Broadway, Suite 300, Tacoma, WA 98402.

and satisfy related prepetition obligations, and (ii) grant certain related relief.  In support of this

Motion, the Debtors rely upon and incorporate by reference the *Declaration of Nathan Jeppson in*

*Support of Debtors' Chapter 11 Petitions and Requests for First Day Relief* (the "First Day

Declaration"), which is filed concurrently herewith.[2]  In further support of this Motion, the Debtors

respectfully represent as follows:

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has

jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of*

*Reference* from the United States District Court for the District of Delaware dated as of February

29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).  The Debtors

confirm their consent pursuant to Local Rule 9013-1(f) to the entry of a final order by the Court in

connection with the Motion to the extent it is later determined that the Court, absent consent of the

parties, cannot enter final orders or judgments in connection herewith consistent with Article III

of the United States Constitution.

2.      Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory and legal predicates for the relief requested herein are sections 105(a),

363(b), 503(b)(9), 1107(a) and 1108 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004,

and Local Rule 9013-1.

## BACKGROUND

4.      On the date hereof (the "Petition Date"), each of the Debtors commenced a voluntary

case under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases").  Pursuant to

---

[2]     All capitalized terms used and not defined herein shall have the meanings ascribed to them in the First Day
Declaration.

sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are continuing to operate their businesses and manage their financial affairs as debtors in possession.

5.      On October 21, 2020, the Debtors executed a Restructuring Support Agreement (as may be amended, supplemented, or otherwise modified from time to time in accordance with its terms, and including all annexes, exhibits and schedules thereto, the "RSA") with (a) certain holders of the Secured Notes Claims (the "Ad Hoc Noteholder Group") and (b) certain affiliates of Littlejohn & Co. LLC (collectively, the "Sponsor Equityholder").   Subsequently, shareholder Forest Field Limited (together with the Sponsor Equityholder and the Ad Hoc Noteholder Group, the "Consenting Stakeholders") signed the RSA.  The Consenting Stakeholders under the RSA collectively hold more than 95% of the Secured Notes Claims and hold approximately 94% of the outstanding common stock in Debtor Hardwood Holdings, Inc.  The RSA sets forth the principal terms of the Restructuring Transactions and requires the Consenting Stakeholders to support the Plan.  As contemplated by the RSA, on November 13, 2020, the Debtors began soliciting votes on the Plan, and as of the Petition Date, Consenting Stakeholders holding approximately 83% of the Secured Notes Claims and approximately 98% of the outstanding common stock in Debtor Hardwoods Holdings, Inc. have submitted ballots accepting the Plan.

6.      Contemporaneously herewith, the Debtors filed a motion seeking procedural consolidation and joint administration of the Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b).  No request for a trustee or examiner has been made in the Chapter 11 Cases, and no committees have been appointed or designated.

7.      Information regarding the Debtors' history and business operations, capital structure and primary secured indebtedness, and the events leading up to the commencement of the Chapter 11 Cases can be found in the First Day Declaration.

**RELIEF REQUESTED**

8.    By this Motion, the Debtors request entry of the Proposed Orders authorizing, but not directing, the Debtors to (a) pay allowed Trade Claims of Trade Creditors in the ordinary course of business, consistent with past practice or pursuant to extensions and other arrangements made with the applicable Trade Creditors, subject to certain conditions, described below, and (b) maintain their customer programs and satisfy prepetition obligations related thereto.[3]  The Debtors estimate that approximately $22.5 million in prepetition Trade Claims (the "Interim Amount") will become due and payable within the first thirty (30) days of these Chapter 11 Cases. As described in this Motion, paying the Trade Claims in the ordinary course of business is crucial to the Debtors' continued operations and is in the best interests of the estates.  Accordingly, the Debtors seek authority to pay Trade Claims in the ordinary course only up to the Interim Amount pursuant to the Interim Order, and seek authority to pay all other Trade Claims only upon entry of a Final Order.

9.    The Debtors' customer programs are similarly critical to maintaining business operations without disruption, as the programs both drive sales and support customer retention. Accordingly, the Debtors seek authority, but not direction, to continue such programs and to satisfy all related prepetition and postpetition obligations related thereto.  Given the nature of these programs, it is difficult for the Debtors to determine the amount of claims that may arise under these programs solely on a prepetition basis, but the Debtors estimate that approximately $800,000 will become due under these programs within the first sixty (60) days of these Chapter 11 Cases, inclusive of prepetition and postpetition claims.

---

[3]    Contemporaneously with the filing of this Motion, the Debtors have filed certain other "first day" motions seeking authority to satisfy certain prepetition obligations to parties, including, among others, employees, insurance providers, and taxing authorities.  The relief sought in this Motion is not duplicative of that contained in the Debtors' other first day motions.

10. Further, the Debtors request that this Court authorize applicable banks and other financial institutions to receive, process, honor and pay all checks, drafts, electronic fund transfers or other forms of payment drawn or issued on the Debtors' bank accounts before the Petition Date on account of the Trade Claims (or to reissue checks, drafts, electronic fund transfers or other forms of payment drawn or issued on the Debtors' bank accounts, as may be necessary), and authorize, but not direct, the banks and financial institutions to rely on the Debtors' representations as to which checks, drafts, electronic fund transfers or other forms of payment drawn or issued on the Debtors' bank accounts are subject to this Motion; *provided* that sufficient funds are on deposit in the applicable bank accounts to cover such payments.[4]

A.    **Overview of Trade Claims**

11. Consistent with industry practice, the Debtors generally do not operate with suppliers and other vendors pursuant to long-term contracts. Consequently, in the ordinary course of business, the Debtors incur numerous fixed, liquidated, and undisputed payment obligations to various Trade Creditors as a means for maintaining day-to-day operations. The Trade Creditors provide the Debtors with goods and services essential to the operation of the Debtors' business, including, among other things: domestic lumber and logs, timber, exotic lumber, wood panels, freight, transportation and shipping services, shipping supplies, parts, repair and maintenance services, and warehousing services. Trade Claims are also incurred for professional services rendered to the Debtors in the ordinary course of business for legal, accounting, and other services.

