**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| NORTHWEST HARDWOODS, INC., *et al.*,[1] | ) | Case No. 20-13005 (___) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

## JOINT PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION
## OF NORTHWEST HARDWOODS, INC., AND ITS DEBTOR AFFILIATES

> **THIS CHAPTER 11 PLAN WAS PREPARED AND IS BEING SOLICITED FOR ACCEPTANCE OR REJECTION IN ACCORDANCE WITH SECTIONS 1125 AND 1126 OF THE BANKRUPTCY CODE AND ANY APPLICABLE NON-BANKRUPTCY LAW. THIS CHAPTER 11 PLAN WILL BE SUBMITTED TO THE BANKRUPTCY COURT FOR APPROVAL FOLLOWING SOLICITATION AND THE DEBTORS' FILING FOR CHAPTER 11 BANKRUPTCY**

**GIBSON, DUNN & CRUTCHER LLP**
David M. Feldman (*pro hac vice* pending)
J. Eric Wise (*pro hac vice* pending)
Matthew K. Kelsey (*pro hac vice* pending)
Alan Moskowitz (*pro hac vice* pending)
200 Park Avenue
New York, NY 10166
T: (212) 351-4000
F: (212) 351-4035

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Sean M. Beach (No. 4070)
Jacob D. Morton (No. 6684)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
T: (302) 571-6600
F: (302) 571-1253

Dated:  November 13, 2020

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Northwest Hardwoods, Inc. (5401), Hardwoods Intermediate Holdings II, Inc. (7760), and Hardwoods Holdings, Inc. (3443).  The location of the Debtors' service address in these chapter 11 cases is: 1313 Broadway, Suite 300, Tacoma, WA 98402.

# TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................................................1

**ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES**................................................................1
- A. *Defined Terms* ............................................................................................................1
- B. *Rules of Interpretation* ...........................................................................................12
- C. *Computation of Time*...............................................................................................12
- D. *Governing Law*..........................................................................................................12
- E. *Reference to Monetary Figures*............................................................................13
- F. *Reference to the Debtors or the Reorganized Debtors*...................................13
- G. *Controlling Document*.............................................................................................13
- H. *Consent Rights* ..........................................................................................................13

**ARTICLE II. ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS**........................................13
- A. *Administrative Claims*.............................................................................................13
- B. *Professional Fee Claims* .........................................................................................13
- C. *Priority Tax Claims*.................................................................................................14
- D. *Statutory Fees* ...........................................................................................................14

**ARTICLE III. CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND INTERESTS**..........14
- A. *Classification of Claims and Interests* ................................................................14
- B. *Treatment of Classes of Claims and Interests* ...................................................15
- C. *Special Provision Governing Unimpaired Claims* ...........................................18
- D. *Voting Classes; Presumed Acceptance by Non-Voting Classes* ....................19
- E. *Elimination of Vacant Classes* ..............................................................................19
- F. *Subordinated Claims and Interests* ......................................................................19
- G. *Intercompany Interests*...........................................................................................19
- H. *Controversy Concerning Impairment*..................................................................20
- I. *Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code*............20

**ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN** ...........................................20
- A. *Corporate and Organizational Existence* ..........................................................20
- B. *Corporate Action* .....................................................................................................20
- C. *Organizational Documents of the Reorganized Debtors*.................................20
- D. *Managers, Directors and Officers of Reorganized Debtors; Corporate Governance* ...................21
- E. *Exit ABL Loan Documents* ......................................................................................21
- F. *Exit Take Back Debt Documents*............................................................................21
- G. *Exemption from Registration Requirements*.......................................................22
- H. *Cancellation of Certain Existing Security Interests* ........................................23
- I. *Management Incentive Plan*...................................................................................23
- J. *Restructuring Transactions* ...................................................................................23
- K. *Effectuating Documents; Further Transactions*................................................24
- L. *Vesting of Assets in the Reorganized Debtors* ...................................................24
- M. *Release of Liens, Claims and Interests*................................................................24
- N. *Cancellation of Notes, Stock, Certificates, Instruments and Agreements* .................25
- O. *Preservation and Maintenance of Debtors' Causes of Action* ......................25
- P. *Exemption from Certain Taxes and Fees* ............................................................26
- Q. *Restructuring Expenses* ..........................................................................................26
- R. *Distributions* .............................................................................................................27

**ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** .....................27
- A. *Debtors Assumption of Executory Contracts and Unexpired Leases*............27

| | | |
|---|---|---|
| B. | *Claims Based on Rejection of Executory Contracts and Unexpired Leases* | 28 |
| C. | *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases* | 28 |
| D. | *Assumption of Insurance Policies* | 29 |
| E. | *Rejection of MSA and CITIC Agreement* | 29 |
| F. | *Indemnification* | 29 |
| G. | *Employment Obligations and Programs* | 30 |
| H. | *Workers' Compensation Benefits* | 30 |
| I. | *Reservation of Rights* | 30 |
| J. | *Nonoccurrence of Effective Date* | 30 |
| K. | *Contracts and Leases Entered Into After the Petition Date* | 30 |

**ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS** ............................................ **31**
| | | |
|---|---|---|
| A. | *Distribution Record Date* | 31 |
| B. | *Dates of Distribution* | 31 |
| C. | *Distribution Agent* | 31 |
| D. | *Cash Distributions* | 31 |
| E. | *Rounding of Payments* | 31 |
| F. | *Allocation Between Principal and Interest* | 32 |
| G. | *General Distribution Procedures* | 32 |
| H. | *Address for Delivery of Distributions* | 32 |
| I. | *Unclaimed Distributions* | 32 |
| J. | *Withholding Taxes* | 32 |
| K. | *No Postpetition Interest on Claims* | 33 |
| L. | *Setoffs* | 33 |
| M. | *Surrender of Cancelled Instruments or Securities* | 33 |

**ARTICLE VII. PROCEDURES FOR RESOLVING DISPUTED CLAIMS AND INTERESTS** ........ **33**
| | | |
|---|---|---|
| A. | *Disputed Claims Process* | 33 |
| B. | *Claims Administration Responsibilities* | 33 |
| C. | *Estimation of Claims and Interests* | 34 |
| D. | *Amendments to Claims; Adjustment to Claims Register* | 34 |
| E. | *No Distributions Pending Allowance* | 34 |
| F. | *Distributions After Allowance* | 34 |
| G. | *No Interest* | 35 |
| H. | *Single Satisfaction of Claims* | 35 |
| I. | *Tax Treatment of Claim Distribution Amounts* | 35 |

**ARTICLE VIII. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS** ........ **35**
| | | |
|---|---|---|
| A. | *Compromise and Settlement of Claims, Interests, and Controversies* | 35 |
| B. | *Discharge of Claims and Termination of Interests* | 35 |
| C. | *Release of Liens* | 36 |
| D. | *Releases by the Debtors* | 36 |
| E. | *Releases by Holders of Claims and Interests of the Debtors* | 37 |
| F. | *Exculpation* | 37 |
| G. | *Injunction* | 38 |
| H. | *Protection Against Discriminatory Treatment* | 38 |
| I. | *Recoupment* | 38 |
| J. | *Reimbursement or Contribution* | 38 |
| K. | *Term of Injunctions or Stays* | 39 |
| L. | *Document Retention* | 39 |

**ARTICLE IX. CONDITIONS PRECEDENT TO THE EFFECTIVE DATE** ................................ **39**
| | | |
|---|---|---|
| A. | *Conditions Precedent to the Effective Date.* | 39 |
| B. | *Waiver of Conditions Precedent* | 39 |
| C. | *Substantial Consummation* | 40 |
| D. | *Effect of Non-Occurrence of Conditions to Consummation* | 40 |

**ARTICLE X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN**..............................**40**
    A.     *Modification of Plan* ...............................................................................................40
    B.     *Effect of Confirmation on Modifications*.........................................................40
    C.     *Revocation or Withdrawal of Plan* ..................................................................40

**ARTICLE XI. RETENTION OF JURISDICTION** ..............................................................................**41**

**ARTICLE XII. MISCELLANEOUS PROVISIONS** ...........................................................................**42**
    A.     *Immediate Binding Effect* ..................................................................................42
    B.     *Additional Documents*.........................................................................................42
    C.     *Reservation of Rights* .........................................................................................43
    D.     *Successors and Assigns* ......................................................................................43
    E.     *Service of Documents*..........................................................................................43
    F.     *Entire Agreement* ................................................................................................44
    G.     *Exhibit and Plan Supplement* ...........................................................................44
    H.     *Non-Severability* .................................................................................................44
    I.     *Votes Solicited in Good Faith* ...........................................................................45
    J.     *Waiver or Estoppel*.............................................................................................45
    K.     *No Strict Construction* .......................................................................................45
    L.     *Closing of Chapter 11 Cases*.............................................................................45

**INTRODUCTION**

Northwest Hardwoods, Inc., and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (each a "Debtor" and, collectively, the "Debtors") propose this joint prepackaged plan of reorganization (the "Plan") for, among other things, the resolution of the outstanding Claims against and Interests in the Debtors pursuant to chapter 11 of the Bankruptcy Code. Capitalized terms used in the Plan and not otherwise defined shall have the meanings set forth in Article I.A of the Plan. Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor for the resolution of outstanding Claims and Interests pursuant to the Bankruptcy Code. Each Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code. The classifications of Claims and Interests set forth in Article III of the Plan shall be deemed to apply separately with respect to each Plan proposed by each Debtor, as applicable. The Plan does not contemplate substantive consolidation of any of the Debtors. Reference is made to the Disclosure Statement for a discussion of the Debtors' history, business, properties and operations, projections, risk factors, a summary and analysis of this Plan, and certain related matters.

ALL HOLDERS OF CLAIMS AND INTERESTS ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY, PARTICULARLY HOLDERS OF CLAIMS AND INTERESTS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN.

**ARTICLE I.**
**DEFINED TERMS, RULES OF INTERPRETATION,**
**COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES**

A.    *Defined Terms*

1.    "*2014 Notes*" means the 7.500% Senior Secured Notes due 2021 issued and outstanding under the 2014 Indenture.

2.    "*2014 Indenture*" means that certain Indenture, dated as of July 18, 2014 (as amended, modified, or supplemented from time to time) by and between Hardwoods Acquisition, Inc. and The Bank of New York Mellon, as trustee and notes collateral agent.

3.    "*2015 Notes*" means the 7.500% Senior Secured Notes due 2021 issued and outstanding under the 2015 Indenture.

4.    "*2015 Indenture*" means that certain Indenture, dated as of February 20, 2015 (as amended, modified, or supplemented from time to time) by and between NWH Escrow Corporation and The Bank of New York Mellon, as trustee and notes collateral agent.

5.    "*ABL Agent*" means Bank of America, N.A., acting through such of its affiliates or branches as it may designate, in its capacity as administrative agent under the ABL Credit Agreement.

6.    "*ABL Claims*" means any Claim on account of the Obligations under the ABL Credit Agreement.

7.    "*ABL Credit Agreement*" means that certain Asset-Based Revolving Credit Agreement, dated as of July 18, 2014, and as amended, restated, amended and restated, supplemented or otherwise modified from time to time, by and among Northwest Hardwoods, Inc., as borrower, Hardwoods Intermediate Holdings II, Inc., the ABL Agent, and certain lenders party thereto.

8.    "*Ad Hoc Noteholder Group*" means the *ad hoc* group of certain Consenting Noteholders.

9.    "*Ad Hoc Noteholder Group Professionals*" means, collectively, Willkie, Guggenheim, and one local counsel retained in connection with the Chapter 11 Cases, as applicable, to represent the Ad Hoc Noteholder Group.

10.    "*Administrative Claim*" means a Claim for costs and expenses of administration of each of the Estates under sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including (a) actual, necessary

costs and expenses, incurred on or after the Petition Date until and including the Effective Date, of preserving the Estates and operating the Debtors' businesses, (b) Allowed Professional Fee Claims in the Chapter 11 Cases, (c) all Allowed requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code, and (d) all fees and charges assessed against the Estates under chapter 123 of title 28, United States Code, 28 U.S.C. §§ 1911-1930.

11.     "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.

12.     "*Allowed*" means, with respect to any Claim or Interest, such Claim or Interest or any portion thereof that a Debtor or a Reorganized Debtor has assented to the validity of, or that has been (a) allowed by a Final Order of the Bankruptcy Court, (b) allowed pursuant to the terms of the Plan, (c) allowed by agreement between the Holder of such Claim or Interest, on one hand, and the applicable Debtor, with the reasonable consent of the Required Consenting Noteholders, or Reorganized Debtor, as applicable, on the other hand or (d) allowed by a Final Order of a court in which such Claim or Interest could have been determined, resolved or adjudicated if the Chapter 11 Cases had not been commenced; *provided*, that notwithstanding the foregoing, the Reorganized Debtors shall retain all claims and defenses with respect to Allowed Claims that are Reinstated or otherwise Unimpaired pursuant to the Plan.

13.     "*Avoidance Actions*" means any and all avoidance, recovery, subordination, or other Claims, actions, or remedies that may be brought by or on behalf of the Debtors or their Estates or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under sections 502, 510, 542, 544, 545, 547 through and including 553, and 724(a) of the Bankruptcy Code or under similar or related state or federal statutes and common law, including fraudulent transfer laws.

14.     "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

15.     "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Delaware or such other court having jurisdiction over the Chapter 11 Cases, including, to the extent of a withdrawal of the reference under 28 U.S.C. § 157, the United States District Court for the District of Delaware.

16.     "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, 28 U.S.C. § 2075, as applicable to the Chapter 11 Cases and the general, local, and chambers rules of the Bankruptcy Court, as now in effect or hereafter amended.

17.     "*Business Day*" means any day other than a Saturday, Sunday, or other day on which commercial banks are authorized to close under the Laws of, or are in fact closed in, the state of New York.

18.     "*Cash*" or "*$*" means the legal tender of the United States of America or the equivalent thereof, including bank deposits, checks, and cash equivalents, as applicable.

19.     "*Causes of Action*" means any claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, Liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise.  Causes of Action also include:  (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; (d) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state or foreign Law fraudulent transfer or similar claim.

20.     "*CITIC*" means CCIP III Advisory Ltd., a Cayman Islands exempt company.

2

21.    "*CITIC Agreement*" means that certain Director Services and Fee Agreement, dated as of September 4, 2014, by and between CITIC and Northwest Hardwoods, Inc.

22.    "*CITIC Claim*" means the Claim of CITIC under the CITIC Agreement, which shall be $25,000 payable in Cash and shall be an Allowed General Unsecured Claim.

23.    "*Chapter 11 Cases*" means the procedurally consolidated cases filed or to be filed (as applicable) for the Debtors in the Bankruptcy Court under chapter 11 of the Bankruptcy Code.

24.    "*Claim*" means any claim, as defined in section 101(5) of the Bankruptcy Code, against any of the Debtors, whether or not assessed or Allowed.

25.    "*Claims Register*" means the official register of Claims against the Debtors maintained by the Solicitation Agent.

26.    "*Class*" means a category of Holders of Claims or Interests under section 1122(a) of the Bankruptcy Code.

27.    "*Confirmation*" means entry of the Confirmation Order by the Bankruptcy Court on the docket of the Chapter 11 Cases.

28.    "*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

29.    "*Confirmation Hearing*" means the combined hearing to consider approval of the Disclosure Statement and confirmation of the Plan under section 1128 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

30.    "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan under section 1129 of the Bankruptcy Code and approving the Disclosure Statement and the Solicitation Materials.

31.    "*Consenting Noteholders*" means the Holders of Notes Claims that are signatories to the Restructuring Support Agreement and remain parties thereto as of the Effective Date, but excluding, for the avoidance of doubt, the Sponsor Equityholder.

32.    "*Consenting Equityholder*" means those Equityholders that are signatories to the Restructuring Support Agreement and remain parties thereto as of the Effective Date, including the Sponsor Equityholder.

33.    "*Consenting Stakeholders*" means, collectively, the Consenting Noteholders and the Consenting Equityholders.

34.    "*Consummation*" means the occurrence of the Effective Date.

35.    "*Control*," "*Controlled*," or "*Controlling*," means the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of a Person, whether through the ability to exercise voting power, by contract or otherwise.