---

[4]    Contemporaneously with the filing of this Motion, the Debtors have filed the *Motion of Debtors for Interim and Final Orders (A) Authorizing Continued Use of Existing Cash Management System, Including Maintenance of Existing Bank Accounts, Checks and Business Forms; (B) Authorizing Continuation of Existing Deposit Practices; (C) Waiving Certain U.S. Trustee Guidelines; (D) Authorizing Continuation of Intercompany Transactions; (E) Granting Priority Status to Postpetition Intercompany Claims; (F) Authorizing the Debtors to Open and Close Bank Accounts and (G) Granting Related Relief* (the "Cash Management Motion"), which seeks, among other things, authority to continue using the Debtors' cash management system, including their bank accounts.

The Debtors operate with substantially all of their vendors and service providers on trade terms of thirty (30) days or less.

12.   On average, during the twelve months leading to the Petition Date, the Debtors paid approximately $28.5 million in monthly payments to Trade Creditors.  As of the Petition Date, the Debtors estimate that approximately $22.5 million of Trade Claims are outstanding, all of which will become due and owing during the thirty (30) days of these Chapter 11 Cases.

13.   The continued viability of the Debtors' businesses—both during these Chapter 11 Cases as well as post-emergence—depends on maintaining strong relationships with Trade Creditors, who control the Debtors' access to key goods and services.  If the Debtors are unable to pay Trade Claims in a timely manner, certain Trade Creditors may refuse to continue doing business with the Debtors on prepetition terms, which will interfere with the Debtors' ability to meet their obligations to customers in a timely manner.  Given the regional stronghold that certain vendors hold in the Debtors' industry, finding and relying upon alternative vendors would be impractical if not impossible, and at the very least would be costly and disruptive to the Debtors' business.  Any delays associated with searches for alternative vendors would also likely have a detrimental impact on the Debtors' financial performance, and could threaten the Debtors' ability to successfully implement the restructuring embodied in the Plan.  Paying the Trade Claims in the ordinary course of business is therefore in the best interests of all stakeholders and will help allow the Debtors to transition seamlessly through these Chapter 11 Cases.

14.   Importantly, the Plan provides for the payment of all allowed Trade Claims in cash in full or leave otherwise impaired.  A substantial portion of the Trade Claims are general unsecured claims, which under the Plan will be paid in cash in full or leave otherwise impaired.  The remaining Trade Claims likely either: (a) are entitled to priority under section 503(b)(9) of the

Bankruptcy Code or (b) may, if unpaid, give rise to mechanic's or other liens against the Debtors' property.  Therefore, regardless of the priority of a particular Trade Claim, the relief requested herein seeks to alter only the timing, not the amount or priority, of payments to the Trade Creditors on account of their Trade Claims.  As a result, the relief requested herein will not prejudice any other party in interest.

15.   As described above, the Debtors seek to process any payments for Trade Claims in accordance with their normal accounts payable procedures, as they become due and payable in the ordinary course of the Debtors' businesses, and consistent with past practice or as otherwise agreed to between the Debtors and the applicable Trade Creditors.

**B.      Conditions to Payment of Trade Claims in the Ordinary Course**

16.   The Debtors further propose that all payments made under the Proposed Orders be subject to the following conditions:

(a)      The Debtors, in their discretion, subject to the terms set forth below, shall determine which Trade Claims, if any, will be paid pursuant to the Proposed Orders; *provided*, that no affiliate (as that term is defined in section 101(2) of the Bankruptcy Code) of the Debtors, and no person or entity providing professional services and retained under section 327(a) of the Bankruptcy Code, or retained as ordinary course professionals but who are subject to the provisions of section 327(a) of the Bankruptcy Code, including but not limited to legal services, accounting services, financial advisory services or investment banking services, may be considered a Trade Creditor pursuant to the Proposed Orders;

(b)      Unless the parties agree to different terms and conditions (including, but not limited to, credit limits, pricing, cash discounts, timing of payments, pre-payments, allowances, rebates, normal product mix and availability and other applicable terms and programs), if a Trade Creditor accepts payment under the Proposed Orders, such Trade Creditor is deemed to have agreed to continue to provide goods or services to the Debtors, on terms that are as good as or better than the terms and conditions (including credit terms) contained in any binding prepetition contract with the Debtors or, in the absence of such contract, such terms and conditions that existed 120 days prior to the Petition Date (collectively, the "Customary Terms"), during the pendency of these Chapter 11 Cases;

(c)      In the event that a Trade Creditor does not have a binding prepetition contract with the Debtors and the relationship between such Trade Creditor accepting payment

under this Motion and the Debtors does not extend to 120 days before the Petition Date, the Customary Terms shall mean the terms that the Trade Creditor generally extends to its customers or such terms as are acceptable to the Debtors in the reasonable exercise of their business judgment (including, but not limited to, credit limits, pricing, cash discounts, timing of payments, pre-payments, allowances, rebates, normal product mix and availability and other applicable terms and programs);

(d)      If a Trade Creditor accepts payment on account of its Trade Claim and thereafter does not continue to provide goods or services on terms at least as favorable as the Customary Terms during the pendency of these Chapter 11 Cases, then: (i) the Debtors shall deem such payment to be an unauthorized voidable postpetition transfer under section 549 of the Bankruptcy Code and, therefore, (A) ) the Debtors may then take any and all appropriate steps to cause such Trade Creditor to repay the payments made to it on account of its prepetition claim and (B) upon recovery by the Debtors, any such prepetition claim shall be reinstated as if the payment had not been made; or (ii) if there exists an outstanding postpetition balance due from the Debtors to such Trade Creditor, the Debtors may elect to recharacterize and apply such payment instead to such outstanding postpetition balance and the Debtors may then take any and all appropriate steps to cause such supplier or vendor to repay to the Debtors such paid amounts that exceed the postpetition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise;