36.    "*Cure*" means the payment of Cash, or the distribution of other property or other action (as the parties may agree or the Bankruptcy Court may order), as necessary to cure defaults under an Executory Contract or Unexpired Lease of the Debtors that the Debtors seek to assume under section 365(a) of the Bankruptcy Code.

37.    "*Cure Claim*" means a Claim (unless waived or modified by the applicable counterparty) based upon a Debtor's defaults under an Executory Contract or an Unexpired Lease assumed by such Debtor under section 365 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

38.    "*D&O Liability Insurance Policies*" means all insurance policies (including any "tail policy") of any of the Debtors that cover current or former directors', managers', and officers' liability.

39.    "*Definitive Documents*" means those documents governing the Restructuring Transactions including the following:  (a) the Plan; (b) the Confirmation Order; (c) the Disclosure Statement and Solicitation Materials; (d) the Exit ABL Credit Documents; (e) the Exit Take Back Debt Documents; (f) the Exit Intercreditor Agreement; (g) the New Shareholders Agreement; (h) the Governance Documents; (i) the Interim Financing Order and the Final Financing Order, and to the extent applicable in each instance or in both instances, any related documents; (j) the Plan Supplement; and (k) the "first day" pleadings and all other orders sought pursuant thereto.

40.    "*Disclosure Statement*" means the *Disclosure Statement for the Joint Prepackaged Chapter 11 Plan of Reorganization of Northwest Hardwoods, Inc. and Its Debtor Affiliates*, dated as of November 13, 2020, that was prepared and distributed in accordance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3016 and 3018 and applicable non-bankruptcy law, as may be amended, supplemented or modified from time to time, and all exhibits, schedules, supplements, modifications, and amendments thereto.

41.    "*Disputed*" means, with respect to a Claim or Interest, or any portion thereof, (a) any Claim or Interest, which is disputed under this Plan or as to which the Debtor has interposed and not withdrawn an objection or request for estimation that has not been determined by a Final Order; (b) any Claim or Interest, proof of which was required to be Filed by order of the Bankruptcy Court but as to which a Proof of Claim or Proof of Interest was not timely or properly Filed; (c) any Claim or Interest that is listed in the Schedules, if any are Filed, as unliquidated, contingent or disputed, and as to which no request for payment or Proof of Claim or Proof of Interest has been Filed; or (d) any Claim or Interest that is otherwise disputed by the Debtor in accordance with applicable law or contract, which dispute has not been withdrawn, resolved or overruled by a Final Order *provided*, *however*, that in no event shall a Claim that is deemed Allowed pursuant to this Plan be a Disputed Claim.

42.    "*Distribution Agent*" means, as applicable, the Reorganized Debtors or any Entity the Reorganized Debtors select to make or to facilitate distributions in accordance with the Plan.

43.    "*Distribution Record Date*" means the date for determining which Holders of Allowed Claims and Interests are eligible to receive distributions pursuant to the Plan, which date shall be the Effective Date.

44.    "*Effective Date*" means the date that is the first Business Day after the Confirmation Date on which all conditions precedent to the occurrence of the Effective Date set forth in Article IX.A of the Plan have been satisfied or waived in accordance with Article IX.B of the Plan.

45.    "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

46.    "*Equity Recovery*" means 1% of the New Common Stock (on a fully diluted basis and set at the equity value as of the Effective Date) (subject to dilution from the Management Incentive Plan).

47.    "*Estate*" means the estate of any Debtor created under sections 301 and 541 of the Bankruptcy Code upon the commencement of the applicable Debtor's Chapter 11 Case.

48.    "*Exchange Act*" means the Securities Exchange Act of 1934, as amended.

49.    "*Exculpated Party*" means, collectively, and in each case in its capacity as such:  (a) the Debtors and the Reorganized Debtors, (b) with respect to each of the foregoing entities, each such Entity's current and former predecessors, successors, Affiliates (regardless of whether such interests are held directly or indirectly), subsidiaries, direct and indirect equity holders, and advisors and (c) with respect to each of the foregoing Entities in clauses (a) and (b), each of their respective current and former directors, officers, members, employees, partners, managers, independent contractors, agents, representatives, principals, professionals, consultants, financial advisors, attorneys, accountants, investment bankers, and other professional advisors.

50.     "*Executory Contract*" means a contract or lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

51.     "*Exhibit*" means an exhibit annexed to either the Plan or the Plan Supplement or as an exhibit or appendix to the Disclosure Statement (as such exhibits may be amended, supplemented, amended and restated, or otherwise modified from time to time).

52.     "*Existing Common Equity Interests*" means all existing common stock in HHI as reflected in the HHI stock ledger.

53.     "*Existing Equity Interests*" means all existing Interests in HHI.

54.     "*Exit ABL Agent*" means the administrative agent under the Exit ABL Credit Agreement.

55.     "*Exit ABL Credit Agreement*" means that certain credit agreement (as amended, restated, supplemented, or otherwise modified in accordance with its terms) governing the Exit ABL Facility, by and among Reorganized HHI, the guarantors named therein, the Exit ABL Agent and the lenders party thereto.

56.     "*Exit ABL Credit Documents*" means the Exit ABL Credit Agreement and any related notes, guaranties, collateral agreements, certificates, documents and instruments related to or executed in connection with the Exit ABL Credit Agreement.

57.     "*Exit ABL Facility*" means the asset-based facility with a commitment of $100 million, under and evidenced by the Exit ABL Credit Agreement.

58.     "*Exit Facility Documents*" means, collectively, the Exit ABL Credit Documents and the Exit Take Back Debt Documents.

59.     "*Exit Facilities*" means, collectively, the Exit ABL Facility and the Exit Take Back Debt.

60.     "*Exit Intercreditor Agreement*" means that certain intercreditor agreement governing the relative priorities between the collateral grants under the Exit ABL Credit Agreement and Exit Take Back Debt Agreement.

61.     "*Exit Take Back Agent*" means the administrative agent under the Exit Take Back Facility Agreement.

62.     "*Exit Take Back Debt Agreement*" means that certain agreement (as amended, restated, supplemented, or otherwise modified in accordance with its terms) governing the Exit Take Back Debt.

63.     "*Exit Take Back Debt Documents*" means the Exit Take Back Debt Agreement and any related notes, guaranties, collateral agreements, certificates, documents and instruments related to or executed in connection with the Exit Take Back Debt Agreement.

64.     "*Exit Take Back Debt*" means the senior secured debt of $110 million, under and evidenced by the Exit Take Back Debt Agreement.

65.     "*Final Decree*" means the decree contemplated under Bankruptcy Rule 3022.

66.     "*Final Financing Order*" means the order of the Bankruptcy Court approving the use of cash collateral on a final basis.

67.     "*Final Order*" means an order or judgment of the Bankruptcy Court (or any other court of competent jurisdiction) entered by the clerk of the Bankruptcy Court (or such other court) on the docket in the Chapter 11 Cases (or the docket of such other court), which has not been modified, amended, reversed, vacated or stayed and as to which (x) the time to appeal, petition for certiorari, or move for a new trial, stay, reargument or rehearing has expired and as

to which no appeal, petition for certiorari or motion for new trial, stay, reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, new trial, reargue, or rehear shall have been waived in writing in form and substance satisfactory to the Debtors or the Reorganized Debtors, as applicable, or (y) if an appeal, writ of certiorari, new trial, stay, reargument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court (or other court of competent jurisdiction) shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, stay, reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, stay, reargument or rehearing shall have expired, as a result of which such order shall have become final in accordance with Rule 8002 of the Federal Rules of Bankruptcy Procedure; *provided* that no order shall fail to be a Final Order solely due to the possibility that a motion pursuant to section 502(j) of the Bankruptcy Code, Rules 59 or 60 of the Federal Rules of Civil Procedure, or Rule 9024 of the Bankruptcy Rules may be filed with respect to such order.

68.    "*General Unsecured Claim*" means any Claim (including the MSA Claim and the CITIC Claim), against any Debtor, that is not an Administrative Claim, Priority Tax Claim, Other Priority Claim, Other Secured Claim, ABL Claim, Secured Notes Claim, Intercompany Claim or Section 510(b) Claim.

69.    "*Governance Documents*" means the organizational and governance documents for Reorganized HHI and its subsidiaries and affiliates, including without limitation, certificates of incorporation, certificates of formation or certificates of limited partnership (or equivalent organizational documents), bylaws, or limited liability company agreements (or equivalent governing documents), as applicable.

70.    "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

71.    "*Guggenheim*" means Guggenheim Securities, LLC, as financial advisor and investment banker to the Consenting Noteholders.

72.    "*HHI*" means Hardwoods Holdings, Inc., a corporation incorporated under the Laws of Delaware.

73.    "*Holder*" means any Entity that is the legal and/or beneficial owner of a Claim or Interest as of the applicable date of determination. For the avoidance of doubt, if a Claim is subject to an unsettled trade as of the Voting Record Date, the Holder shall be deemed to be the Entity that is the legal and/or beneficial owner of such claim after such trade has settled.

74.    "*Impaired*" means, with respect to any Class of Claims or Interests, a Claim or an Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

75.    "*Indentures*" means collectively the 2014 Indenture and the 2015 Indenture.

76.    "*Indenture Trustee*" means The Bank of New York Mellon, acting through such of its affiliates or branches as it may designate, in its capacity as trustee and notes collateral agent under the Indentures, or any successor trustee or notes collateral agent as permitted by the terms set forth in the Indentures.

77.    "*Intercompany Claim*" means any Claim held by a Debtor against another Debtor.

78.    "*Intercompany Interest*" means an Interest held by a Debtor in another Debtor.

79.    "*Intercreditor Agreement*" means that certain intercreditor agreement dated, July 18, 2014, and as amended, restated, amended and restated, supplemented or otherwise modified from time to time, by and among Northwest Hardwoods, Inc., Hardwoods Intermediate Holdings II, Inc., certain subsidiary guarantors, the ABL Agent and The Bank of New York Mellon in its capacity as collateral agent under the Indenture.

80.    "*Interest*" means any common stock, limited liability company interest, equity security (as defined in section 101(16) of the Bankruptcy Code), equity, ownership, profit interests, unit, or share in a Debtor, including all issued, unissued, authorized, or outstanding shares of capital stock of the Debtors and any other rights, options,

warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable or exchangeable securities or other agreements, arrangements or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any Debtor.

81.    "*Interim Financing Order*" means the order of the Bankruptcy Court approving the use of cash collateral on an interim basis.

82.    "*Internal Revenue Code*" means the Internal Revenue Code of 1986, as amended.

83.    "*Law*" means any federal, state, local, or foreign law (including common law), statute, code, ordinance, rule, regulation, order, ruling, or judgment, in each case, that is validly adopted, promulgated, issued, or entered by a governmental authority of competent jurisdiction (including the Bankruptcy Court).

84.    "*Lien*" means a "lien" as defined in section 101(37) of the Bankruptcy Code, and, with respect to any asset, includes any mortgage, lien, pledge, charge, security interest or other encumbrance of any kind or any other type of preferential arrangement that has the practical effect of creating a security interest, in respect of such asset.

85.    "*Management Incentive Plan*" means the incentive program for the officer and other management of the Reorganized Debtors, the terms of which shall be determined and approved by the New Board, provided that such terms shall be consistent with the Restructuring Term Sheet.

86.    "*MSA*" means that certain Management Services and Fee Agreement, dated as of July 18, 2014, by and between the Sponsor Equityholder and Northwest Hardwoods, Inc.

87.    "*MSA Claim*" means the Claim of the Sponsor Equityholder under the MSA, which shall be $900,000 payable in Cash and shall be an Allowed General Unsecured Claim.

88.    "*New Board*" means the initial board of directors (or similar governing body) of Reorganized HHI as selected in accordance with the New Organizational Documents, the Restructuring Term Sheet and the New Shareholders Agreement, the identities of which will be disclosed in the Plan Supplement or to the Bankruptcy Court (to the extent known) at or prior to the Confirmation Hearing in satisfaction of section 1129(a)(5) of the Bankruptcy Code.

89.    "*New Common Stock*" means the common stock, limited liability company membership units, or functional equivalent thereof of Reorganized HHI to be issued on the Effective Date.

90.    "*New Organizational Documents*" means the form of certificate or articles of incorporation (or functional equivalent), bylaws, or such other applicable formation documents (if any) of the Reorganized Debtors, each of which shall be included in the Plan Supplement.

91.    "*New Shareholders Agreement*" means the shareholders agreement (as amended, restated, supplemented or otherwise modified in accordance with its terms), including all annexes, exhibits, and schedules thereto, that will govern certain matters related to the governance of Reorganized HHI and the New Common Stock, which agreement shall become effective on the Effective Date.

92.    "*Obligations*" means those obligations outstanding under the Indentures, the ABL Credit Agreement, the Interim Financing Order or the Final Financing Order, as applicable.

93.    "*Ordinary Course Professionals Order*" means an order of the Bankruptcy Court, if any, approving a motion to employ ordinary course professionals in the Chapter 11 Cases.

94.    "*Other Priority Claim*" means a Claim entitled to priority under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

95.    "*Other Secured Claim*" means any Secured Claim against any Debtor other than an ABL Claim or Secured Notes Claim, other than a Secured Tax Claim.

96.    "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

97.    "*Petition Date*" means the date on which each of the Debtors commenced the Chapter 11 Cases.

98.    "*Plan*" means, collectively, this joint prepackaged chapter 11 plan of reorganization, the Exhibits, all annexes, supplements and schedules hereto, and any document to be executed, delivered, assumed or performed in connection with the occurrence of the Effective Date, including the documents to be included in the Plan Supplement, in each case as may be amended, modified or supplemented from time to time.

99.    "*Plan Supplement*" means one or more supplements to the Plan containing certain agreements, lists, documents or forms of documents and/or schedules or exhibits relating to the implementation of the Plan, which may include certain agreements, lists, documents or forms of documents and/or schedules or exhibits necessary to comply with Bankruptcy Code sections 1123(a)(7) and 1129(a)(5), each of which may be updated or further supplemented by the Debtors (subject to Section I.H. hereof) at any time up to and including the Effective Date.

100.    "*Preference Actions*" means any and all avoidance, recovery or other actions or remedies that may be brought by and on behalf of the Debtors or their Estates under section 547 of the Bankruptcy Code.

101.    "*Prepack Scheduling Order*" means an order of the Bankruptcy Court scheduling a combined hearing with respect to approval of the Disclosure Statement and confirmation of this Plan.

102.    "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

103.    "*Pro Rata*" means, at any time, the proportion that the face amount of a Claim or Equity Interest in a particular Class bears to the aggregate face amount of all Claims or Interests in that Class, unless the Plan provides otherwise.

104.    "*Professional*" means: (a) any Entity employed in the Chapter 11 Cases pursuant to section 327, 328, 363 or 1103 of the Bankruptcy Code and (b) any Entity seeking compensation or reimbursement of expenses in connection with the Chapter 11 Cases pursuant to section 503(b)(4) of the Bankruptcy Code.

105.    "*Professional Claims Bar Date*" means forty-five (45) days after the Effective Date.

106.    "*Professional Fee Claims*" means a Claim under sections 328, 330(a), 331, 363, 503 or 1103 of the Bankruptcy Code for compensation for services rendered or reimbursement of costs, expenses or other charges incurred by Professionals after the Petition Date and prior to the Effective Date; *provided*, that Professional Fee Claims shall not include Restructuring Expenses.

107.    "*Professional Fee Escrow Account*" means an interest-bearing account funded by the Debtors with Cash on or before the Effective Date pursuant to Article II of the Plan, in an amount equal to the Professional Fee Escrow Amount.

108.    "*Professional Fee Reserve Amount*" means the aggregate amount of Professional Fee Claims and other unpaid fees and expenses Professionals estimate they have incurred or will incur in rendering services to the Debtors prior to and as of the Effective Date, which estimates Professionals shall deliver to the Debtors as set forth in Article II.B of the Plan.

109.    "*Proof of Claim*" means a proof of Claim filed against any of the Debtors in the Chapter 11 Cases.

110.    "*Proof of Interest*" means a proof of Interest filed against any of the Debtors in the Chapter 11 Cases.