(e)      If the Debtors seek to recover a payment from a Trade Creditor because the Trade Creditor does not continue to provide goods or services to the Debtors on at least the Customary Terms during the pendency of and after these Chapter 11 Cases, the Trade Creditor may contest such action by making a written request (a "Request") to the Debtors to schedule a hearing before this Court.  If such a Request is made, the Debtors shall provide notice of a hearing on such Request to the Trade Creditor making the Request and other interested parties in accordance with the Bankruptcy Code and the orders of this Court; and

(f)      Prior to making a payment on disputed claims to a Trade Creditor under the Proposed Orders, the Debtors may settle all or some of the disputed prepetition claims of such Trade Creditor for less than their face amount without further notice or hearing.

## C.      Overview of Customer Programs

17.   The Debtors' customer base is diverse and includes wholesalers, retailers, contractors and customers specializing in the international trade of exotic lumber, among others, located both domestically and abroad.  As is customary in their industry, the Debtors maintain certain customer programs (collectively, the "Customer Programs") that, among other things, are designed to drive

sales and cultivate a positive reputation with their customers and in the marketplace generally. Because the Customer Programs are an essential component of the Debtors' competitive pricing architecture and serve to strengthen customer relationships and satisfaction, the Customer Programs will maximize the value of the Debtors' estates and benefit all creditors and stakeholders in the Chapter 11 Cases. The Customer Programs include the following:

- **Rebate Program.** Certain key customers are offered rebates for achieving established volume targets specific to that customer for the current calendar year, which rebates may either be in the form of cash back or future credits.

- **Ordinary Course Refunds.** The Debtors, from time to time and in the ordinary course of business, refund their customers' accounts as a result of items such as under-shipments, mis-shipments and overpayments (the "Ordinary Course Refunds"). The Debtors do not anticipate owing any Ordinary Course Refunds as of the Petition Date, but request authority to continue to make such payments in the ordinary course, as needed.

- **Guarantees.** The Debtors provide their customers certain guarantees that the goods they sell to those customers will meet the quality standards applicable to those goods generally in the market. The Debtors will replace or provide a partial credit for any goods which do not meet those standards for which a claim is made within thirty (30) days of the purchase date.

- **Prompt Pay Discounts.** As is customary in their industry, the Debtors offer a majority of their customers an early payment discount, typically ranging from 1% to 2% off the invoice amount. The discount applies if customers pay make payment within ten (10) days of the invoice date.

18. Given the nature of the Customer Programs, there is inherent uncertainty as to when or how a customer may redeem benefits under the Customer Programs, making it impractical for the Debtors to provide a precise estimate of prepetition claims outstanding thereunder. However, based on historical data on the Customer Programs, the Debtors estimate that approximately $800,000 in total Customer Program obligations will become due in the first sixty (60) days of these Chapter 11 Cases, inclusive of claims made on a prepetition or postpetition basis. The Debtors request authority to honor, in their discretion, the Customer Programs in the ordinary course of business, regardless of whether the obligations thereunder accrued before or after the

Petition Date.  In addition, the Debtors request authority to continue to provide the Customer

Programs to eligible customers on a postpetition basis.  The Debtors' believe such continuity is

critical to continuing to secure new business and ensure the loyalty of their customers on a going

forward basis.

**BASIS FOR RELIEF**

**A.      Payment of the Trade Claims Is Warranted Under Sections 363(b)(1) and 105(a) of
the Bankruptcy Code**

19.  Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor],

after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business,

property of the estate . . . ." 11 U.S.C. § 363(b)(1).  Under section 363(b) of the Bankruptcy Code,

courts require only that the debtor "show that a sound business purpose justifies such actions."

*Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward
Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) (internal citations omitted); *see also In re
Phoenix Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987); *see also, e.g., In re Adelphia
Commc'ns Corp.*, No. 02-41729 (REG), 2003 WL 22316543, at *31 (Bankr. S.D.N.Y. Mar. 4,
2003); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071

(2d Cir. 1983).  Moreover, "[w]here the debtor articulates a reasonable basis for its business

decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not

entertain objections to the debtor's conduct."  *Comm. of Asbestos-Related Litigants v. Johns-
Manville Corp. (In re Johns- Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation

omitted).

20.  In addition to being justified under section 363(b)(1) of the Bankruptcy Code, payment

of the Trade Claims is warranted under the doctrine of necessity.  Section 105(a) of the Bankruptcy

Code, which codifies the inherent equitable powers of the bankruptcy court, empowers the

bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Under section 105(a) and the "doctrine of necessity," the Court may exercise its broad grant of equitable powers to permit the payment of prepetition obligations when such payment is essential to the continued operation of the debtor's business.  *See, e.g., In re Just for Feet, Inc.*, 242 B.R. 821, 824–25 (D. Del. 1999) (holding that section 105(a) of the Bankruptcy Code provides a statutory basis for the payment of prepetition claims under the doctrine of necessity and noting that "[t]he Supreme Court, the Third Circuit and the District of Delaware all recognize the court's power to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during chapter 11"); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (confirming that the doctrine of necessity is the standard in the Third Circuit for enabling a court to authorize the payment of prepetition claims prior to the confirmation of a reorganization plan).

21.    The United States Court of Appeals for the Third Circuit recognized the "necessity of payment" doctrine in *In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981). There, the Third Circuit held that a court could authorize the payment of prepetition claims if such payment was essential to the continued operation of the debtor.  *Id.* (stating that court may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *see also Official Comm. of Unsecured Creditors of Motor Coach Indus. Int'l, Inc. v. Motor Coach Indus. Int'l, Inc. (In re Motor Coach Indus. Int'l, Inc.)*, No. 08-12136-BLS, 2009 WL 330993, at *3 (D. Del. Feb. 10, 2009) (denying stay pending appeal on grounds that doctrine of necessity had not been brought into serious question by courts in Third Circuit).