111.    "*Reinstate*," "*Reinstated*," or "*Reinstatement*" means, with respect to any Claim: (a) leaving unaltered the legal, equitable and contractual rights to which a Claim entitles the Holder of such Claim in accordance with section 1124 of the Bankruptcy Code or (b) notwithstanding any contractual provision or applicable Law that entitles the Holder of such Claim to demand or receive accelerated payment of such Claim after the occurrence of a default: (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code or of a kind that section 365(b)(2) of the Bankruptcy Code expressly does not require to be cured; (ii) reinstating the maturity of such Claim as such maturity existed before such default; (iii) compensating the Holder of such Claim for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; (iv) if such Claim arises from any failure to perform a non-monetary obligation, other than a default arising from failure to operate a non-residential real property lease subject to section 365(b)(1)(A) of the Bankruptcy Code, compensating the Holder of such Claim (other than any Debtor or an insider of any Debtor) for any actual pecuniary loss incurred by the Holder of such Claim as a result of such failure; and (v) not otherwise altering the legal, equitable or contractual rights to which such Claim entitles the Holder of such Claim.

112.    "*Rejected Executory Contract and Unexpired Lease List*" means, in the event that the Debtors determine to reject any Executory Contract or Unexpired Lease, the list (as may be amended from time to time prior to the Effective Date pursuant to Article V and XI of the Plan) of Executory Contracts and Unexpired Leases that will be rejected by the Debtors pursuant to Article V of the Plan, which shall be included in the Plan Supplement.

113.    "*Released Party*" means, collectively, and in each case in its capacity as such:  (a) the Debtors and the Reorganized Debtors; (b) the Consenting Noteholders; (c) the Indenture Trustee; (d) the Consenting Equityholders; (e) with respect to each of the foregoing entities, each such Entity's current and former predecessors, successors, Affiliates (regardless of whether such interests are held directly or indirectly), subsidiaries, direct and indirect equity holders, and funds; and (f) with respect to each of the foregoing Entities in clauses (a) through (e), each of their respective current and former directors, officers, members, employees, partners, managers, independent contractors, agents, representatives, principals, professionals, consultants, financial advisors, attorneys, accountants, investment bankers, and other professional advisors (with respect to clause (e), each solely in their capacity as such); *provided*, *however*, that any Holder of a Claim or Interest in a voting Class that objects to the Plan and votes to reject the Plan (and thereby opts out of the releases) shall not be a "Released Party."

114.    "*Releasing Parties*" means, collectively, and in each case in its capacity as such:  (a) the Debtors and the Reorganized Debtors; (b) the Consenting Noteholders; (c) the Indenture Trustee, (d) the Consenting Equityholders; (e) with respect to each of the foregoing entities in clauses (a) through (d), each such Entity's current and former predecessors, successors, Affiliates (regardless of whether such interests are held directly or indirectly), subsidiaries, direct and indirect equity holders, and funds; (f) with respect to each of the foregoing Entities in clauses (a) through (e), each of their respective current and former directors, officers, members, employees, partners, managers, independent contractors, agents, representatives, principals, professionals, consultants, financial advisors, attorneys, accountants, investment bankers, and other professional advisors (with respect to clause (e), each solely in their capacity as such); and (g) all Holders of Claims and Interests not described in the foregoing clauses (a) through (f); *provided*, *however*, that any Holder of a Claim or Interest that (1) votes to reject the Plan if such Holder was entitled to vote and (2) objects to the releases in the Plan, shall not be a "Releasing Party" for purposes of the Plan.

115.    "*Reorganized HHI*" means HHI, as reorganized pursuant to and under the Restructuring Transactions or any successor thereto.

116.    "*Reorganized Debtor*" means a Debtor, or any successor or assign thereto, by merger, consolidation, reorganization, or otherwise, in the form of a corporation, limited liability company, partnership, or other form, as the case may be, on and after the Effective Date, including Reorganized HHI.

117.    "*Required Consenting Equityholders Consent Right*" means the Required Consenting Equityholders' right to consent or approve any of the Definitive Documents (or any amendments, modifications, or supplements to the Definitive Documents) and shall apply solely to the extent any Definitive Document adversely (a) modifies the release, exculpation, injunction, or indemnification provisions related to the Consenting Equityholders as identified in the Restructuring Term Sheet or the Restructuring Support Agreement and implemented pursuant to the Plan or the Out-of-Court Restructuring (as applicable), (b) affects, in a material manner, the rights or obligations

of the Consenting Equityholders pursuant to or identified in the Restructuring Support Agreement and implemented pursuant to the Plan, (c) modifies the form of recovery of the Equityholders pursuant to the Restructuring Term Sheet or Plan, or (d) affects the MSA Payment (as defined in the Restructuring Term Sheet); *provided* that any ruling by a Court of competent jurisdiction (including the Bankruptcy Court permitting a holder of Company Claims or Interests other than a Consenting Stakeholder to opt out of releases in the Plan shall not give rise to any consent right.

118.     "*Required Consenting Equityholders*" means, as of the relevant date, Consenting Equityholders holding more than 50% of the aggregate Existing Equity Interests.

119.     "*Required Consenting Noteholders*" means, as of the relevant date, Consenting Noteholders holding more than 50% of the aggregate outstanding principal amount of Notes that are held by Consenting Noteholders.

120.     "*Required Consenting Stakeholders*" means the Required Consenting Noteholders and the Required Consenting Equityholders.

121.     "*Restructuring*" means a transaction, negotiated in good faith and at arms' length between the parties to the RSA, that will effectuate a financial restructuring of the Debtors' capital structure and financial obligations, on the terms and conditions set forth in the RSA, the Restructuring Term Sheet and this Plan.

122.     "*Restructuring Expenses*" means (i) all out-of-pocket third-party reasonable and documented fees and expenses of the Ad Hoc Noteholder Group Professionals, in each case that are due and owing after receipt of applicable invoices (including, without limitation, and for the avoidance of doubt, any such fees, expenses and other amounts which the Debtors agreed to pay pursuant to those certain engagement letters entered into, prior to the Petition Date, by and among the Debtors and such Ad Hoc Noteholder Group Professionals), (ii) all out-of-pocket third-party reasonable and documented fees and expenses of the Sponsor Equityholder Professionals up to the Sponsor Fee Cap, in each case that are due and owing after receipt of applicable invoices, and (iii) the reasonable and documented fees and expenses of the Indenture Trustee and the reasonable fees and expenses of its professionals, limited to one primary counsel and one local counsel, and only to the extent such fees and expenses are due and payable pursuant to the Indentures.

123.     "*Restructuring Support Agreement*" means that certain Restructuring Support Agreement, dated as of October 21, 2020, by and among the Debtors, the Consenting Equityholders, and the Consenting Noteholders, including all exhibits and attachments thereto, and as amended, restated, and supplemented from time to time in accordance with its terms.

124.     "*Restructuring Term Sheet*" means the term sheet attached as <u>Exhibit B</u> to the Restructuring Support Agreement (as may be amended, supplemented, or otherwise modified from time to time in accordance with the terms of the Restructuring Support Agreement).

125.     "*Restructuring Transactions*" means the restructuring transactions for the Debtors, in accordance with, and subject to the terms and conditions set forth in, the Restructuring Support Agreement, the Plan and the Plan Supplement.

126.     "*Rules*" means Rule 501(a)(1), (2), (3), and (7) of the Securities Act.

127.     "*SEC*" means the Securities and Exchange Commission.

128.     "*Section 510(b) Claim*" means a Claim subordinated pursuant to Section 510(b) of the Bankruptcy Code.

129.     "*Secured Notes*" means collectively, the 2014 Notes and the 2015 Notes.

130.     "*Secured Notes Claim*" means any Claim on account of the Obligations under the Indentures.

131.    "*Secured Tax Claim*" means any Secured Claim that, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.

132.    "*Secured*" means, when referring to a Claim:  (a) secured by a valid, perfected, and enforceable Lien on collateral in which the applicable Estate has an interest to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code; (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code; or (c) Allowed pursuant to the Plan as a Secured Claim.

133.    "*Securities Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, or any similar federal, state, or local law, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

134.    "*Security*" has the meaning set forth in section 2(a)(1) of the Securities Act.

135.    "*Solicitation*" means the Debtors' formal request for acceptances of the Plan, consistent with sections 1125 and 1126 of the Bankruptcy Code, rules 3017 and 3018 of the Bankruptcy Rules and applicable non-bankruptcy law.

136.    "*Solicitation Agent*" means Prime Clerk LLC, the notice, claims, and solicitation agent retained by the Debtors for the Chapter 11 Cases.

137.    "*Solicitation Materials*" means all materials, including the Plan, the Disclosure Statement, any letters of transmittal and ballots or other documents required to solicit votes to accept or reject the Plan.

138.    "*Sponsor Equityholder*" means Littlejohn & Co., LLC.

139.    "*Sponsor Equityholder Professionals*" means (a) Wachtell, Lipton, Rosen & Katz, as counsel to the Sponsor Equityholder and (b) one local counsel retained in connection with the Chapter 11 Cases.

140.    "*Sponsor Fee Cap*" means $200,000.

141.    "*Transfer*" means to sell, resell, reallocate, use, pledge, assign, transfer, hypothecate, participate, donate or otherwise encumber or dispose of, directly or indirectly (including through derivatives, options, swaps, pledges, forward sales or other transactions).

142.    "*UCC*" means the Uniform Commercial Code as the same may from time to time be in effect in the State of Delaware or the Uniform Commercial Code as in effect in any other state to the extent it may be applicable to any security interests in property of the Debtors.

143.    "*U.S.*" means the United States of America.

144.    "*U.S. Trustee*" means the Office of the United States Trustee for the District of Delaware.

145.    "*Unclaimed Distribution*" means any distribution under the Plan or as otherwise authorized by the Bankruptcy Court on account of an Allowed Claim to a Holder that, within six (6) months from when the distribution was first made, has not: (a) accepted a particular distribution or, in the case of distributions made by check, negotiated such check; (b) given notice to Reorganized HHI of an intent to accept a particular distribution; (c) responded to Reorganized HHI's request for information necessary to facilitate a particular distribution; (d) taken delivery of such distribution or where such distribution was returned for lack of a current address or otherwise; or (e) taken any other action necessary to facilitate such distribution.

146.    "*Unexpired Lease*" means a lease of nonresidential real property to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

147.    "*Unimpaired*" means any Claim or Equity Interest that is not designated as Impaired.

148.    "*Unimpaired Claim*" means Administrative Claims, Priority Tax Claims, Other Secured Claims, Other Priority Claims, and General Unsecured Claims.

149.    "*Voting Classes*" means collectively, Class 4 and Class 9.

150.    "*Voting Record Date*" means the date for determining which Holders are entitled to receive the Disclosure Statement and vote to accept or reject the Plan, as applicable, which date is November 11, 2020 for all Holders of Claims or Interests in the Voting Classes.

151.    "*Willkie*" means Willkie Farr & Gallagher LLP, counsel to the Consenting Noteholders.

B.    *Rules of Interpretation*

For purposes of the Plan, except as otherwise provided in this Plan: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) unless otherwise specified, any reference in the Plan to an existing document, schedule, or exhibit, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (c) unless otherwise specified, all references in the Plan to "Articles" and "Sections" are references to Articles and Sections, respectively, hereof or hereto; (d) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to any particular portion of the Plan; (e) any effectuating provisions may be interpreted by the Debtors (subject to the terms of the Restructuring Support Agreement) or the Reorganized Debtors in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (g) unless otherwise specified in the Plan, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (h) any term used in capitalized form in the Plan that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (i) references to docket numbers of documents filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (j) references to "Proofs of Claim," "Holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "Holders of Interests," "Disputed Interests," and the like as applicable; (k) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; (l) the terms "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; and (m) except as otherwise provided in the Plan, any reference to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter.

C.    *Computation of Time*

Unless otherwise specifically stated in the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed in the Plan. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

D.    *Governing Law*

Unless a rule of law or procedure is supplied by federal Law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing Law of such agreement shall control); *provided*, *however*, that corporate governance matters relating to the Debtors or the Reorganized Debtors, as applicable, shall be governed by the laws of the state of incorporation or formation of the relevant Debtor or Reorganized Debtor, as applicable.

*E.      Reference to Monetary Figures*

All references in the Plan to monetary figures refer to currency of the United States of America, unless otherwise expressly provided herein.

*F.      Reference to the Debtors or the Reorganized Debtors*

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or to the Reorganized Debtors mean the Debtors and the Reorganized Debtors, as applicable, to the extent the context requires.

*G.      Controlling Document*

In the event of an inconsistency between the Plan, the Restructuring Support Agreement, and the Disclosure Statement, the terms of the Plan shall control in all respects. In the event of an inconsistency between the Plan and any document included in the Plan Supplement, the terms of the relevant provision in the Plan Supplement shall control. In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall control.

*H.      Consent Rights*

Notwithstanding anything herein to the contrary, any and all consent rights of the parties to the Restructuring Support Agreement set forth in the Restructuring Support Agreement with respect to the form and substance of this Plan, all exhibits to the Plan, the Plan Supplements, and the Definitive Documents, including any amendments, restatements, supplements, or other modifications to such agreements and documents, and any consents, waivers, or other deviations under or from any such documents, shall be incorporated herein by this reference (including to the applicable definitions in Article I.A hereof) and be fully enforceable as if stated in full herein.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims set forth in Article III of the Plan.

*A.      Administrative Claims*

Subject to subparagraph (i) below, in full and complete satisfaction, settlement, discharge and release of and in exchange for each Allowed Administrative Claim (except to the extent that (a) the Holder of such Allowed Administrative Claim agrees in writing to less favorable treatment or (b) the Holder of such Allowed Administrative Claim has been paid in full during the Chapter 11 Cases), the Debtors or Reorganized Debtors, as applicable, at the option of the Debtors or Reorganized Debtors, as applicable, and with the consent of the Required Consenting Noteholders, (i) shall pay to each Holder of an Allowed Administrative Claim Cash in an amount equal to the due and unpaid portion of its Allowed Administrative Claim on the later of (x) the Effective Date, or as soon thereafter as is reasonably practicable and (y) as soon as practicable after such Allowed Administrative Claim becomes due and payable, or (ii) shall provide such other treatment as the Holder of such Allowed Administrative Claim may agree to or otherwise as permitted by section 1129(a)(9) of the Bankruptcy Code; *provided*, that Administrative Claims incurred by the Debtors in the ordinary course of business may be paid in the ordinary course of business in accordance with such applicable terms and conditions relating thereto without further notice to or order of the Bankruptcy Court.

*B.      Professional Fee Claims*

1.      Professional Fee Claims

Professionals (a) asserting a Professional Fee Claim shall deliver to the Debtors their estimates for purposes of the Debtors computing the Professional Fee Reserve Amount no later than five (5) Business Days prior to the

anticipated Effective Date; *provided*, that, for the avoidance of doubt, no such estimate shall be deemed to limit the amount of the fees and expenses that are the subject of a Professional's final request for payment of Professional Claims filed with the Bankruptcy Court; *provided*, *further*, that, if a Professional does not provide an estimate, the Debtors may estimate the unpaid and unbilled fees and expenses of such Professional; and (b) asserting a Professional Fee Claim for services rendered before the Effective Date, for the avoidance of doubt, excluding any claims for Restructuring Expenses, must file and serve on the Reorganized Debtors and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order or other order of the Bankruptcy Court an application for final allowance of such Professional Fee Claim no later than the Professional Claims Bar Date; *provided*, that any Professional who is subject to the Ordinary Course Professionals Order (as applicable) may continue to receive such compensation and reimbursement of expenses for services rendered before the Effective Date, without further Bankruptcy Court order, pursuant to the Ordinary Course Professionals Order. Objections to any Professional Fee Claim must be filed and served on the Reorganized Debtors and the applicable Professional within thirty (30) days after the filing of the final fee application with respect to the Professional Fee Claim. Any such objections that are not consensually resolved may be set for hearing on twenty-one (21) days' notice.