22.    The necessity of payment doctrine is designed to foster a debtor's rehabilitation, which courts have recognized is "the paramount policy of Chapter 11." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989); *In re Chateaugay Corp.*, 80 B.R. 279, 287 (S.D.N.Y. 1987) (authorizing payment of prepetition workers' compensation claims on grounds that the fundamental purpose of reorganization and equity powers of bankruptcy courts "is to create a flexible mechanism that will permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately"); *In re Just for Feet*, 242 B.R. at 826 (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization"); *In re Quality Interiors, Inc.*, 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991) ("A general practice has developed . . . where bankruptcy courts permit the payment of certain pre-petition claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such payment."); *In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (approving payment of prepetition unsecured claims of tool makers as "necessary to avert a serious threat to the Chapter 11 process").  Moreover, Bankruptcy Rule 6003 itself implies that the payment of prepetition obligations may be permissible within the first twenty-one (21) days of a case where doing so is "necessary to avoid immediate and irreparable harm."  Fed. R. Bankr. P. 6003.

23.    As described herein, the Trade Creditors provide the Debtors with goods and services that are critical to the Debtors' ongoing operations.  Continuing to pay the Trade Claims in the ordinary course of business or as otherwise agreed to with the respective Trade Creditors, therefore, is a sound exercise of the Debtors' business judgment.  Failing to do so would likely lead to significant distractions and prove value-destructive to the Debtors' business, potentially even on a post-emergence basis.  Trade Creditors could refuse to provide the Debtors with key

goods and services in the future, and even to the extent alternative vendors may be available, the time and cost attendant to such searches would be unnecessarily disruptive, particularly at this key juncture.   Moreover, with respect to certain vendors for whom the Debtors are significant customers, the failure to pay the Trade Claims may also place such vendors in financial distress.

24.   If the Trade Creditors refuse or are unable to transact with the Debtors on existing trade terms, the Debtors' operations will likely suffer from significant disruptions that would cause irreparable harm.   To avoid such disruptions, and to promote a seamless transition through the chapter 11 process, the Debtors seek authority to pay the Trade Claims as they come due or as otherwise agreed to between the counterparties.   Furthermore, with respect to Trade Claims that are general unsecured claims, the Trade Creditors will be paid in full under the Plan and therefore the relief requested herein would alter only the timing, not the amount or priority, of such payments.

**B.      Certain Trade Creditors Are Foreign Vendors**

25.   Additionally, several of the Debtors' vendors are located in foreign countries.   As with its domestic vendors, the Debtors generally conduct business with foreign vendors on a purchase order basis rather than through long-term contracts.   Nonetheless, even to the extent the Debtors had the ability to compel contractual performance in chapter 11, enforcing those rights against foreign vendors may be costly and of limited utility.   Many of the foreign vendors with which the Debtors conduct business are likely unfamiliar with the chapter 11 process and may perceive the process to be akin to a liquidation proceeding.   As a result, foreign vendors may seek to take adverse actions against the Debtors (or their non-Debtor affiliates)—notwithstanding the global reach of the automatic stay—the defense of which would unnecessarily consume time and energy of the Debtors.

26.   Nor do the Debtors believe that their foreign vendors could be easily replaced, and even if possible, such replacement would likely involve costly searches leading to vendors that provide less favorable pricing terms.  In light of the forgoing, permitting the Debtors to continue paying Trade Claims of foreign vendors in the ordinary course of business will inure to the benefit of all parties in interest.

## C.   Certain Trade Claims Have Administrative Expense Priority

27.   Certain of the Trade Claims may also have administrative expense priority.  Section 503(b)(9) of the Bankruptcy Code provides administrative expense treatment for "the value of any goods received by the debtor within 20 days before the [petition date] in which the goods have been sold to the debtor in the ordinary course of . . . business."  11 U.S.C. § 503(b)(9).  Section 503(b)(9) further requires, and the Plan provides for, payment in full of administrative expense claims on the effective date of the Plan or as soon as reasonably practicable thereafter.  Thus, payment of the Trade Claims entitled to priority under section 503(b)(9) of the Bankruptcy Code under the Proposed Orders will effect only a change in the timing of such payments, not the amounts or priority thereof.

28.   An estimated $10.5 million of the Trade Claims are entitled to the statutory priority for goods delivered to the Debtors in the ordinary course of business within twenty (20) days before the Petition Date under section 503(b)(9) of the Bankruptcy Code.  The Debtors, therefore, are required to pay such claims in full in cash to confirm a plan of reorganization.  11 U.S.C. § 1129(a)(9)(A) (requiring payment in full of claims entitled to administrative expense priority).  Rather than pay such Trade Claims on the effective date of the Plan, the Debtors seek authority to pay the Trade Claims during the pendency of these Chapter 11 Cases as they become due.

29.   Authorizing payment of Trade Claims that are entitled to administrative expense priority will also ease some burdens on the Court and the Debtors by obviating the need for

individual creditors to file motions requesting payment on account of section 503(b)(9) claims. Accordingly, payment of the Trade Claims as provided herein is a sound exercise of the Debtors' business judgment, is necessary to avoid immediate and irreparable harm to the Debtors' estates, is in the best interests of the Debtors and their estates and is warranted under the circumstances.

**D.      Certain Trade Claims May Be Secured**

30.   Finally, certain of the Trade Creditors may hold or assert liens in the future against certain of the Debtors' assets pursuant to certain state and federal laws.  For example, certain of the Trade Creditors provide shipping and transportation services whereby such Trade Creditors, at any given time, are in possession of goods, inventory, materials, equipment or other items that are vital to the Debtors' operations.  So long as the Trade Claims of such Trade Creditors remain unpaid, the Trade Creditors might assert possessory liens against the Debtors' property and refuse to deliver or release such property to the Debtors.