2.     Professional Fee Escrow Amount

On the Effective Date, the Debtors or the Reorganized Debtors, as applicable, shall establish the Professional Fee Escrow Account and fund such account with Cash equal to the Professional Fee Reserve Amount. The Professional Fee Escrow Account shall be maintained in trust for the Professionals. Each Holder of an Allowed Professional Fee Claim will be paid by the Reorganized Debtors in Cash from the Professional Fee Escrow Account within five (5) Business Days of entry of the order approving such Allowed Professional Fee Claim. If the Professional Fee Escrow Account is depleted, each Holder of an Allowed Professional Fee Claim will be paid the full amount of such Allowed Professional Fee Claim by the Reorganized Debtors in Cash within five (5) Business Days of entry of the order approving such Allowed Professional Fee Claim. All amounts remaining in the Professional Fee Escrow Account after all Allowed Professional Fee Claims have been paid in full shall revert to Reorganized HHI. If the Professional Fee Escrow Account is insufficient to pay the full amount of all Allowed Professional Fee Claims, remaining unpaid Allowed Professional Fee Claims will be promptly paid by the Reorganized Debtors without any further action or order of the Bankruptcy Court.

C.     *Priority Tax Claims*

In full and complete satisfaction, settlement, discharge and release of and in exchange for each Allowed Priority Tax Claim (except to the extent that (a) the Holder of such Allowed Priority Tax Claim agree in writing to less favorable treatment or (b) the Holder of such Allowed Priority Tax Claim has been paid in full during the Chapter 11 Cases), on the Effective Date, each Holder of an Allowed Priority Tax Claim will be treated in accordance with section 1129(a)(9)(C) of the Bankruptcy Code.

D.     *Statutory Fees*

Notwithstanding anything herein to the contrary, on the Effective Date, the Debtors shall pay, in full, in Cash, any fees due and owing to the U.S. Trustee at the time of Confirmation pursuant to 28 U.S.C. § 1930(a)(6). On and after the Effective Date, to the extent the Chapter 11 Cases remains open, and for so long as the Reorganized Debtors remain obligated to pay quarterly fees, the Reorganized Debtors shall file with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee. The Debtors or Reorganized Debtors, as applicable, shall remain obligated to pay quarterly fees to the U.S. Trustee until the earliest of the Chapter 11 Cases being closed, dismissed or converted to a case under chapter 7 of the Bankruptcy Code.

## ARTICLE III.
## CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND INTERESTS

A.     *Classification of Claims and Interests*

This Plan constitutes a separate Plan proposed by each Debtor within the meaning of section 1121 of the Bankruptcy Code.  Except for the Claims addressed in Article II of this Plan, all Claims and Interests are classified in

the Classes set forth below in accordance with section 1122 of the Bankruptcy Code.  A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes.  A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

This Plan groups the Debtors together solely for the purpose of describing treatment under the Plan, Confirmation of the Plan, and making distributions in accordance with the Plan in respect of Claims against and Interests in the Debtors under the Plan.  Such groupings shall not affect any Debtor's status as a separate legal Entity, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger or consolidation of any legal Entities, or cause the transfer of any assets, and, except as otherwise provided by or permitted under the Plan, all Debtors shall continue to exist as separate legal Entities after the Effective Date.

The following chart represents the classification of Claims and Interests for each Debtor pursuant to the Plan:

| Class | Claim or Interest | Status | Voting Rights |
|---|---|---|---|
| 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 3 | ABL Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 4 | Secured Notes Claims | Impaired | Entitled to Vote |
| 5 | General Unsecured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 6 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept or Reject) |
| 7 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 8 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept or Reject) |
| 9 | Existing Equity Interests | Impaired | Entitled to Vote |

Except as otherwise provided in the Plan, nothing under the Plan shall affect the rights of the Debtors or the Reorganized Debtors, as applicable, in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

B.    *Treatment of Classes of Claims and Interests*

To the extent a Class contains Allowed Claims or Allowed Interests with respect to any Debtor, the classification of Allowed Claims and Allowed Interests is specified below.

1.    Class 1 — Other Secured Claims

    (a)    *Classification*:  Class 1 consists of all Other Secured Claims against each Debtor.

    (b)    *Treatment*:  Except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, to the extent such claim has not already been paid in full during the Chapter 11 Cases, in full and final satisfaction, settlement, release, and discharge of, and in exchange for each Allowed Other Secured Claim, each Holder thereof shall receive, at the option of the Debtors and with the consent of the Required Consenting Noteholders: (a) payment in full in cash of its Other Secured Claim on the  Effective Date (or as soon thereafter as reasonably practicable); (b) the collateral securing its Allowed Other Secured Claim; (c) reinstatement of its Allowed Other Secured Claim under section 1124 of the Bankruptcy Code; (d) such other treatment rendering its Allowed Other Secured Claim unimpaired in accordance with section 1124 of the Bankruptcy Code; or (e) the indubitable equivalent of such claim.

    (c)    *Voting*:  Class 1 is Unimpaired under the Plan.  Holders of Allowed Other Secured Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Allowed Other Secured Claims are not entitled to vote to accept or reject the Plan.

2.    Class 2 — Other Priority Claims

    (a)    *Classification*:  Class 2 consists of all Other Priority Claims against each Debtor.

    (b)    *Treatment*:  Except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment, to the extent such claim has not already been paid in full during the Chapter 11 Cases, in full and final satisfaction, settlement, release, and discharge of, and in exchange for each Allowed Other Priority Claim, each Holder thereof shall receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code, in each case, as determined by the Debtors with the consent of the Required Consenting Noteholders.

    (c)    *Voting*:  Class 2 is Unimpaired under the Plan.  Holders of Allowed Other Priority Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Allowed Other Priority Claims are not entitled to vote to accept or reject the Plan.

3.    Class 3 —ABL Claims

    (a)    *Classification*:  Class 3 consists of all ABL Claims.

    (b)    *Treatment*:  On the Effective Date, each Holder of an Allowed ABL Claim shall be paid in full in cash with the proceeds of the Exit ABL Facility.

    (c)    *Voting*:  Class 3 is Unimpaired under the Plan.  Holders of Allowed ABL Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Allowed ABL Claims are not entitled to vote to accept or reject the Plan.

4.    Class 4 —Secured Notes Claims

    (a)    *Allowance*:  The Secured Notes Claims shall be Allowed in an aggregate principal amount of no less than $378,634,000, plus all other unpaid and outstanding obligations including any accrued and unpaid interest thereon (including at any applicable default rate), and all

16

applicable fees, costs, charges, expenses, premiums or other amounts arising under the Indentures and other Loan Documents (as defined therein), in each case, as of the Petition Date.

(b)    *Classification*: Class 4 consists of all Secured Notes Claims.

(c)    *Treatment*: On or as soon as reasonably practicable following the Effective Date, except to the extent that a Holder of an Allowed Secured Notes Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for each Allowed Secured Notes Claim, each Holder thereof (and/or its designee) shall receive its *Pro Rata* share of and/or interest in (i) 99% of the New Common Stock (subject to dilution from the Management Incentive Plan) and (ii) the Exit Take Back Debt.

(d)    *Voting*: Class 4 is Impaired under the Plan. Holders of Allowed Secured Notes Claims are entitled to vote to accept or reject the Plan.

5.    Class 5 — General Unsecured Claims

(a)    *Classification*: Class 5 consists of all General Unsecured Claims against each Debtor.

(b)    *Treatment*: Except to the extent that a Holder of an Allowed General Unsecured Claim has already been paid during the Chapter 11 Cases or such Holder agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for its Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive, at the Debtors' option and with the consent of the Required Consenting Noteholders: (i) if such Allowed General Unsecured Claim is due and payable on or before the Effective Date, payment in full, in Cash, of the unpaid portion of its Allowed General Unsecured Claim on the Effective Date; (ii) if such Allowed General Unsecured Claim is not due and payable before the Effective Date, payment in the ordinary course of business consistent with past practices; or (iii) other treatment, as may be agreed upon by the Debtors, the Required Consenting Noteholders and the Holder of such Allowed General Unsecured Claim, such that the Allowed General Unsecured Claim shall be rendered unimpaired pursuant to section 1124(1) of the Bankruptcy Code.

(c)    *Voting*: Class 5 is Unimpaired under the Plan. Holders of Allowed General Unsecured Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Allowed General Unsecured Claims are not entitled to vote to accept or reject the Plan.

6.    Class 6 — Intercompany Claims

(a)    *Classification*: Class 6 consists of all Intercompany Claims.

(b)    *Treatment*: On the Effective Date, in full and final satisfaction, settlement, discharge and release of, and in exchange for, each Intercompany Claim, at the option of the Reorganized Debtors and with the consent of the Required Consenting Noteholders, each Allowed Intercompany Claim shall be (i) Unimpaired and Reinstated or (ii) Impaired and canceled and released without any distribution.

(c)    *Voting*: Holders of Allowed Intercompany Claims in Class 6 are either (i) Unimpaired, and such Holders are conclusively deemed to have accepted the Plan pursuant to section 1126(f), or (ii) Impaired, and such Holders are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Allowed Intercompany Claims are not entitled to vote to accept or reject the Plan.

7. Class 7 — Section 510(b) Claims

    (a) *Classification*:  Class 7 consists of Section 510(b) Claims against each Debtor.

    (b) *Treatment*:  Section 510(b) Claims shall be discharged, canceled, released, and extinguished without any distribution to Holders of such Claims.  The Debtors believe that no Section 510(b) Claims exist.

    (c) *Voting*:  Class 7 is Impaired by the Plan, and Holder of Section 510(b) Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Section 510(b) Claims are not entitled to vote to accept or reject the Plan.

8. Class 8 — Intercompany Interests

    (a) *Classification*:  Class 8 consists of all Intercompany Interests.

    (b) *Treatment*:  On the Effective Date, in full and final satisfaction, settlement, discharge and release of, and in exchange for, each Intercompany Interest, at the option of the Reorganized Debtors and with the consent of the Required Consenting Noteholders, each Intercompany Interest shall be (i) Unimpaired and Reinstated or (ii) Impaired and canceled and released without any distribution.

    (c) *Voting*:  Holders of Intercompany Interests in Class 8 are either (i) Unimpaired, and such Holders are conclusively deemed to have accepted the Plan pursuant to section 1126(f), or (ii) Impaired, and such Holders are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Intercompany Interests are not entitled to vote to accept or reject the Plan.

9. Class 9 —Existing Equity Interests

    (a) *Classification*:  Class 9 consists of all Existing Equity Interests.

    (b) *Treatment*:  On the Effective Date, each Existing Equity Interest shall be canceled, released, and extinguished, and will be of no further force or effect and Holders of Allowed Existing Common Equity Interests on the Effective Date shall receive their Pro Rata share of the Equity Recovery.

    (c) *Voting*:  Class 9 is Impaired under the Plan.  Holders of Allowed Existing Common Equity Interests on the Voting Record Date are entitled to vote to accept or reject the Plan.

C.    *Special Provision Governing Unimpaired Claims*

    The Debtors, the Reorganized Debtors and any other Entity shall retain all defenses, counterclaims, rights to setoff and rights to recoupment, if any, as to Unimpaired Claims other than the CITIC Claim and the MSA Claim. Holders of Unimpaired Claims shall not be required to file a Proof of Claim with the Court and shall retain all their rights under applicable non-bankruptcy Law to pursue their Unimpaired Claims in any forum with jurisdiction over the parties. Notwithstanding anything to the contrary in the Plan, each Holder of an Unimpaired Claim shall be entitled to enforce its rights in respect of such Unimpaired Claim against the Debtors or the Reorganized Debtors, as applicable, until such Unimpaired Claim has been either (a) paid in full (i) on terms agreed to between the Holder of such Unimpaired Claim and the Debtors or the Reorganized Debtors, as applicable, or (ii) in accordance with the terms and conditions of the applicable documentation or laws giving rise to such Unimpaired Claim or (b) otherwise satisfied or disposed of as determined by a court of competent jurisdiction. If the Debtors or the Reorganized Debtors dispute any Unimpaired Claim, such dispute shall be determined, resolved or adjudicated pursuant to applicable non-bankruptcy law.

D.      *Voting Classes; Presumed Acceptance by Non-Voting Classes*

      1.      <u>Presumed Acceptance of Plan</u>: Classes 1, 2, 3, 5, 6 (if so treated) and 8 (if so treated) are Unimpaired by the Plan and are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

      2.      <u>Presumed Rejection of Plan</u>: Classes 6 (if so treated), 7, and 8 (if so treated) are Impaired by the Plan and are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

      3.      <u>Voting Classes</u>: Each Holder of an Allowed Claim or Interest in the Voting Classes as of the applicable Voting Record Date is entitled to vote to accept or reject the Plan.

      4.      <u>Acceptance by Impaired Classes of Claims</u>: Pursuant to section 1126(c) of the Bankruptcy Code and except as otherwise provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims has accepted the Plan if the Holders of at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims in such Class actually voting have voted to accept the Plan.

      5.      <u>Plan Cannot be Confirmed as to Some or All Debtors</u>: If the Plan cannot be confirmed as to any Debtor, with the consent of the Required Consenting Noteholders and without prejudice to and subject to the respective parties' rights under the Restructuring Support Agreement, then the Debtors (a) may revoke the Plan as to such Debtor or (b) may revoke the Plan as to any Debtor (and any such Debtor's Chapter 11 Case may be converted, continued or dismissed) and confirm the Plan as to the remaining Debtors to the extent required without the need for re-solicitation as to any Holder of a Claim against and/or Equity Interest in a Debtor for which the Plan is not so revoked.

E.      *Elimination of Vacant Classes*

      Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

F.      *Subordinated Claims and Interests*

      The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors or Reorganized Debtors, as applicable, reserve the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

G.      *Intercompany Interests*

      To the extent Reinstated under the Plan, distributions on account of Intercompany Interests are not being received by Holders of such Intercompany Interests on account of their Intercompany Interests, but for the purposes of administrative convenience and in exchange for the Debtors' and Reorganized Debtors' agreement under the Plan to provide management services to certain other Debtors and Reorganized Debtors, to use certain funds and assets as set forth in the Plan to make certain distributions and satisfy certain obligations of certain other Debtors and Reorganized Debtors to the Holders of certain Allowed Claims.  For the avoidance of doubt, any Interest in non-Debtor subsidiaries owned by a Debtor shall continue to be owned by the applicable Reorganized Debtor.

H.      *Controversy Concerning Impairment*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

I.      *Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code*

The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.  The Debtors reserve the right to modify the Plan in accordance with Article X hereof to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules or to withdraw the Plan as to such Debtor.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.      *Corporate and Organizational Existence*

Except as otherwise provided in the Plan or any agreement, instrument or other document incorporated in the Plan or the Plan Supplement, on the Effective Date, each Reorganized Debtor shall continue to exist, pursuant to its organizational documents in effect prior to the Effective Date, except as otherwise set forth herein or in the Plan Supplement, without any prejudice to any right to terminate such existence (whether by merger or otherwise) in accordance with applicable Law after the Effective Date. To the extent such documents are amended on or prior to the Effective Date, such documents are deemed to be amended pursuant to the Plan without any further notice to or action, order or approval of the Bankruptcy Court.

B.      *Corporate Action*

On or before the Effective Date, as applicable, all actions contemplated under the Plan or the Plan Supplement shall be deemed authorized and approved in all respects, including:  (1) adoption or assumption, as applicable, of the agreements with existing management; (2) selection of the directors, managers, and officers for the Reorganized Debtors; (3) implementation of the Restructuring Transactions; (4) issuance and distribution of the New Common Stock by the Distribution Agent; (5) adoption of the New Organizational Documents; (6) entry into the Exit Facility Documents; (7) the rejection, assumption, or assumption and assignment, as applicable, of Executory Contracts and Unexpired Leases; (8) all other actions contemplated under the Plan (whether to occur before, on, or after the Effective Date); and (9) all other acts or actions contemplated or reasonably necessary or appropriate to properly consummate the Restructuring Transactions contemplated by the Plan (whether to occur before, on, or after the Effective Date). All matters provided for in the Plan involving the corporate structure of the Debtors or the Reorganized Debtors, as applicable, and any corporate action required by the Debtors or the Reorganized Debtors in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, managers, or officers of the Debtors or the Reorganized Debtors, as applicable. On or (as applicable) prior to the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors, as applicable, shall be authorized to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Reorganized Debtors, including the New Shareholders Agreement, the New Organizational Documents, the Exit Facility Documents, and any and all other agreements, documents, securities, and instruments relating to the foregoing. The authorizations and approvals contemplated by Article IV.J of the Plan shall be effective notwithstanding any requirements under non-bankruptcy law**.**

C.      *Organizational Documents of the Reorganized Debtors*

On the Effective Date, the New Organizational Documents shall become effective and be deemed to amend and restate the current organizational documents without the need for any further notice or approvals. To the extent

necessary, the New Organizational Documents will (i) include, among other things, pursuant to section 1123(a)(6) of the Bankruptcy Code, a provision prohibiting the issuance of non-voting equity securities, but only to the extent required by section 1123(a)(6) of the Bankruptcy Code, and (ii) to the extent necessary or appropriate, include such provisions as may be needed to effectuate and consummate the Plan and the transactions contemplated herein. After the Effective Date, each Reorganized Debtor may amend and restate its organizational documents, as permitted by applicable Law and pursuant to the terms contained therein.