31.   Such an outcome would cause significant disruptions to the Debtors' business and should be avoided given the treatment of such claims pursuant to the Plan.  Under the Plan, Trade Claims that are supported by liens or are otherwise secured are "Other Secured Claims," and are unimpaired and will be paid in full on the effective date of the Plan or as soon thereafter as reasonably practicable.  Moreover, section 363(e) of the Bankruptcy Code provides that certain Trade Creditors with liens may be entitled to adequate protection of their liens, the enforcement of which may impose additional costs on the Debtors' estates.  To avoid such unnecessary costs to the Debtors' estates, paying Trade Claims that may be secured by the Debtors' assets in the ordinary course of business is a sound exercise of the Debtors' business judgment.

**E.**     **Maintaining Customer Programs and Satisfying Prepetition Commitments Is Warranted Under Sections 105(a) and 363(b) of the Bankruptcy Code**

32.    It is similarly appropriate to authorize the Debtors to continue honoring their Customer Programs and satisfying related prepetition obligations pursuant to sections 105(a) and 363 of the Bankruptcy Code, and in accordance with the doctrine of necessity.  The Customer Programs are commonplace in the lumber manufacturing industry.  If the Debtors are not authorized to continue the Customer Programs, they will suffer a serious competitive disadvantage relative to their industry peers.  As described above, the Customer Programs enhance the Debtors' ability to drive sales, generate goodwill, and ensure customer satisfaction.  Accordingly, absent the ability to continue honoring obligations related to their Customer Programs, customer trust in the Debtors' business would likely erode and sales would decline, proving detrimental to all parties in interest.

33.    The Debtors submit that the substantial benefit conferred on the Debtors' estates by the Customer Programs substantially outweighs the costs associated therewith.  Accordingly, the Debtors respectfully request the authority to continue the Customer Programs and honor any prepetition commitments related thereto, all in the Debtors' discretion, in the ordinary course of business, and in a manner consistent with past practice.  In addition, the Debtors respectfully request authority to continue, replace, implement, modify and/or terminate one or more of the Customer Programs, in each case, as the Debtors deem appropriate in their business judgment and in the ordinary course of business, without further Court order.

**F.**     **Processing of Checks and Electronic Fund Transfers Should Be Authorized**

34.    The Debtors have sufficient funds to pay any amounts described in this Motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations and access cash collateral pursuant to the relief sought in the *Motion of Debtors for Interim and Final Orders (I) Authorizing Use of Cash Collateral, (II) Granting Adequate Protection to*

*Prepetition Secured Parties, (III) Granting Liens and Superpriority Claims, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief*, filed contemporaneously herewith.  In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment to be made hereunder.  Accordingly, the Debtors believe there is minimal risk that checks or wire transfer requests that the Court has not authorized will be inadvertently made.  Therefore, the Debtors respectfully request that the Court authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

## SATISFACTION OF BANKRUPTCY RULE 6003

35.  Bankruptcy Rule 6003 empowers a court to grant relief within the first twenty-one (21) days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm."  Fed. R. Bankr. P. 6003.  As set forth in this Motion and in the First Day Declaration, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm.  Furthermore, the failure to receive the requested relief during the first twenty-one (21) days of these Chapter 11 Cases would severely disrupt the Debtors' operations at this critical juncture and imperil the Debtors' restructuring.  Accordingly, the Debtors submit that the relief requested herein is necessary to avoid immediate and irreparable harm, and therefore, Bankruptcy Rule 6003 is satisfied.

## REQUEST FOR WAIVER OF STAY

36.  To implement the foregoing, the Debtors seek a waiver of any stay of the effectiveness of the order approving this Motion.  Pursuant to Bankruptcy Rule 6004(h), any "order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of fourteen

(14) days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). The Debtors submit that the relief requested in this Motion is necessary for the Debtors to operate their business without interruption and to preserve value for their estates for the reasons set forth herein. Accordingly, the Debtors submit that ample cause exists to justify a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h).

## RESERVATION OF RIGHTS

37.    Nothing contained herein is intended to be or shall be deemed as (a) an admission as to the validity of any claim against the Debtors, (b) a waiver of the Debtors' or any appropriate party-in-interest's rights to dispute the amount of, basis for, or validity of any claim, (c) a waiver of the Debtors' or any other party-in-interest's rights under the Bankruptcy Code or any other applicable nonbankruptcy law, or (d) an approval, adoption, assumption, or rejection of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' or any party-in-interest's rights to dispute such claim.

## NOTICE

38.    Debtors have provided notice of this Motion to: (a) the Office of the United States Trustee for the District of Delaware; (b) the holders of the thirty (30) largest unsecured claims against the Debtors on a consolidated basis; (c) the United States Attorney's Office for the District of Delaware; (d) the Internal Revenue Service; (e) the attorneys general for the states in which the Debtors conduct business; (f) counsel to the Ad Hoc Noteholder Group, (i) Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, New York 10019, Attn: Jeffrey Pawlitz, Esq., Weston T. Eguchi, Esq., and Agustina G. Berro, Esq., and (ii) Pachulski Stang Ziehl & Jones, 919 North Market Street, 17th Floor, Wilmington, Delaware 19801, Attn: Laura Davis Jones, Esq.;

(g) counsel to the Sponsor Equityholder, Wachtell, Lipton, Rosen & Katz, 51 W 52nd St, New York, NY 10019, Attn: Scott K. Charles, Esq. and David E. White, Esq.; (h) counsel to the ABL Agent, McGuireWoods LLP, 1251 6th Ave 20th floor, New York, NY 10020, Attn: Brian I. Swett, Esq.; (i) counsel to the Indenture Trustee, Emmet, Marvin & Martin, LLP, 120 Broadway # 32, New York, NY 10271, Attn.: Elizabeth Taraila, Esq.; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002.  Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m).  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated:    November 23, 2020
         Wilmington, Delaware