D.      *Managers, Directors and Officers of Reorganized Debtors; Corporate Governance*

On the Effective Date, Reorganized HHI shall enter into and deliver the New Shareholders Agreement, in substantially the forms included in the Plan Supplement, to each Holder of New Common Stock and such Holders shall be bound thereby, without the need for execution by any party thereto other than Reorganized HHI.

The number and identity of the initial members of the New Board shall be determined by the Required Consenting Noteholders in consultation with the Debtors or Reorganized Debtors, as applicable, provided that the initial directors of the New Board shall include the President of HHI. Subsequent members of the New Board shall be selected in accordance with the New Organizational Documents, the Restructuring Term Sheet and the New Shareholders Agreement.

E.      *Exit ABL Loan Documents*

1.      On the Effective Date, the applicable Reorganized Debtors shall execute and deliver the Exit ABL Credit Agreement and the other Exit ABL Credit Documents. Confirmation shall be deemed approval of the Exit ABL Facility (including transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred and fees paid by the Debtors or Reorganized Debtors in connection therewith). The Reorganized Debtors shall execute and deliver those documents necessary or appropriate to obtain the Exit ABL Facility, including the Exit ABL Credit Documents.

2.      On the Effective Date, as applicable, all Liens and security interests granted pursuant to, or in connection with the Exit ABL Credit Agreement shall be deemed granted by the Reorganized Debtors pursuant to the Exit ABL Credit Agreement, and all Liens and security interests granted pursuant to, or in connection with the Exit ABL Credit Agreement (including any Liens and security interests granted on the Reorganized Debtors' assets) shall (i) be valid, binding, perfected, enforceable liens and security interests in the property described in the Exit ABL Credit Agreement and the other "Loan Documents" (as defined therein or any similar defined term), with the priorities established in respect thereof under applicable non-bankruptcy Law and the Exit Intercreditor Agreement, and (ii) not be enjoined or subject to discharge, impairment, release, avoidance, recharacterization, or subordination under any applicable law, the Plan, or the Confirmation Order.

3.      The Reorganized Debtors shall also execute, deliver, file, record and issue any other related notes, guarantees, deeds of trust, security documents or instruments (including UCC financing statements), amendments to the foregoing, or agreements in connection therewith, in each case, without (A) further notice to or order of the Bankruptcy Court or (B) further act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Entity (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order without the need for any filings or recordings) and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable Law to give notice of such liens and security interests to third parties.

F.      *Exit Take Back Debt Documents*

1.      On the Effective Date, the applicable Reorganized Debtors shall execute and deliver the Exit Take Back Debt Agreement and the other Exit Take Back Debt Documents. Confirmation shall be deemed approval of the Exit Take Back Debt (including transactions contemplated thereby, and all actions

to be taken, undertakings to be made, and obligations to be incurred and fees paid by the Debtors or Reorganized Debtors in connection therewith). The Reorganized Debtors shall execute and deliver those documents necessary or appropriate to obtain the Exit Take Back Debt, including the Exit Take Back Debt Documents.

2.      On the Effective Date, as applicable, all Liens and security interests granted pursuant to, or in connection with the Exit Take Back Debt Agreement shall be deemed granted by the Reorganized Debtors pursuant to the Exit Take Back Debt Agreement, and all Liens and security interests granted pursuant to, or in connection with the Exit Take Back Debt Agreement (including any Liens and security interests granted on the Reorganized Debtors' assets) shall (i) be valid, binding, perfected, enforceable liens and security interests in the property described in the Exit Take Back Debt Agreement and the other "Loan Documents" (as defined therein or any similar defined term), with the priorities established in respect thereof under applicable non-bankruptcy Law and the Exit Intercreditor Agreement, and (ii) not be enjoined or subject to discharge, impairment, release, avoidance, recharacterization, or subordination under any applicable law, the Plan, or the Confirmation Order.

3.      The Reorganized Debtors shall also execute, deliver, file, record and issue any other related notes, guarantees, deeds of trust, mortgages, security documents or instruments (including UCC financing statements), amendments to the foregoing, or agreements in connection therewith, in each case, without (A) further notice to or order of the Bankruptcy Court or (B) further act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Entity (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order without the need for any filings or recordings) and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable Law to give notice of such liens and security interests to third parties.

For the avoidance of doubt, on the Effective Date, all Holders of Secured Notes Claims shall be deemed party to the Exit Take Back Debt Agreement and the applicable other Exit Take Back Debt Documents, in each case, without the need for execution by any party thereto other than Reorganized HHI.

G.      *Exemption from Registration Requirements*

All shares of New Common Stock or other Securities, as applicable, issued and distributed pursuant to the Plan, will be issued and distributed without registration under the Securities Act or any similar federal, state, or local Law in reliance upon (1) section 1145 of the Bankruptcy Code; (2) section 4(a)(2) of the Securities Act or Regulation D promulgated thereunder; or (3) such other exemption as may be available from any applicable registration requirements.

To the extent that the offering, issuance, and distribution of any shares of New Common Stock or other Securities pursuant to the Plan is in reliance upon section 1145 of the Bankruptcy Code, it is exempt from, among other things, the registration requirements of Section 5 of the Securities Act and any other applicable U.S. state or local Law requiring registration prior to the offering, issuance, distribution, or sale of Securities. Such shares of New Common Stock or other Securities to be issued under the Plan pursuant to section 1145 of the Bankruptcy Code (a) will not be "restricted securities" as defined in Rule 144(a)(3) under the Securities Act, and (b) subject to the terms of the New Shareholders Agreement, will be freely tradable and transferable by any initial recipient thereof that (i) is not an "affiliate" of the Debtors as defined in Rule 144(a)(1) under the Securities Act, (ii) has not been such an "affiliate" within 90 days of such transfer, and (iii) is not an entity that is an "underwriter" as defined in subsection (b) of Section 1145 of the Bankruptcy Code.

All shares of New Common Stock or other Securities pursuant to the Plan that are not issued in reliance on section 1145 of the Bankruptcy Code will be issued without registration under the Securities Act or any similar federal, state, or local Law in reliance on section 4(a)(2) of the Securities Act or Regulation D promulgated thereunder, or such other exemption as may be available from any applicable registration requirements. All shares of New Common Stock or other Securities issued pursuant to the exemption from registration set forth in section 4(a)(2) of the Securities Act or Regulation D promulgated thereunder will be considered "restricted securities" and may not be transferred

except pursuant to an effective registration statement under the Securities Act or an available exemption therefrom. The New Common Stock underlying the Management Incentive Plan will be issued pursuant to a registration statement or an available exemption from registration under the Securities Act and other applicable law.

The availability of the exemption under section 1145 of the Bankruptcy Code or any other applicable securities laws shall not be a condition to the occurrence of the Effective Date.

Should the Reorganized Debtors elect, on or after the Effective Date, to reflect all or any portion of the ownership of Reorganized HHI's New Common Stock through the facilities of the Depositary Trust Company ("***DTC***"), the Reorganized Debtors shall not be required to provide any further evidence other than the Plan or Confirmation Order with respect to the treatment of such applicable portion of Reorganized HHI's New Common Stock, and such Plan or Confirmation Order shall be deemed to be legal and binding obligations of the Reorganized Debtors in all respects.

DTC shall be required to accept and conclusively rely upon the Plan and Confirmation Order in lieu of a legal opinion regarding whether Reorganized HHI's New Common Stock is exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services.

Notwithstanding anything to the contrary in the Plan, no Entity (including, for the avoidance of doubt, DTC) may require a legal opinion regarding the validity of any transaction contemplated by the Plan, including, for the avoidance of doubt, whether Reorganized HHI's New Common Stock are exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services.

H.      *Cancellation of Certain Existing Security Interests*

Upon the full payment or other satisfaction of an Allowed Other Secured Claim, or promptly thereafter, the Holder of such Allowed Other Secured Claim shall deliver to the Debtors or Reorganized Debtors (as applicable) any termination statements, instruments of satisfaction or releases of all security interests with respect to its Allowed Other Secured Claim that may reasonably be required in order to terminate any related financing statements, mortgages, mechanic's liens or lis pendens and take any and all other steps reasonably requested by the Debtors, the Reorganized Debtors, the Exit ABL Agent or the Exit Take Back Agent that are necessary to cancel and/or extinguish any Liens or security interests securing such Holder's Other Secured Claim.

I.      *Management Incentive Plan*

Within sixty (60) days of the Effective Date, the Reorganized Debtors shall enter into the Management Incentive Plan, the terms of which shall be determined and approved by the New Board, provided that such terms shall be consistent with the Restructuring Term Sheet.

J.      *Restructuring Transactions*

Following Confirmation, the Debtors and/or the Reorganized Debtors, as applicable, shall take any actions as may be necessary or appropriate to effect a restructuring of the Debtors' business or the overall organization or capital structure subject to and consistent with the terms of the Plan and the Restructuring Support Agreement and subject to the consent rights set forth therein in all respects. The actions taken by the Debtors and/or the Reorganized Debtors, as applicable, to effect the Restructuring Transactions may include: (i) the execution, delivery, adoption and/or amendment of appropriate agreements or other documents of restructuring, conversion, disposition, dissolution, liquidation, merger or transfer containing terms that are consistent with the terms of the Plan and the Restructuring Support Agreement and any documents contemplated hereunder or thereunder and that satisfy the applicable requirements of applicable state Law and any other terms to which the applicable parties may agree; (ii) the execution, delivery, adoption and/or amendment of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan, the Restructuring Support Agreement and any documents contemplated hereunder or thereunder and having any other terms for which the applicable parties may agree; (iii) the filing of appropriate certificates or articles of incorporation or formation, reincorporation, merger, conversion, dissolution or other organizational documents, as applicable, pursuant to

applicable state law, including certificates of dissolution with respect to certain Debtors; (iv) the execution, delivery, adoption and/or amendment of all filings, disclosures or other documents necessary to obtain any necessary third-party approvals; (v) the execution and delivery of the New Shareholders Agreement and the New Organizational Documents and any certificates or articles of incorporation, bylaws, or such other applicable formation, organizational, governance, or constitutive documents (if any) of each Reorganized Debtor (including all actions to be taken, undertakings to be made, and obligations to be incurred and fees and expenses to be paid by the Debtors and/or the Reorganized Debtors, as applicable), and the issuance, distribution, reservation, or dilution, as applicable, of the New Common Stock, as set forth herein; (vi) the execution and delivery of the Exit Facility Documents (including all actions to be taken, undertakings to be made, and obligations to be incurred and fees and expenses to be paid by the Debtors and/or the Reorganized Debtors, as applicable); (vii) the adoption of the Management Incentive Plan and the issuance and reservation of equity thereunder to the participants in the Management Incentive Plan on the terms and conditions set by New Board after the Effective Date, and/or (viii) all other actions that the Debtors and/or the Reorganized Debtors, as applicable, determine, with the consent of the Required Consenting Noteholders, to be necessary, desirable or appropriate to implement, effectuate and consummate the Plan or the Restructuring Transactions contemplated hereby, including making filings or recordings that may be required by applicable state Law in connection with the Restructuring Transactions. All matters provided for pursuant to the Plan that would otherwise require approval of the equity holders, managing members, members, managers, directors, or officers of any Debtor (as of or prior to the Effective Date) will be deemed to have been so approved and will be in effect prior to, on or after the Effective Date (as appropriate) pursuant to applicable law, the provisions of the New Organizational Documents, and without any requirement of further action by the equity holders, managing members, members, managers, directors or officers of such Debtors, or the need for any approvals, authorizations, actions or consents of any Person.

The Confirmation Order shall and shall be deemed to, pursuant to both section 1123 and section 363 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan.

K.       *Effectuating Documents; Further Transactions*

On and after the Effective Date, the Reorganized Debtors and the officers and members of the New Board and any other board of directors or managers of any of the Reorganized Debtors shall be authorized and (as applicable) directed to issue, execute, deliver, file or record such agreements, securities, instruments, releases and other documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of the Plan and the Restructuring Transactions, including the Exit Facility Documents, the New Shareholders Agreement, the Management Incentive Plan and any New Organizational Documents in the name of and on behalf of one or more of the Reorganized Debtors, without the need for any approvals, authorization or consents except those expressly required pursuant to the Plan.

L.       *Vesting of Assets in the Reorganized Debtors*

Except as provided elsewhere in the Plan, or in the Confirmation Order, on or after the Effective Date, all property and assets of the Debtors' Estates (including Causes of Action, but only to the extent such Causes of Action have not been waived or released pursuant to the terms of the Plan, pursuant to an order of the Bankruptcy Court, or otherwise) and any property and assets acquired by the Debtors pursuant to the Plan, will vest in the Reorganized Debtors, free and clear of all Liens or Claims. Except as may be otherwise provided in the Plan, on and after the Effective Date, the Reorganized Debtors may operate their businesses and may use, acquire or dispose of property and compromise or settle any Claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan, the Confirmation Order, the New Organizational Documents or the New Shareholders Agreement.

M.       *Release of Liens, Claims and Interests*

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, concurrently with the applicable distributions made pursuant to the Plan, all Liens, Claims or Interests in or against the property of the Estates will be fully released, terminated, extinguished and discharged, in each case without further notice to or order of the Bankruptcy Court, act

or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Entity. Any Entity holding such Liens, Claims, or Interests will, if necessary, pursuant to section 1142 of the Bankruptcy Code, promptly execute and deliver to the Reorganized Debtors such instruments of termination, release, satisfaction and/or assignment (in recordable form) as may be reasonably requested by the Reorganized Debtors and shall incur no liability to any Entity in connection with its execution and delivery of any such instruments.

On the Effective Date, in exchange for the treatment described herein and as set forth in Article III the Secured Notes Claims and the ABL Claims shall be discharged, the Liens on the Collateral (as defined in the Indentures or the ABL Credit Agreement, as applicable) shall be released and the Indentures and the ABL Credit Agreement shall be cancelled and be of no further force or effect, and the obligations of the Debtors or the Reorganized Debtors thereunder or in any way related thereto shall be discharged and deemed satisfied in full, and the ABL Agent and the Indenture Trustee shall be released from all duties and obligations thereunder; *provided, however*, that notwithstanding Confirmation or the occurrence of the Effective Date, any credit document or agreement that governs the rights of the Holder of a Claim or Interest and any debt issued thereunder shall continue in effect solely for purposes of (1) allowing Holders of Allowed Claims to receive distributions under the Plan; (2) allowing and preserving the rights of the ABL Agent and the Indenture Trustee to make distributions pursuant to the Plan; (3) preserving the ABL Agent's and the Indenture Trustee's rights to compensation and indemnification as against any money or property distributable to the Holders of ABL Claims or Secured Notes Claims, including permitting the ABL Agent and the Indenture Trustee to maintain, enforce, and exercise their respective charging liens, if any, against such distributions; (4) preserving all rights, including rights of enforcement, of the ABL Agent and the Indenture Trustee against any Person other than a Released Party (including the Debtors), including with respect to indemnification or contribution from the Holders of ABL Claims and Secured Notes Claims, pursuant and subject to the terms of the Indentures and the ABL Credit Agreement, respectively, as in effect on the Effective Date; (5) permitting the ABL Agent and the Indenture Trustee to enforce any obligation (if any) owed to the ABL Agent and the Indenture Trustee, respectively, under the Plan; (6) permitting the ABL Agent and the Indenture Trustee to appear in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court or any other court; and (7) permitting the ABL Agent and the Indenture Trustee to perform and seek compensation and reimbursement for any functions that are necessary to effectuate the foregoing; *provided, further*, however, that (a) the preceding proviso shall not affect the discharge of Claims or Interests pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan, or result in any expense or liability to the Debtors or Reorganized Debtors, as applicable, except as expressly provided for in the Plan and (b) except as otherwise provided in the Plan, the terms and provisions of the Plan shall not modify any existing contract or agreement that would in any way be inconsistent with distributions under the Plan. The ABL Agent and the Trustee shall be discharged and shall have no further obligation or liability except as provided in the Plan and Confirmation Order, and after the performance by the ABL Agent and the Indenture Trustee and their representatives and professionals of any obligations and duties required under or related to the Plan or Confirmation Order, the ABL Agent and the Indenture Trustee shall be relieved of and released from any obligations and duties arising under the Plan, the Confirmation Order, and, respectively, the ABL Credit Agreement and the Indentures, except with respect to such other rights that survive the termination of the Indentures. The fees, expenses, and costs of the ABL Agent and the Indenture Trustee, including fees, expenses, and costs of its professionals incurred after the Effective Date in connection with the ABL Credit Agreement and the Indentures, as applicable, and reasonable and documented costs and expenses associated with effectuating distributions pursuant to the Plan will be paid by the Reorganized Debtors in the ordinary course.