*/s/ Sean M. Beach*

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Sean M. Beach (No. 4070)
Jacob D. Morton (No. 6684)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Tel:    (302) 571-6600
Fax:   (302) 571-1253
Email: sbeach@ycst.com
        jmorton@ycst.com

GIBSON, DUNN & CRUTCHER LLP
David M. Feldman (*pro hac vice* admission pending)
J. Eric Wise (*pro hac vice* admission pending)
Matthew K. Kelsey  (*pro hac vice* admission pending)
Alan Moskowitz (*pro hac vice* admission pending)
200 Park Avenue
New York, New York 10166
Tel:    (212) 351-4000
Fax:   (212) 351-4035
Email: dfeldman@gibsondunn.com
        ewise@gibsondunn.com
        mkelsey@gibsondunn.com
        amoskowitz@gibsondunn.com

*Proposed Counsel to the Debtors and Debtors in Possession*

**EXHIBIT A**

**PROPOSED INTERIM ORDER**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| NORTHWEST HARDWOODS, INC., *et al.*,[1] | ) | Case No. 20-13005 (___) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) | **Re: Docket No. __** |

## INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) PAY CLAIMS OF TRADE CREDITORS AND (B) MAINTAIN CUSTOMER PROGRAMS AND SATISFY RELATED PREPETITION OBLIGATIONS, AND (II) GRANTING RELATED RELIEF

Upon the *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Pay Claims of Trade Creditors and (B) Maintain Customer Programs and Satisfy Related Prepetition Obligations, and (II) Granting Related Relief* (the "Motion")[2] filed by the above-captioned affiliated debtors and debtors-in-possession (the "Debtors"); and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012; and the Court having found that venue of these cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and that this Court may enter a final order consistent with Article III of the United States Constitution; and it appearing that notice of the Motion has been given as set forth in the Motion and that such notice is adequate and no

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Northwest Hardwoods, Inc. (5401), Hardwoods Intermediate Holdings II, Inc. (7760), and Hardwoods Holdings, Inc. (3443).  The location of the Debtors' service address in these chapter 11 cases is: 1313 Broadway, Suite 300, Tacoma, WA 98402.

[2]    All capitalized terms used and not defined herein shall have the meanings ascribed to them in the Motion.

other or further notice need be given; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and the Court having considered the First Day Declaration; and the Court having determined that the legal and factual basis set forth in the Motion and at the Hearing establishes just cause for the relief granted herein; and the Court having determined that the relief sought in the Motion is in the best interests of the Debtors and their estates; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED on an interim basis, as set forth herein.

2.      The Debtors are authorized, but not directed, to pay Trade Claims of Trade Creditors in an aggregate amount not to exceed $22.5 million, prior to entry of a Final Order, subject to the following conditions:

(a)      The Debtors, in their discretion, subject to the terms set forth below, shall determine which Trade Claims, if any, will be paid pursuant to this Interim Order; *provided*, that no affiliate (as that term is defined in section 101(2) of the Bankruptcy Code) of the Debtors, and no person or entity providing professional services and retained under section 327(a) of the Bankruptcy Code, or retained as ordinary course professionals but who are subject to the provisions of section 327(a) of the Bankruptcy Code, including but not limited to legal services, accounting services, financial advisory services or investment banking services, may be considered a Trade Creditor pursuant to this Interim Order;

(b)      Unless the parties agree to different terms and conditions (including, but not limited to, credit limits, pricing, cash discounts, timing of payments, pre-payments, allowances, rebates, normal product mix and availability and other applicable terms and programs), if a Trade Creditor accepts payment under this Interim Order, such Trade Creditor is deemed to have agreed to continue to provide goods or services to the Debtors, on terms that are as good as or better than the terms and conditions (including credit terms) contained in any binding prepetition contract with the Debtors or, in the absence of such contract, such terms and conditions that existed 120 days prior to the Petition Date (collectively, the "Customary Terms"), during the pendency of these Chapter 11 Cases;

(c)      In the event that a Trade Creditor does not have a binding prepetition contract with the Debtors and the relationship between such Trade Creditor accepting payment

under this Motion and the Debtors does not extend to 120 days before the Petition Date, the Customary Terms shall mean the terms that the Trade Creditor generally extends to its customers or such terms as are acceptable to the Debtors in the reasonable exercise of their business judgment (including, but not limited to, credit limits, pricing, cash discounts, timing of payments, pre-payments, allowances, rebates, normal product mix and availability and other applicable terms and programs);

(d)     If a Trade Creditor accepts payment on account of its Trade Claim and thereafter does not continue to provide goods or services on terms at least as favorable as the Customary Terms during the pendency of these Chapter 11 Cases, then: (i) the Debtors shall deem such payment to be an unauthorized voidable postpetition transfer under section 549 of the Bankruptcy Code and, therefore, (A) the Debtors may then take any and all appropriate steps to cause such Trade Creditor to repay the payments made to it on account of its prepetition claim and (B) upon recovery by the Debtors, any such prepetition claim shall be reinstated as if the payment had not been made; or (ii) if there exists an outstanding postpetition balance due from the Debtors to such Trade Creditor, the Debtors may elect to recharacterize and apply such payment instead to such outstanding postpetition balance and the Debtors may then take any and all appropriate steps to cause such supplier or vendor to repay to the Debtors such paid amounts that exceed the postpetition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise;

(e)     If the Debtors seek to recover a payment from a Trade Creditor because the Trade Creditor does not continue to provide goods or services to the Debtors on at least the Customary Terms during the pendency of and after these Chapter 11 Cases, the Trade Creditor may contest such action by making a written request (a "Request") to the Debtors to schedule a hearing before this Court.  If such a Request is made, the Debtors shall provide notice of a hearing on such Request to the Trade Creditor making the Request and other interested parties in accordance with the Bankruptcy Code and the orders of this Court; and

(f)     Prior to making a payment on disputed claims to a Trade Creditor under this Interim Order, the Debtors may settle all or some of the disputed prepetition claims of such Trade Creditor for less than their face amount without further notice or hearing.