N.    *Cancellation of Notes, Stock, Certificates, Instruments and Agreements*

On the Effective Date, all stock, units, instruments, certificates, agreements and other documents evidencing the Existing Equity Interests will be cancelled, and the obligations of the Debtors thereunder or in any way related thereto will be fully released, terminated, extinguished and discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or any requirement of further action, vote or other approval or authorization by any Person.

O.    *Preservation and Maintenance of Debtors' Causes of Action*

1.    Maintenance of Causes of Action

In accordance with section 1123(b) of the Bankruptcy Code, except as otherwise provided in Article VIII or elsewhere in the Plan or the Confirmation Order, or in any contract, instrument, release or other agreement entered

into in connection with the Plan, on and after the Effective Date, the Reorganized Debtors shall retain any and all rights to commence, pursue, litigate or settle, as appropriate, any and all Causes of Action of the Debtors, whether existing as of the Petition Date or thereafter arising, in any court or other tribunal, including in an adversary proceeding filed in the Chapter 11 Cases, but excluding all Avoidance Actions, which shall be deemed released and waived by the Debtors and Reorganized Debtors as of the Effective Date except for Avoidance Actions brought as counterclaims or defenses to claims asserted against the Debtors. The Reorganized Debtors, as the successors in interest to the Debtors and their Estates, may, in their sole and absolute discretion, and will have the exclusive right to, enforce, sue on, settle, compromise, transfer or assign (or decline to do any of the foregoing) any or all such Causes of Action, without notice to or approval from the Bankruptcy Court. The Reorganized Debtors or their respective successor(s) may pursue such retained claims, rights or Causes of Action, suits or proceedings as appropriate, in accordance with the best interests of the Reorganized Debtors or their respective successor(s) who hold such rights. Upon the Effective Date, the Reorganized Debtors, as applicable, shall be deemed to have released all Preference Actions held by the Debtors, if any. For the avoidance of doubt, in no instance will any Cause of Action maintained or preserved pursuant to this Article IV.O.1 include any Cause of Action with respect to, or against, a Released Party

2.      Preservation of All Causes of Action Not Expressly Settled or Released

Unless a Cause of Action against a Holder of a Claim or an Equity Interest or other Entity is (A) expressly waived, relinquished, released, compromised or settled in the Plan (including and for the avoidance of doubt, the releases contained in Article VIII of the Plan) or any Final Order (including the Confirmation Order), or (B) subject to the discharge and injunction provisions in Article VIII of the Plan, and the Confirmation Order, in the case of each of clauses (A) and (B), the Debtors and the Reorganized Debtors, as applicable, expressly reserve such Cause of Action for later adjudication and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches will apply to such Causes of Action upon or after the Confirmation of the Plan or the Effective Date of the Plan based on the Plan or the Confirmation Order. No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement or the Disclosure Statement to any Causes of Action against it as any indication that the Debtors or the Reorganized Debtors will not pursue any and all available Causes of Action against it. The Debtors and the Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan. For the avoidance of doubt, in no instance will any Cause of Action maintained or preserved pursuant to this Article IV.O.2 include any Cause of Action with respect to, or against, a Released Party.

P.      *Exemption from Certain Taxes and Fees*

To the maximum extent permitted by section 1146 of the Bankruptcy Code, any post-confirmation (a) issuance, transfer or exchange of any securities, instruments or documents, (b) creation of any Lien, mortgage, deed of trust or other security interest, (c) sale transactions consummated by the Debtors and approved by the Bankruptcy Court, including any transfers effectuated under the Plan, (d) assumption, assignment, or sale by the Debtors of their interests in unexpired leases of nonresidential real property or executory contracts pursuant to section 365(a) of the Bankruptcy Code, (e) grant of collateral under the Exit Take Back Debt Agreement and (f) issuance, renewal, modification or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including the Confirmation Order shall not be subject to any document recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, sales tax, use tax or other similar tax or governmental assessment. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or Governmental Unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument without requiring the payment of any filing fees, documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax or similar tax.

Q.      *Restructuring Expenses*

The Restructuring Expenses incurred, or estimated to be incurred, up to and including the Effective Date shall be paid in full in Cash on the Effective Date (to the extent not previously paid during the course of the Chapter 11 Cases) without the requirement to file a fee application with the Bankruptcy Court and without any requirement

for Bankruptcy Court review or approval; *provided*, that, with respect to any such Restructuring Expenses of legal counsel to the Ad Hoc Noteholder Group or the Sponsor Equityholder (subject to the Sponsor Fee Cap), the Debtors and Reorganized Debtors (as applicable) shall have the right to review (subject to applicable attorney-client privilege) and object to any such Restructuring Expenses on reasonableness grounds. All Restructuring Expenses to be paid on the Effective Date shall be estimated prior to and as of the Effective Date and such estimates shall be delivered to the Debtors at least five (5) Business Days before the anticipated Effective Date; *provided*, *further*, that such estimate shall not be considered an admission or limitation with respect to such Restructuring Expenses. On the Effective Date, final invoices for all Restructuring Expenses incurred prior to and as of the Effective Date shall be submitted to the Debtors.

R.     *Distributions*

Except as otherwise provided in the Plan or the Confirmation Order, all Cash necessary for the Debtors or Reorganized Debtors to make payments required pursuant to the Plan will be paid from the Cash balances of the Debtors or the Reorganized Debtors. Cash payments to be made pursuant to the Plan will be made by the Reorganized Debtors, as applicable, or any designated Affiliates of the Reorganized Debtors on their behalf.

**ARTICLE V.**
**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

A.     *Debtors Assumption of Executory Contracts and Unexpired Leases*

Except as otherwise provided in the Plan, as of the Effective Date, each Debtor shall be deemed to have assumed each Executory Contract and Unexpired Lease to which it is a party in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, without the need for any further notice to or action, order or approval of the Bankruptcy Court, unless such Executory Contract or Unexpired Lease: (1) was assumed or rejected previously by such Debtor; (2) expired or terminated pursuant to its own terms prior to the Effective Date; (3) is the subject of a motion to reject filed on or before the Effective Date; or (4) identified on the Rejected Executory Contract and Unexpired Lease List (which shall be included in the Plan Supplement) as an Executory Contract or Unexpired Lease designated for rejection. The assumption of Executory Contracts and Unexpired Leases hereunder may include the assignment of certain of such contracts to one or more Reorganized Debtors. The Confirmation Order will constitute an order of the Bankruptcy Court approving the above described assumptions.

Entry of the Confirmation Order by the Bankruptcy Court shall constitute an order approving the rejection of Executory Contracts and Unexpired Leases identified on the Rejected Executory Contract and Unexpired Lease List and assumption or, as applicable, assumption and assignment, of all other Executory Contracts and Unexpired Leases, subject to the exceptions noted above, all pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Notwithstanding anything to the contrary in the Plan, the Debtors or Reorganized Debtors, as applicable, reserve the right to alter, amend, modify, or supplement the Rejected Executory Contract and Unexpired Lease List prior to the Effective Date.

To the maximum extent permitted by law, to the extent that any provision in any Executory Contract or Unexpired Lease assumed, or amended and assumed, and, in either case, potentially assigned, restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption, or amendment and assumption, and, in either case, the potential assignment of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

Except as otherwise provided herein or agreed to by the Debtors and the applicable counterparty, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal and any other interests. Modifications, amendments, supplements and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the

Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith.

If certain, but not all, of a contract counterparty's Executory Contracts and/or Unexpired Leases are assumed pursuant to the Plan, the Confirmation Order shall be a determination that such counterparty's Executory Contracts and/or Unexpired Leases that are being rejected pursuant to the Plan are severable agreements that are not integrated with those Executory Contracts and/or Unexpired Leases that are being assumed pursuant to the Plan. Parties seeking to contest this finding with respect to their Executory Contracts and/or Unexpired Leases must file a timely objection to the Plan on the grounds that their agreements are integrated and not severable, and any such dispute shall be resolved by the Bankruptcy Court at the Confirmation Hearing (to the extent not resolved by the parties prior to the Confirmation Hearing).

B.      *Claims Based on Rejection of Executory Contracts and Unexpired Leases*

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court within 30 days after the later of (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, (2) the effective date of such rejection, or (3) the Effective Date. Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors or the Reorganized Debtors, the Estates, or their property without the need for any objection by the Reorganized Debtors of further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Proof of Claim to the contrary. All Allowed Claims arising from the rejection of an Executory Contract or Unexpired Lease shall be classified as General Unsecured Claims and shall be treated in accordance with Article III.B.5 of the Plan.

C.      *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases*

The Reorganized Debtors shall satisfy any monetary defaults under any Executory Contract or Unexpired Lease to be assumed hereunder, to the extent required by section 365(b)(1) of the Bankruptcy Code, upon assumption thereof in the ordinary course of business. If a counterparty to any Executory Contract or Unexpired Lease believes any amounts are due as a result of such Debtor's monetary default thereunder, it shall assert a Cure Claim against the Debtors or Reorganized Debtors, as applicable, in the ordinary course of business, subject to all defenses the Debtors or Reorganized Debtors may have with respect to such Cure Claim. Any Cure Claim shall be deemed fully satisfied, released and discharged upon payment by the Reorganized Debtors of the applicable Cure Claim; *provided*, that nothing herein shall prevent the Reorganized Debtors from paying any Cure Claim despite the failure of the relevant counterparty to assert or file such request for payment of such Cure Claim. The Debtors, with the consent of the Required Consenting Noteholders, or the Reorganized Debtors, as applicable, may settle any Cure Claims without any further notice to or action, order or approval of the Bankruptcy Court.

As set forth in the notice of the Confirmation Hearing, any objection to the assumption of an Executory Contract or Unexpired Lease under the Plan, including an objection regarding the ability of the Reorganized Debtors to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code), must have been filed with the Bankruptcy Court by the deadline set by the Bankruptcy Court for objecting to Confirmation of the Plan, or such other deadline as may have been established by order of the Bankruptcy Court. To the extent any such objection is not determined by the Bankruptcy Court at the Confirmation Hearing, such objection may be heard and determined at a subsequent hearing. Any counterparty to an Executory Contract or Unexpired Lease that did not timely object to the proposed assumption of any Executory Contract or Unexpired Lease by the deadline established by the Bankruptcy Court will be deemed to have consented to such assumption.

In the event of a dispute regarding (1) the amount of any Cure Claim, (2) the ability of the Reorganized Debtors to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed or (3) any other matter pertaining to assumption or the payment of Cure Claims required by section 365(b)(1) of the Bankruptcy Code, payment of a Cure

Claim, if any, shall occur as soon as reasonably practicable after entry of a Final Order or Final Orders resolving such dispute and approving such assumption. The Debtors (with the consent of the Required Consenting Noteholders), or Reorganized Debtors, as applicable, reserve the right at any time prior to the Effective Date to move to reject any Executory Contract or Unexpired Lease based upon the existence of any unresolved dispute or upon a resolution of such dispute that is unfavorable to the Debtors or Reorganized Debtors.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise, and full payment of any applicable Cure Claims pursuant to the Plan, shall result in the full release and satisfaction of any Claims or defaults, whether monetary or non-monetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the date that the Reorganized Debtors assume such Executory Contract or Unexpired Lease. Any Proofs of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

D.    *Assumption of Insurance Policies*

Notwithstanding anything in the Plan to the contrary, all of the Debtors' insurance policies and any agreements, documents or instruments relating thereto, are treated as and deemed to be Executory Contracts under the Plan. On the Effective Date, pursuant to section 365(a) of the Bankruptcy Code, the Reorganized Debtors shall be deemed to have assumed all insurance policies and any agreements, documents and instruments related thereto, including all D&O Liability Insurance Policies. Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Reorganized Debtors' assumption of all such insurance policies, including the D&O Liability Insurance Policies. Notwithstanding anything to the contrary contained in the Plan, Confirmation shall not discharge, impair or otherwise modify any indemnity obligations presumed or otherwise referenced in the foregoing insurance policies, including the D&O Liability Insurance Policies, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Reorganized Debtors under the Plan as to which no Proof of Claim need be filed, and shall survive the Effective Date.

After the Effective Date, the Reorganized Debtors shall not terminate or otherwise reduce, modify or restrict in any way, the coverage under any D&O Liability Insurance Policy (including such tail coverage liability insurance) in effect or purchased as of the Petition Date, and all members, managers, directors and officers of the Reorganized Debtors who served in such capacity at any time prior to the Effective Date or any other individuals covered by such D&O Liability Insurance Policy shall be entitled to the full benefits of any such policy for the full term of such policy (and all tail coverage related thereto) regardless of whether such members, managers, directors and/or officers remain in such positions after the Effective Date.

E.    *Rejection of MSA and CITIC Agreement*

Notwithstanding anything herein to the contrary, on the Effective Date, the MSA and the CITIC Agreement shall each be rejected pursuant to section 365(a) of the Bankruptcy Code. In full and complete satisfaction of any and all Claims, rights or obligations under the MSA and the rejection thereof, the Sponsor Equityholder shall be entitled to the MSA Claim. In full and complete satisfaction of any and all Claims, rights or obligations under the CITIC Agreement and the rejection thereof, CITIC shall be entitled to the CITIC Claim. As of the Effective Date, each of the MSA Claim and the CITIC Claim shall be Allowed General Unsecured Claims. For the avoidance of doubt and notwithstanding anything herein to the contrary, the Allowed General Unsecured Claims in respect of the MSA Claim and the CITIC Claim shall be paid in Cash on the Effective Date.

F.    *Indemnification*

All indemnification obligations in place as of the Effective Date (whether in the bylaws, certificates of incorporation or formation, limited liability company agreements, other organizational or formation documents, board resolutions, indemnification agreements, employment contracts, service contracts, or otherwise) for the current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors, as applicable, shall be assumed and remain in full force and effect after the Effective Date, and shall not be modified, reduced, discharged, impaired, or otherwise affected in any way, including by Confirmation of the

Plan, and shall survive unimpaired and unaffected, irrespective of when such obligation arose by the Reorganized Debtors, as applicable.

G.      *Employment Obligations and Programs*

Except as otherwise provided in the Plan, on and after the Effective Date, subject to any Final Order and, without limiting any authority provided to the New Board under the Debtors' respective formation, organizational and constituent documents, the Reorganized Debtors shall adopt, assume, and/or honor in the ordinary course of business any written contracts, agreements, policies, programs, and plans, in accordance with their respective terms, for, among other things, compensation, bonuses, reimbursement, indemnity, health care benefits, disability benefits, deferred compensation benefits, travel benefits, vacation and sick leave benefits, savings, severance benefits, retirement benefits, welfare benefits, relocation programs, life insurance and accidental death and dismemberment insurance, including written contracts, agreements, policies, programs, and plans, in accordance with their respective terms, for bonuses and other incentives or compensation for the Debtors' current and former employees, directors, officers, and managers, including executive compensation programs and all existing compensation arrangements for the employees of the Debtors, in each case on the current terms of such arrangements as may be modified from time to time in the ordinary course of business.