3.     The Debtors, in their business judgment, are authorized, but not directed, to continue the Customer Programs and to honor any obligations related to the Customer Programs, whether arising prepetition or postpetition; *provided, however*, that the Debtors shall not pay in excess of $500,000 with respect to prepetition claims arising from Customer Programs that require the Debtors to make cash payments.

4.      The Debtors, in their business judgment, are authorized, but not directed, to continue, renew, replace, implement, modify and/or terminate the Customer Programs as they deem appropriate, in the ordinary course of business, without further application to the Court.

5.      The banks and financial institutions on which the Debtors' checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order without any duty of further inquiry and without liability for following the Debtors' instructions.

6.      The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these Chapter 11 Cases with respect to prepetition amounts owed in connection with the relief granted herein.

7.      A hearing to consider entry of an order granting the Motion on a final basis (the "Final Hearing") shall take place on _____, 2020 at __:__ _.m. (prevailing Eastern Time).  On or before 4:00 p.m. (prevailing Eastern Time) on _____, 2020, any objections or responses to the Motion shall be filed with the Court, and served on (a) proposed counsel to the Debtors, (i) Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Sean M. Beach, Esq. (sbeach@ycst.com) and Jacob D. Morton, Esq. (jmorton@ycst.com)) and (ii) Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New York, New York 10166 (Attn: David M. Feldman, Esq. (dfeldman@gibsondunn.com), J. Eric Wise, Esq. (ewise@gibsondunn.com), Matthew K. Kelsey, Esq. (mkelsey@gibsondunn.com), and Alan

Moskowitz, Esq. (amoskowitz@gibsondunn.com)); (b) the Office of the United States Trustee for the District of Delaware (Attn: Juliet. M. Sarkessian, Esq. (Juliet.M.Sarkessian@usdoj.gov)); (c) counsel to the Ad Hoc Noteholder Group, (i) Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, New York 10019, (Attn: Jeffrey Pawlitz, Esq. (JPawlitz@willkie.com), Weston T. Eguchi, Esq. (WEguchi@willkie.com), and Agustina G. Berro, Esq. (ABerro@willkie.com)), and (ii) Pachulski Stang Ziehl & Jones, 919 North Market Street, 17th Floor, Wilmington, Delaware 19801, (Attn: Laura Davis Jones, Esq. (ljones@pszjlaw.com)); (d) counsel to the Sponsor Equityholder, Wachtell, Lipton, Rosen & Katz, 51 W 52nd St, New York, NY 10019 (Attn: Scott K. Charles, Esq. (SKCharles@wlrk.com) and David E. White, Esq. (DEWhite@wlrk.com)); (e) counsel to the ABL Agent, McGuireWoods LLP, 1251 6th Ave 20th floor, New York, NY 10020 (Attn: Brian I. Swett, Esq. (bswett@mcguirewoods.com)); (f) counsel to the Indenture Trustee, Emmet, Marvin & Martin, LLP, 120 Broadway # 32, New York, NY 10271, (Attn: Elizabeth Taraila, Esq. (ETaraila@emmetmarvin.com)); (g) counsel to any Committee appointed in these Chapter 11 Cases; and (h) any other party that has filed a request for notices with this Court.

8.    In the event no objections to entry of the Final Order on the Motion are timely received, this Court may enter the Final Order without need for the Final Hearing.

9.    Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed: (a) an admission as to the amount of, basis for or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors or any other party in interest's right to dispute any claim; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in the Motion;

(e) a request or authorization to assume, adopt or reject any agreement, contract or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in or other encumbrance on property of the Debtors' estates; (g) a waiver of any claims or causes of action which may exist against any entity under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief authorized in this Interim Order are valid, and the rights of all parties in interest are expressly reserved to context the extent validity, or perfection or seek avoidance of all such liens.  Any payment made pursuant to this Interim Order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

10.     The requirements of Bankruptcy Rule 6003(b) have been satisfied.

11.     Under the circumstances of these Chapter 11 Cases, notice of the Motion is adequate under Bankruptcy Rule 6004(a).

12.     Notwithstanding Bankruptcy Rule 6004(h), this Interim Order shall be immediately effective and enforceable upon its entry.

13.     The Debtors are authorized to take any and all steps necessary or appropriate to carry out the relief granted in this Interim Order.

14.     This Court shall retain exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Interim Order.

Dated: _____, 2020
      Wilmington, Delaware


_____
UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT B**

**PROPOSED FINAL ORDER**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| NORTHWEST HARDWOODS, INC., *et al.*,[1] | ) | Case No. 20-13005 (___) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket Nos. __ & __** |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) PAY CLAIMS OF TRADE CREDITORS AND (B) MAINTAIN CUSTOMER PROGRAMS AND SATISFY RELATED PREPETITION OBLIGATIONS, AND (II) GRANTING RELATED RELIEF**

Upon the *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Pay Claims of Trade Creditors and (B) Maintain Customer Programs and Satisfy Related Prepetition Obligations, and (II) Granting Related Relief* (the "Motion")[2] filed by the above-captioned affiliated debtors and debtors-in-possession (the "Debtors"); and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012; the Court having found that venue of these cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and that this Court may enter a final order consistent with Article III of the United States Constitution; and it appearing that notice of the Motion has been given as set forth in the Motion and that such notice is adequate and no other

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Northwest Hardwoods, Inc. (5401), Hardwoods Intermediate Holdings II, Inc. (7760), and Hardwoods Holdings, Inc. (3443). The location of the Debtors' service address in these chapter 11 cases is: 1313 Broadway, Suite 300, Tacoma, WA 98402.