H.      *Workers' Compensation Benefits*

Except as otherwise provided in the Plan, as of the Effective Date, the Debtors and the Reorganized Debtors will continue to honor their obligations under: (i) all applicable workers' compensation laws in states in which the Reorganized Debtors operate; and (ii) the Debtors' written contracts, agreements, agreements of indemnity, self-insurer workers' compensation bonds and any other policies, programs, and plans regarding or relating to workers' compensation and workers' compensation insurance; all such contracts and agreements are treated as Executory Contracts under the Plan and on the Effective Date will be assumed by the Reorganized Debtors pursuant to the provisions of sections 365 and 1123 of the Bankruptcy Code. Notwithstanding anything to the contrary contained in the Plan, Confirmation of the Plan will not impair or otherwise modify any rights of the Reorganized Debtors under any such contracts, agreements, policies, programs or plans regarding or relating to workers' compensation or workers' compensation insurance.

I.      *Reservation of Rights*

Nothing contained in the Plan shall constitute an admission by the Debtors, Reorganized Debtors or any other party that any contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtors or Reorganized Debtors have any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption, the Debtors or Reorganized Debtors, as applicable, shall have forty-five (45) calendar days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease, including by rejecting such contract or lease effective as of the Confirmation Date or such other date the Reorganized Debtors deem appropriate.

J.      *Nonoccurrence of Effective Date*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code, unless such deadline(s) have expired.

K.      *Contracts and Leases Entered Into After the Petition Date*

Contracts and leases entered into after the Petition Date by any Debtor and any Executory Contracts and Unexpired Leases assumed by any Debtor may be performed by the applicable Reorganized Debtor in the ordinary course of business.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

A.      *Distribution Record Date*

Distributions hereunder to the Holders of Allowed Claims and Interests shall be made to the Holders of such Claims and Interests as of the Distribution Record Date. Any transfers of Claims or Interests after the Distribution Record Date shall not be recognized for purposes of the Plan unless otherwise provided herein.

B.      *Dates of Distribution*

Except as otherwise provided in the Plan, on the Effective Date or, if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes an Allowed Claim, or, in either case, as soon as reasonably practicable thereafter, each Holder of an Allowed Claim or Interest shall receive the distributions that the Plan provides for Allowed Claims and Interest in the applicable Class and in the manner provided herein. In the event that any payment or act under the Plan is required to be made or performed on a date that is not on a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. Except as otherwise provided in the Plan, Holders of Claims and Interests shall not be entitled to interest, dividends or accruals on the distributions provided for therein, regardless of whether distributions are delivered on or at any time after the Effective Date.

C.      *Distribution Agent*

Except as otherwise provided in the Plan, all distributions under the Plan, including the distribution of the New Common Stock, shall be made by the Distribution Agent or by such other Entity designated by the Reorganized Debtors as a Distribution Agent on the Effective Date. The Distribution Agent shall not be required to give any bond or surety or other security for the performance of the duties as Distribution Agent unless otherwise ordered by the Bankruptcy Court.

The Distribution Agent shall be empowered to (a) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under the Plan, (b) make all distributions contemplated hereby, (c) empower professionals to represent it with respect to its responsibilities and (d) exercise such other powers as are necessary and proper to implement the provisions hereof. If the Distribution Agent is an entity other than the Reorganized Debtors, such entity shall be paid its reasonable fees and expenses, including the reasonable fees and expenses of its attorneys or other professionals.

D.      *Cash Distributions*

Distributions of Cash may be made either by check drawn on a domestic bank or electronic transfer from a domestic bank, at the option of the Reorganized Debtors.

E.      *Rounding of Payments*

Whenever payment of a fraction of a dollar would otherwise be called for, the actual payment may reflect a rounding down of such fraction to the nearest whole dollar or zero if the amount is less than one dollar.

No fractional membership units or shares shall be issued or distributed under the Plan. Each Person entitled to receive New Common Stock shall receive the total number of whole units or shares of New Common Stock to which such Person is entitled. Whenever any distribution to a particular Person would otherwise call for the distribution of a fraction of a unit or share of New Common Stock, the actual distribution of units or shares of such New Common Stock shall be rounded down to the nearest whole number.

To the extent Cash, shares, stock or units that are to be distributed under the Plan remain undistributed as a result of the rounding down of such fraction to the nearest whole dollar or whole number of notes, shares, stock or units, such Cash, shares, stock or units shall be treated as an Unclaimed Distribution under the Plan

31

F.    *Allocation Between Principal and Interest*

Distributions to any Holder of an Allowed Claim shall be allocated first to the principal amount of any such Allowed Claim, and then, to the extent the consideration exceeds such amount, to the remainder of such Claim comprising interest accrued through the Effective Date, if any (but solely to the extent that interest is an allowable portion of such Allowed Claim).

G.    *General Distribution Procedures*

The Distribution Agent shall make all distributions of Cash or other property required under the Plan, unless the Plan specifically provides otherwise. All Cash and other property held by the Reorganized Debtors for distribution under the Plan shall not be subject to any claim by any Person, except as provided under the Plan.

H.    *Address for Delivery of Distributions*

Distributions to Holders of Allowed Claims and Interests, to the extent provided for under the Plan, shall be made (1) at the address set forth on any Proofs of Claim filed by such Holders (to the extent such Proofs of Claim are filed in the Chapter 11 Cases), (2) at the address set forth in any written notices of address change delivered to the Debtors, (3) at the address in the Debtors' books and records or (4) in accordance with the Indentures in the case of distributions to Holders of Secured Notes Claims.

I.    *Unclaimed Distributions*

If the distribution to any Holder becomes an Unclaimed Distribution, no further distribution shall be made to such Holder, and the Reorganized Debtors shall have no obligation to make any further distribution to such Holder.

Such Unclaimed Distribution and such Holder's rights to the distribution or any subsequent distribution shall be deemed forfeit under the Plan. Notwithstanding any federal or state escheat, abandoned or unclaimed property laws to the contrary, such Unclaimed Distribution and any subsequent distributions on account of such Holder's Allowed Claim or Interest shall be deemed disallowed, discharged and forever barred as unclaimed property under section 347(b) of the Bankruptcy Code and shall revert to and vest in the Reorganized Debtors free of any restrictions thereon. Holders that fail to claim such Unclaimed Distribution shall have no claim whatsoever on account of such Unclaimed Distribution, or any subsequent distributions, against the Debtors or the Reorganized Debtors or against any Holder of an Allowed Claim or Interest to whom distributions are made by the Reorganized Debtors.

J.    *Withholding Taxes*

Pursuant to section 346(f) of the Bankruptcy Code, the Reorganized Debtors shall, to the extent applicable, comply with all withholding and reporting requirements imposed by federal, state or local taxing authorities and shall be entitled to deduct any federal, state or local withholding taxes from any distributions made with respect to Allowed Claims or Interests, as appropriate. From and as of the Effective Date, the Reorganized Debtors shall comply with all reporting obligations imposed on them by any Governmental Unit in accordance with applicable Law with respect to such withholding taxes. Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions or establishing any other mechanisms they believe are reasonable and appropriate. The Reorganized Debtors may require that a Holder entitled to receive a distribution pursuant to the Plan provide such Holder's taxpayer identification number and such other information and certification as may be necessary for the Reorganized Debtors to comply with applicable tax reporting and withholding laws. Notwithstanding the foregoing, each Holder that is to receive a distribution hereunder shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding and other tax obligations, on account of such distribution.

K.      *No Postpetition Interest on Claims*

        Unless otherwise specifically provided for in an order of the Court, the Plan or the Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims or Interests, and no Holder of a Claim or Equity Interest shall be entitled to interest, dividends or other accruals accruing on or after the Petition Date on any such Claim or Equity Interest.

L.      *Setoffs*

        Except as otherwise expressly provided for herein, the Reorganized Debtors may, to the extent permitted under applicable law, setoff against any Allowed Claim and any distributions to be made pursuant to the Plan on account of such Allowed Claim, the claims, rights and Causes of Action of any nature that the Reorganized Debtors may hold against the Holder of such Allowed Claim that are not otherwise waived, released or compromised in accordance with the Plan; *provided,* that neither such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtors of any such claims, rights and Causes of Action that the Reorganized Debtors possesses against such Holder; *provided, further,* that no such setoff shall be permitted against any (1) CITIC Claim, (2) MSA Claim, (3) Allowed Secured Notes Claim or (4) any distributions to be made pursuant to the Plan on account of any such Allowed Secured Notes Claim.

M.      *Surrender of Cancelled Instruments or Securities*

        Except as otherwise provided herein, as a condition precedent to receiving any distribution on account of its Allowed Claim or Interest, each Holder of an Allowed Claim or Interest in the Voting Classes based upon an instrument or other security shall be deemed to have surrendered such instrument, security or other documentation underlying such Claim and all such surrendered instruments, securities and other documentation shall be deemed cancelled pursuant to Article IV.O of the Plan.

# ARTICLE VII.
## PROCEDURES FOR RESOLVING DISPUTED CLAIMS AND INTERESTS

A.      *Disputed Claims Process*

        Holders of Claims generally are not required to file a Proof of Claim with the Bankruptcy Court and shall be subject to the Bankruptcy Court process only to the extent provided in the Plan. On and after the Effective Date, except as otherwise provided in the Plan, all Allowed Claims shall be paid pursuant to the Plan in the ordinary course of business of the Reorganized Debtors and shall survive the Effective Date as if the Chapter 11 Cases had not been commenced. Other than Claims arising from the rejection of an Executory Contract or Unexpired Lease, if the Debtors or the Reorganized Debtors dispute any Claim, such dispute shall be determined, resolved, or adjudicated, as the case may be, in a manner as if the Chapter 11 Cases had not been commenced and shall survive the Effective Date as if the Chapter 11 Cases had not been commenced.

        With respect to Claims arising from the rejection of an Executory Contract or Unexpired Lease, any Proof of Claim filed shall—without the need for notice to or action, order, or approval of the Bankruptcy Court—be deemed Disputed unless the Debtors or the Reorganized Debtors, as applicable, determine otherwise, or until such time as such Disputed Claim is deemed Allowed by a Final Order or as otherwise set forth in this Article VII of the Plan. All Proofs of Claim required to be filed by the Plan that are filed after the date that they are required to be filed pursuant to the Plan shall be disallowed and forever barred, estopped and enjoined from assertion, and shall not be enforceable against any Reorganized Debtor, without the need for any objection by the Reorganized Debtors or any further notice to or action, order or approval of the Bankruptcy Court.

B.      *Claims Administration Responsibilities*

        Except as otherwise specifically provided in the Plan, after the Effective Date, the Reorganized Debtors shall have the sole authority to: (1) file, withdraw, or litigate to judgment, objections to Claims; (2) settle or compromise any Disputed Claim without any further notice to or action, order or approval by the Bankruptcy Court; and (3)

administer and adjust the Claims Register to reflect any such settlements, compromises or withdrawals without any further notice to or action, order or approval by the Bankruptcy Court, *provided, however,* that the Reorganized Debtors shall not have the authority to object to the MSA Claim or the CITIC Claim, each of which shall be Allowed General Unsecured Claims. For the avoidance of doubt, except as otherwise provided in the Plan, from and after the Effective Date, each Reorganized Debtor shall have and retain any and all rights and defenses such Debtor or its assignor had immediately prior to the Effective Date with respect to any Disputed Claim, including the Causes of Action retained pursuant to Article V.M of the Plan.

C.      *Estimation of Claims and Interests*

Before or after the Effective Date, the Debtors, with the reasonable consent of the Required Consenting Noteholders, or the Reorganized Debtors, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection. Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any Disputed Claim or contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions), and the relevant Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim. Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has filed a motion requesting the right to seek reconsideration on or before twenty-one (21) days after the date on which such Claim is estimated. All of the aforementioned Claims and objection, estimation and resolution procedures are cumulative and not exclusive of each other. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

D.      *Amendments to Claims; Adjustment to Claims Register*

On or after the Effective Date, except as provided in the Plan or the Confirmation Order, a Claim may not be filed or amended without the prior authorization of the Bankruptcy Court or the Reorganized Debtors, and any such new or amended Claim filed without such prior authorization shall be deemed disallowed in full and expunged without any further action, order or approval of the Bankruptcy Court. Any duplicate Claim or any Claim that has been paid, satisfied, amended, or superseded may be adjusted or expunged on the Claims Register by the Reorganized Debtors without the Reorganized Debtors having to file an application, motion, complaint, objection or any other legal proceeding seeking to object to such Claim and without any further notice to or action, order or approval of the Bankruptcy Court.

E.      *No Distributions Pending Allowance*

Notwithstanding any other provision hereof, if any portion of a Claim is a Disputed Claim, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

F.      *Distributions After Allowance*

To the extent that a Disputed Claim or Interest ultimately becomes an Allowed Claim or Interest, distributions (if any) shall be made to the Holder of such Allowed Claim or Interest in accordance with the provisions of the Plan.  As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Interest becomes a Final Order, the Distribution Agent shall provide to the Holder of such Claim or Interest the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest to be paid on account of such Claim or Interest.

G.      *No Interest*

Interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

H.      *Single Satisfaction of Claims*

Holders of Allowed Claims may assert such Claims against each Debtor obligated with respect to such Claims, and such Claims shall be entitled to share in the recovery provided for the applicable Class of Claims against each obligated Debtor based upon the full Allowed amount of such Claims.  Notwithstanding the foregoing, in no case shall the aggregate value of all property received or retained under the Plan on account of any Allowed Claim exceed 100 percent of the underlying Allowed Claim plus applicable interest, if any.

I.      *Tax Treatment of Claim Distribution Amounts*

Property deposited into any Claim distribution accounts described elsewhere in the Plan (but for the avoidance of doubt, not including the Professional Fee Escrow) will be subject to "disputed ownership fund" treatment under section 1.468B-9 of the United States Treasury Regulations.  All corresponding elections with respect to such accounts shall be made, and such treatment shall be applied to the extent possible for state, local, and non-U.S. tax purposes.  Under such treatment, a separate federal income tax return shall be filed with the IRS with respect to such accounts, any taxes (including with respect to interest, if any, or appreciation in property between the Effective Date and date of distribution) imposed on such accounts shall be paid out of the assets of such accounts (and reductions shall be made to amounts disbursed from such accounts to account for the need to pay such taxes).

## ARTICLE VIII.
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.      *Compromise and Settlement of Claims, Interests, and Controversies*

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable.  In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtors may compromise and settle Claims against, and Interests in, the Debtors and their Estates and Causes of Action against other Entities.

B.      *Discharge of Claims and Termination of Interests*

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, (including any Intercompany Claims resolved or compromised after the Effective Date by the Reorganized Debtors) Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors before the Effective Date and that arise from a termination of employment, any contingent or

non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim based upon such debt or right is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan.  Any default or "event of default" by the Debtors or Affiliates with respect to any Claim or Interest that existed immediately before or on account of the filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) as of the Effective Date.  The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring.

C.      *Release of Liens*

**Except (a) with respect to the Liens securing (1) the Exit Facilities, (2) Other Secured Claims that are Reinstated pursuant to the Plan, and (3) obligations pursuant to Executory Contracts and Unexpired Leases assumed pursuant to the Plan, or (b) as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates and, subject to the consummation of the applicable distributions contemplated in the Plan, shall be fully released and discharged, at the sole cost of and expense of the Reorganized Debtors, and the Holders of such mortgages, deeds of trust, Liens, pledges, or other security interests shall execute such documents as may be reasonably requested by the Debtors or the Reorganized Debtors, as applicable, to reflect or effectuate such releases, and all of the right, title, and interest of any Holders of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtor and its successors and assigns.**

D.      *Releases by the Debtors*

**Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released and discharged by the Debtors, the Reorganized Debtors, and their Estates from any and all Causes of Action, including any derivative claims asserted on behalf of the Debtors, that the Debtors, the Reorganized Debtors, or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest, or that any Holder of any Claim or Interest could have asserted on behalf of the Debtors, based on or relating to, or in any manner arising from, in whole or in part:**

**(a)      the Debtors, the Debtors' restructuring efforts, intercompany transactions, the formulation, preparation, dissemination, negotiation, or filing of the Restructuring Support Agreement;**

**(b)      any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Entity on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, or the Plan;**

**(c)      the Chapter 11 Cases, the Disclosure Statement, the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement; or**

**(d)      any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.**

**Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any (i) post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to**

implement the Plan, or (ii) claims related to any act or omission that is determined in a final order to have constituted actual fraud or willful misconduct.