[2]     All capitalized terms used and not defined herein shall have the meanings ascribed to them in the Motion.

or further notice need be given; and the Court having reviewed the Motion and having heard the

statements in support of the relief requested therein at a hearing before this Court (the "Hearing");

and the Court having considered the First Day Declaration; and this Court having previously

entered the *Interim Order (I) Authorizing the Debtors to (A) Pay Claims of Trade Creditors and*

*(B) Maintain Customer Programs and Satisfy Related Prepetition Obligations, and (II) Granting*

*Related Relief* [Docket No. __]; and the Court having determined that the legal and factual basis

set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and the

Court having determined that the relief sought in the Motion is in the best interests of the Debtors

and their estates; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.    The Motion is GRANTED on a final basis, as set forth herein.

2.        The Debtors are authorized, but not directed, to pay Trade Claims of Trade

Creditors, subject to the following conditions:

(a)    The Debtors, in their discretion, subject to the terms set forth below, shall determine which Trade Claims, if any, will be paid pursuant to this Final Order; *provided*, that no affiliate (as that term is defined in section 101(2) of the Bankruptcy Code) of the Debtors, and no person or entity providing professional services and retained under section 327(a) of the Bankruptcy Code, or retained as ordinary course professionals but who are subject to the provisions of section 327(a) of the Bankruptcy Code, including but not limited to legal services, accounting services, financial advisory services or investment banking services, may be considered a Trade Creditor pursuant to this Final Order;

(b)    Unless the parties agree to different terms and conditions (including, but not limited to, credit limits, pricing, cash discounts, timing of payments, pre-payments, allowances, rebates, normal product mix and availability and other applicable terms and programs), if a Trade Creditor accepts payment under this Final Order, such Trade Creditor is deemed to have agreed to continue to provide goods or services to the Debtors, on terms that are as good as or better than the terms and conditions (including credit terms) contained in any binding prepetition contract with the Debtors or, in the absence of such contract, such terms and conditions that existed 120 days prior to the Petition Date (collectively, the "Customary Terms"), during the pendency of these Chapter 11 Cases;

(c)    In the event that a Trade Creditor does not have a binding prepetition contract with the Debtors and the relationship between such Trade Creditor accepting payment under this Motion and the Debtors does not extend to 120 days before the Petition Date, the Customary Terms shall mean the terms that the Trade Creditor generally extends to its customers or such terms as are acceptable to the Debtors in the reasonable exercise of their business judgment (including, but not limited to, credit limits, pricing, cash discounts, timing of payments, pre-payments, allowances, rebates, normal product mix and availability and other applicable terms and programs);

(d)    If a Trade Creditor accepts payment on account of its Trade Claim and thereafter does not continue to provide goods or services on terms at least as favorable as the Customary Terms during the pendency of these Chapter 11 Cases, then: (i) the Debtors shall deem such payment to be an unauthorized voidable postpetition transfer under section 549 of the Bankruptcy Code and, therefore, (A) the Debtors may then take any and all appropriate steps to cause such Trade Creditor to repay the payments made to it on account of its prepetition claim and (B) upon recovery by the Debtors, any such prepetition claim shall be reinstated as if the payment had not been made; or (ii) if there exists an outstanding postpetition balance due from the Debtors to such Trade Creditor, the Debtors may elect to recharacterize and apply such payment instead to such outstanding postpetition balance and the Debtors may then take any and all appropriate steps to cause such supplier or vendor to repay to the Debtors such paid amounts that exceed the postpetition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise;

(e)    If the Debtors seek to recover a payment from a Trade Creditor because the Trade Creditor does not continue to provide goods or services to the Debtors on at least the Customary Terms during the pendency of and after these Chapter 11 Cases, the Trade Creditor may contest such action by making a written request (a "Request") to the Debtors to schedule a hearing before this Court.  If such a Request is made, the Debtors shall provide notice of a hearing on such Request to the Trade Creditor making the Request and other interested parties in accordance with the Bankruptcy Code and the orders of this Court; and

(f)    Prior to making a payment on disputed claims to a Trade Creditor under this Final Order, the Debtors may settle all or some of the disputed prepetition claims of such Trade Creditor for less than their face amount without further notice or hearing.

3.    The Debtors, in their business judgment, are authorized, but not directed, to continue the Customer Programs and to honor any obligations related to the Customer Programs, whether arising prepetition or postpetition.

4.      The Debtors, in their business judgment, are authorized, but not directed, to continue, renew, replace, implement, modify and/or terminate the Customer Programs as they deem appropriate, in the ordinary course of business, without further application to the Court.

5.      The banks and financial institutions on which the Debtors' checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order without any duty of further inquiry and without liability for following the Debtors' instructions.

6.      The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these Chapter 11 Cases with respect to prepetition amounts owed in connection with the relief granted herein.

7.      Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing in this Final Order shall be deemed: (a) an admission as to the amount of, basis for or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors or any other party in interest's right to dispute any claim; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in the Motion; (e) a request or authorization to assume, adopt or reject any agreement, contract or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in or other encumbrance on property of the Debtors'

estates; (g) a waiver of any claims or causes of action which may exist against any entity under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief authorized in this Final Order are valid, and the rights of all parties in interest are expressly reserved to context the extent validity, or perfection or seek avoidance of all such liens.  Any payment made pursuant to this Final Order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

8.      Under the circumstances of these Chapter 11 Cases, notice of the Motion is adequate under Bankruptcy Rule 6004(a).

9.      Notwithstanding the provisions of Bankruptcy Rule 6004(h), this Final Order shall be immediately effective and enforceable upon its entry.

10.     The Debtors are authorized to take any and all steps necessary or appropriate to carry out the relief granted in this Final Order.

11.     The Court shall retain exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Final Order.

Dated: _____, 2020
       Wilmington, Delaware

                                        _____
                                        UNITED STATES BANKRUPTCY JUDGE

27375700.3                                    5