E.    *Releases by Holders of Claims and Interests of the Debtors*

As of the Effective Date, each Releasing Party is deemed to have released and discharged each Debtor, Reorganized Debtor, and Released Party from any and all Causes of Action, including any derivative claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part:

(a)    the Debtors, the Debtors' restructuring efforts, intercompany transactions, the formulation, preparation, dissemination, negotiation, or filing of the Restructuring Support Agreement;

(b)    any transaction that is part of the Restructuring Transactions, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Entity on the Plan or the order confirming the Plan in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, or the Plan;

(c)    the Chapter 11 Cases, the Disclosure Statement, the Plan, the filing of the Chapter 11 Cases, the pursuit of confirmation of the Plan, the pursuit of consummation of the Plan, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement; or

(d)    any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any (i) post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, or (ii) claims related to any act or omission that is determined in a final order to have constituted actual fraud or willful misconduct.  Notwithstanding anything herein to the contrary, nothing herein shall be intended to be a release of (a) the Sponsor Equityholder's (i) Secured Notes Claims, or (ii) Claims under the MSA, or (b) Claims arising under the Restructuring Support Agreement, and such Claims in each case are hereby expressly reserved.

F.    *Exculpation*

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or termination of the Restructuring Support Agreement and related prepetition transactions, the Disclosure Statement, the Plan, or any Restructuring Transaction, contract, instrument, release or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, except for claims related to any act or omission constitutes actual fraud, willful misconduct, or gross negligence.  The Exculpated Parties have, and, upon completion of the Plan, shall be deemed to have participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable

**law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.**

G.      *Injunction*

**All Entities that have held, hold, or may hold Causes of Action, claims or interests that have been released pursuant to the Plan, or that have been discharged pursuant to the Plan, or that are subject to exculpation pursuant to the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, or the Released Parties:  (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Causes of Action, claims or interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Causes of Action, claims or interests; (c) creating, perfecting, or enforcing any lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Causes of Action, claims or interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Causes of Action, claims or interests unless such Entity has timely asserted such setoff right in a document filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a Cause of Action, claim or interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable Law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Causes of Action, claims or interests released or settled pursuant to the Plan.**

H.      *Protection Against Discriminatory Treatment*

In accordance with section 525 of the Bankruptcy Code, and consistent with paragraph 2 of Article VI of the United States Constitution, no Governmental Unit shall discriminate against any Reorganized Debtor, or any Entity with which a Reorganized Debtor has been or is associated, or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtors, or another Entity with whom the Reorganized Debtors have been associated, solely because such Reorganized Debtor was a Debtor under chapter 11, may have been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before such Debtor was granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

I.      *Recoupment*

In no event shall any Holder of Claims or Interests be entitled to recoup any Claim or Interest against any claim, right, or Cause of Action of the Debtors or the Reorganized Debtors, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

J.      *Reimbursement or Contribution*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the Effective Date, such Claim shall be forever disallowed notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Effective Date (a) such Claim has been adjudicated as noncontingent, or (b) the relevant Holder of a Claim has filed

a noncontingent Proof of Claim on account of such Claim and a Final Order has been entered determining such Claim as no longer contingent.

K.      *Term of Injunctions or Stays*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases (pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court) and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

L.      *Document Retention*

On and after the Effective Date, the Reorganized Debtors may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Reorganized Debtors.

## ARTICLE IX.
## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

A.      *Conditions Precedent to the Effective Date.*

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to Article IX.B of the Plan:

1.      the Bankruptcy Court shall have entered the Confirmation Order, which shall be in form and substance reasonably acceptable to the Required Consenting Noteholders, and the Confirmation Order shall not be stayed, modified, or vacated, and shall not be subject to any pending appeal, and the appeals period for the Confirmation Order shall have expired; *provided* that the requirement that the Confirmation Order not be subject to any pending appeal and the appeals period for the Confirmation Order shall have expired may be waived by any Consenting Noteholder.

2.      the Restructuring Support Agreement shall continue to be in full force and effect;

3.      All actions, documents, and agreements necessary to implement and consummate the Plan shall have been effected and executed and remain in full force and effect;

4.      the Debtors shall have paid or reimbursed all Restructuring Expenses;

5.      amounts sufficient to pay the Professional Fee Claims of all of the Debtors' Professionals, including those of (a) Gibson, Dunn & Crutcher LLP, as proposed counsel to the Debtors, (b) Young Conaway Stargatt & Taylor, LLP, as proposed co-counsel to the Debtors, and (c) Huron Consulting Group, as financial advisor to the Debtors shall have been placed in the Professional Fee Escrow Account pending approval of the Professional Fee Claims by the Bankruptcy Court;

6.      each document or agreement constituting the Definitive Documents shall be in form and substance consistent with the Restructuring Support Agreement.

7.      all governmental approvals and consents that are legally required for the consummation of the Restructuring Transactions shall have been obtained.

B.      *Waiver of Conditions Precedent*

Other than the condition set forth in Article IX.A.4. of the Plan, the Debtors, with the consent of the Required Consenting Noteholders, may waive any of the conditions to the Effective Date set forth in Article IX.A of the Plan

at any time without any notice to any other parties in interest and without any further notice to or action, order, or approval of the Bankruptcy Court, and without any formal action other than proceeding to confirm and consummate the Plan.

C.      *Substantial Consummation*

"Substantial Consummation" of the Plan, as defined in section 1101(2) of the Bankruptcy Code, with respect to any of the Debtors, shall be deemed to occur on the Effective Date with respect to such Debtor.

D.      *Effect of Non-Occurrence of Conditions to Consummation*

If the Effective Date does not occur with respect to any of the Debtors, the Plan shall be null and void in all respects with respect to such Debtor, and nothing contained in the Plan or the Disclosure Statement shall: (a) constitute a waiver or release of any Claims by or Claims against or Interests in such Debtors; (b) prejudice in any manner the rights of such Debtors, any Holders of a Claim or Interest, or any other Entity; or (c) constitute an admission, acknowledgment, offer, or undertaking by such Debtors, any Holders, or any other Entity in any respect.

**ARTICLE X.**
**MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN**

A.      *Modification of Plan*

The Debtors, with the consent of the Required Consenting Noteholders, subject to the Required Consenting Equityholders Consent Right, reserve the right to modify the Plan prior to Confirmation and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtors, with the consent of the Required Consenting Noteholders, expressly reserve their rights to alter, amend, or modify materially the Plan, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan. A Holder of a Claim or Interest that has accepted the Plan shall be deemed to have accepted the Plan, as amended, supplemented, amended and restated, or otherwise modified, if the proposed amendment, supplement, amendment and restatement, or other modification does not materially and adversely change the treatment of the Claim or Equity Interest of such Holder, or release any claims or liabilities reserved by such Holder under the Plan. Prior to the Effective Date, the Debtors may make appropriate technical adjustments to the Plan without further order or approval of the Bankruptcy Court; *provided*, that such technical adjustments or modifications shall be satisfactory to the Required Consenting Noteholders and subject to the Required Consenting Equityholders Consent Right. Notwithstanding anything to the contrary contained herein, the Debtors or the Reorganized Debtors, as applicable, shall not amend or modify the Plan other than in a manner that is not inconsistent with the Restructuring Support Agreement.

B.      *Effect of Confirmation on Modifications*

Entry of the Confirmation Order shall constitute approval of all modifications to the Plan occurring after the solicitation thereof pursuant to section 1127(a) of the Bankruptcy Code and a finding that such modifications to the Plan do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.      *Revocation or Withdrawal of Plan*

The Debtors, with the prior written consent of the Required Consenting Noteholders to the extent the Restructuring Support Agreement remains in full force and effect, reserve the right to revoke or withdraw the Plan before the Confirmation Date and to file subsequent chapter 11 plans, but without prejudice to the respective parties' rights under the Restructuring Support Agreement.  If the Debtors revoke or withdraw the Plan, or if the Confirmation Date or the Effective Date does not occur, then:  (a) the Plan will be null and void in all respects; (b) any settlement

or compromise embodied in the Plan, assumption of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant hereto will be null and void in all respects; and (c) nothing contained in the Plan shall (1) constitute a waiver or release of any Claims, Interests, or Causes of Action, (2) prejudice in any manner the rights of any Debtor or any other Entity, or (3) constitute an admission, acknowledgement, offer, or undertaking of any sort by any Debtor or any other Entity.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Claim or Interest and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.      decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.      resolve any matters related to Executory Contracts or Unexpired Leases, including:  (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Cure Claims arising therefrom, including pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

4.      ensure that distributions to Holders of Allowed Claims and Interests (as applicable) are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes arising from or relating to distributions under the Plan;

5.      adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.      enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of (a) contracts, instruments, releases, indentures, and other agreements or documents approved by Final Order in the Chapter 11 Cases and (b) the Plan, the Confirmation Order, and contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan;

7.      enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

8.      grant any consensual request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code;

9.      adjudicate, decide, or resolve any and all matters related to the Restructuring Transactions;

10.     adjudicate, decide, or resolve any and all matters related to enforcement of the Restructuring Support Agreement;

11.     issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

12.      resolve any cases, controversies, suits, disputes, Causes of Action, or any other matters that may arise in connection with the Consummation, interpretation, or enforcement of the Plan, the Disclosure Statement, the Confirmation Order, or the Restructuring Transactions, or any Entity's obligations incurred in connection with the foregoing, including disputes arising under agreements, documents, or instruments executed in connection with the Plan, the Disclosure Statement, the Confirmation Order, or the Restructuring Transactions;

13.      hear, determine, and resolve any cases, matters, controversies, suits, disputes, or Causes of Action in connection with or in any way related to the Chapter 11 Cases, including:  (a) with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or an Interest for amounts not timely repaid pursuant to Article VI.J.1 of the Plan; (b) with respect to the releases, injunctions, and other provisions contained in Article VIII of the Plan, including entry of such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions; (c) that may arise in connection with the Consummation, interpretation, implementation, or enforcement of the Plan, the Confirmation Order, and, subject to any applicable forum selection clauses, contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan; or (d) related to section 1141 of the Bankruptcy Code;

14.      enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

15.      consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

16.      hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

17.      enter an order or Final Decree concluding or closing the Chapter 11 Cases;

18.      enforce all orders previously entered by the Bankruptcy Court; and

19.      hear any other matter not inconsistent with the Bankruptcy Code.

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter, including the matters set forth in Article XI of the Plan, the provisions of this Article XI shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

A.      *Immediate Binding Effect*

Subject to Article IX.A hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and Definitive Documents (including any such Definitive Documents included in the Plan Supplement) shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtors to Executory Contracts and Unexpired Leases with the Debtors.

B.      *Additional Documents*

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and the Restructuring Support Agreement.  The Debtors or the Reorganized Debtors, as applicable, and all Holders of Claims and Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to

time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.      *Reservation of Rights*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court has entered the Confirmation Order and the Effective Date shall have occurred.  None of the filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

D.      *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

E.      *Service of Documents*

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided in the Plan, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

**If to the Debtors or Reorganized Debtors:**

Northwest Hardwoods, Inc.
1313 Broadway, Suite 300
Tacoma, WA 98402
Attention:  Nathan Jeppson
Email:  legal.notices@nwhardwoods.com

With copies to:

Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, New York, 10166
Facsimile:  (212) 351-4035
Attention:  David M. Feldman, J. Eric Wise, Matthew K. Kelsey and Alan Moskowitz
Email:  DFeldman@gibsondunn.com
          EWise@gibsondunn.com
          MKelsey@gibsondunn.com
          AMoskowitz@gibsondunn.com

-and-

Young Conaway Stargatt & Taylor, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
Facsimile: (302) 571-1253
Attention:    Sean M. Beach, Jacob D. Morton
Email:    sbeach@ycst.com
            jmorton@ycst.com

**If to the Consenting Noteholders:**

To each Consenting Lender at the addresses or e-mail addresses set forth below the Consenting Noteholder's signature page to the Restructuring Support Agreement (or to the signature page to a Joinder or Transfer Agreement in the case of any Consenting Noteholders that become a party thereto after the Restructuring Support Agreement effective date).

With copies to:

Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019
Attention: Jeffrey D. Pawlitz, Weston T. Eguchi, and Agustina G. Berro
Email:     jpawlitz@willkie.com
              weguchi@willkie.com
              aberro@willkie.com

**If to the Consenting Equityholders:**

To each Consenting Equityholder at the addresses or e-mail addresses set forth below the Consenting Equityholder's signature page to the Restructuring Support Agreement.

After the Effective Date, the Reorganized Debtors shall have the authority to send a notice to Entities that continue to receive documents pursuant to Bankruptcy Rule 2002 requiring such Entity to file a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Reorganized Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have filed such renewed requests.

F.     *Entire Agreement*

Except as otherwise indicated, and without limiting the effectiveness of the Restructuring Support Agreement, the Plan (including, for the avoidance of doubt, the Plan Supplement) supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

G.     *Exhibit and Plan Supplement*

All exhibits and documents included in the Plan and Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are filed, copies of such exhibits and documents shall be made available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website cases.primeclerk.com/nwh or the Bankruptcy Court's website at https://ecf.deb.uscourts.gov/. Unless otherwise ordered by the Bankruptcy Court, to the extent any exhibit or document in the Plan Supplement is inconsistent with the terms of any part of the Plan that does not constitute the Plan Supplement, such exhibit or document in the Plan Supplement shall control. The documents in the Plan Supplement are an integral part of the Plan and shall be deemed approved by the Bankruptcy Court pursuant to the Confirmation Order.

H.     *Non-Severability*

Except as set forth in Article VIII of the Plan, the provisions of the Plan, including its release, injunction, exculpation and compromise provisions, are mutually dependent and non-severable. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan; and (c) non-severable and mutually dependent.

I.      *Votes Solicited in Good Faith*

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors, the Consenting Stakeholders, and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under the Plan and any previous plan, and, therefore, no such parties, individuals, or the Reorganized Debtors will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan and any previous plan.

J.      *Waiver or Estoppel*

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, the Restructuring Support Agreement, or papers filed with the Bankruptcy Court prior to the Confirmation Date.

K.      *No Strict Construction*

The Plan is the product of extensive discussions and negotiations between and among, *inter alia*, the Debtors, the Consenting Stakeholders and their respective professionals. Each of the foregoing was represented by counsel of its choice who either (a) participated in the formulation and documentation of, or (b) was afforded the opportunity to review and provide comments on, the Plan, the Plan Supplement, the Disclosure Statement, and the agreements and documents contemplated therein or related thereto. Accordingly, unless explicitly indicated otherwise, the general rule of contract construction known as "*contra proferentem*" or other rule of strict construction shall not apply to the construction or interpretation of any provision of the Plan, the Plan Supplement, the Disclosure Statement, and the documents contemplated thereunder and related thereto.

L.      *Closing of Chapter 11 Cases*

On and after the Effective Date, the Debtors or Reorganized Debtors shall be permitted to close the Chapter 11 Cases of HHI and Hardwoods Intermediate Holdings II, Inc., and all contested matters relating to any of the Debtors, including objections to Claims, shall be administered and heard in the Chapter 11 Case of Northwest Hardwoods, Inc., irrespective of whether such Claim(s) were Filed against any other Debtor.

When substantial consummation of the Plan is achieved, the Reorganized Debtors shall seek authority to close the Chapter 11 Case of Northwest Hardwoods, Inc. in accordance with the Bankruptcy Code and the Bankruptcy Rules.

Dated:  November 13, 2020

Respectfully submitted,

By:     */s/ Christopher Hannon*

Name:    Christopher Hannon

Title:     Chief Financial Officer, Northwest Hardwoods, Inc.