## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NORTHWEST HARDWOODS, INC., *et al.*,[1] | Case No. 20-13005 (CSS) |
| Debtors. | (Jointly Administered) |
| | Re: Docket No. 12 |

**INTERIM ORDER (I) AUTHORIZING USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES, (III) GRANTING LIENS AND SUPERPRIORITY CLAIMS, (IV) MODIFYING THE AUTOMATIC STAY, (V) SCHEDULING A FINAL HEARING AND (VI) GRANTING RELATED RELIEF**

Upon the motion (the "<u>Motion</u>") of the above-referenced debtors, as debtors in possession (collectively, the "<u>Debtors</u>") in the above-captioned cases (the "<u>Chapter 11 Cases</u>"), pursuant to sections 105, 361, 362, 363, 503 and 507 of title 11 of the United States Code, as amended (the "<u>Bankruptcy Code</u>"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Rules 2002-1(b), 4001-2 and 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"), seeking, among other things:

1.  authorization for the Debtors, pursuant to sections 105, 361, 362, 363, 503 and 507 of the Bankruptcy Code to (i) use cash collateral, as such term is defined in section 363(a) of the Bankruptcy Code, and all other Prepetition Collateral (as defined below), solely in accordance with the terms and conditions of this interim order (together with all annexes and exhibits hereto, the "<u>Interim Order</u>"), and (ii) grant adequate protection to the Prepetition Secured Parties (as defined below) to the extent of any Diminution in Value (as defined below) of their interests in the Prepetition Collateral (including Cash Collateral (as defined below));

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Northwest Hardwoods, Inc. (5401), Hardwoods Intermediate Holdings II, Inc. (7760), and Hardwoods Holdings, Inc. (3443).  The location of the Debtors' service address in these chapter 11 cases is: 1313 Broadway, Suite 300, Tacoma, WA 98402.

136818646

2.      modification of the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and conditions of this Interim Order;

3.      except to the extent of the Carve Out (as defined below), and subject to entry of the Final Order (as defined below), the waiver of all rights to surcharge any Prepetition Collateral under section 506(c) of the Bankruptcy Code or any other applicable principle of equity or law;

4.      subject to entry of the Final Order, to the extent set forth herein, for the "equities of the case" exception under Bankruptcy Code section 552(b) not to apply to any of the Prepetition Secured Parties with respect to the proceeds, products, offspring, or profits of any of the Prepetition Collateral under section 552(b) of the Bankruptcy Code or any other applicable principle of equity or law;

5.      that this Court hold an interim hearing (the "Interim Hearing") to consider the relief sought in the Motion and entry of the proposed Interim Order;

6.      that this Court schedule a final hearing (the "Final Hearing") to consider entry of a final order granting the relief requested in the Motion on a final basis (the "Final Order");

7.      waiver of any applicable stay with respect to the effectiveness and enforceability of this Interim Order (including a waiver pursuant to Bankruptcy Rule 6004(h)); and

8.      granting related relief;

and the Interim Hearing having been held by the Court on November 23, 2020; and the Final Hearing having been scheduled by the Court to take place on December 18, 2020 at 9:00 a.m. (prevailing Eastern Time) pursuant to Bankruptcy Rule 4001, notice of the Motion and the relief sought therein having been given by the Debtors as set forth in this Interim Order; and the Court having considered the *Declaration of Nathan Jeppson in Support of Debtors' Chapter 11 Petitions and Requests for First Day Relief* [Docket No. 2] (the "First Day Declaration"), the Approved Budget (as defined below) filed and served by the Debtors, offers of proof, evidence adduced, and the statements of counsel at the Interim Hearing; and the Court having considered the interim relief requested in the Motion; and it appearing to the Court that granting the relief sought in the Motion on the terms and conditions herein contained is necessary and essential to enable the Debtors to

preserve the value of the Debtors' businesses and assets and that such relief is fair and reasonable and that entry of this Interim Order is in the best interest of the Debtors and their respective estates and creditors; and due deliberation and good cause having been shown to grant the relief sought in the Motion;

## IT IS HEREBY FOUND AND DETERMINED THAT:[2]

A.     **Petition Date**.  On November 23, 2020 (the "<u>Petition Date</u>"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>").

B.     **Debtors in Possession**.   The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Chapter 11 Cases.

C.     **Jurisdiction and Venue**.  The Court has jurisdiction over the Motion, the Chapter 11 Cases and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012.  Venue for the Chapter 11 Cases and proceedings on the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and other predicates for the relief granted herein are sections 105, 361, 362, 363, 506, 507 and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004 and 9014 and the Local Rules.

D.     **Notice**.  The Interim Hearing is being held pursuant to the authorization of Bankruptcy Rule 4001.  The Debtors represent that they have provided notice of the Interim Hearing and the interim relief requested in the Motion in accordance with the provisions of Local Rule 9013-1(m), whether by facsimile, electronic mail, overnight courier or hand delivery, to

---

[2]  Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  *See* Bankruptcy Rule 7052.

certain parties in interest, including: (i) the Office of the United States Trustee for the District of

Delaware (the "United States Trustee"); (ii) the holders of the thirty (30) largest unsecured claims

against the Debtors on a consolidated basis; (iii) Bank of America, N.A., in its capacity as

Prepetition ABL Agent (as defined below), and its counsel; (iv) The Bank of New York Mellon,

in its capacity as Indenture Trustees (as defined below), and its counsel; (v) the Internal Revenue

Service; (vi) the United States Attorney's Office for the District of Delaware; (vii) the ad hoc group

of Prepetition 2014 Noteholders and Prepetition 2015 Noteholders (each as defined below and,

collectively, the "Ad Hoc Noteholder Group") and its counsel; and (viii) any party that is entitled

to notice pursuant to Local Rule 9013-1(m).  Under the circumstances, such notice of the Motion,

and the relief requested therein and the Interim Hearing complies with Bankruptcy Rule 4001(b),

(c) and (d) and the Local Rules.

      E.    **Debtors' Stipulations**.  Subject only to the rights of parties in interest that are

specifically set forth in Section 5 below, the Debtors, on their behalf and on behalf of their estates,

permanently and irrevocably admit, stipulate, acknowledge, and agree (paragraphs E(i)

through E(ix) hereof shall be referred to herein collectively as the "Debtors' Stipulations") as

follows:

      (i)    Prepetition ABL Credit Facility.  Northwest Hardwoods, Inc. and each of

its subsidiaries party thereto, as borrowers, Hardwoods Intermediate Holdings II, Inc., as

guarantor, other guarantors party thereto (such foregoing parties, collectively, the "Prepetition

ABL Obligors"), the lenders party thereto (collectively, the "Prepetition ABL Lenders"), and Bank

of America, N.A., as administrative agent (in such capacity, the "Prepetition ABL Agent"), are

parties to that certain Asset-Based Revolving Credit Agreement, dated as of July 18, 2014 (as

amended, restated, amended and restated, supplemented or otherwise modified from time to time,

the "Prepetition ABL Credit Agreement" and, together with all other agreements, documents, and instruments executed and/or delivered with, to or in favor of the Prepetition ABL Agent and the Prepetition ABL Lenders, including, without limitation, all security agreements, deposit account control agreements, control agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements, documents and instruments, including any fee letters, executed and/or delivered in connection therewith or related thereto, the "Prepetition ABL Loan Documents").  The Prepetition ABL Credit Agreement provided for the Prepetition ABL Obligors to receive an asset-based credit facility (the "Prepetition ABL Facility") with a $150,000,000 of maximum aggregate availability to the borrowers thereunder, subject to a borrowing base (as reduced by reserves), as set forth in the Prepetition ABL Credit Agreement.  The Prepetition ABL Facility also provides for the Prepetition ABL Obligors to provide a security interest in support of the obligations of the Prepetition ABL Obligors owing to the Prepetition ABL Lenders or their Lender Counterparty or Lender Counterparties (as defined in the Prepetition ABL Credit Agreement, the "Prepetition Lender Counterparty" or "Prepetition Lender Counterparties") regarding Secured Bank Product Obligations (as defined in the Prepetition ABL Credit Agreement).  As of the Petition Date, approximately $38,112,929.11 in principal was outstanding under the Prepetition ABL Facility in the form of Revolving Facility Loans (as defined in the Prepetition ABL Credit Agreement), plus letters of credit in the stated amount of approximately $4,190,707.00, plus interest accrued and accruing at the rates set forth in the Prepetition ABL Credit Agreement (together with any other amounts outstanding under the Prepetition ABL Loan Documents, including, without limitation, Secured Bank Product Obligations, and obligations in respect of fees, expenses, indemnity and reimbursement and other obligations under or as to the applicable letters of credit, the "Prepetition

ABL Obligations"[3]).  The Prepetition ABL Agent, the Prepetition ABL Lenders and the Prepetition

Lender Counterparties are referred to collectively herein as the "Prepetition ABL Secured Parties".

(ii)       Prepetition 2014 Indenture.    Northwest Hardwoods, Inc., as issuer,

Hardwoods Intermediate Holdings II, Inc., as guarantor, other guarantors party thereto (such

foregoing parties, collectively, the "Prepetition Note Obligors" and, together with the Prepetition

ABL Obligors, the "Prepetition Obligors") and The Bank of New York Mellon, as trustee and

notes collateral agent (in such capacity, the "2014 Indenture Trustee" and, together with the

Prepetition 2014 Noteholders (as defined below), the "Prepetition 2014 Notes Secured Parties"),

are parties to that certain Indenture, dated as of July 18, 2014 (as amended, restated, amended and

restated, supplemented or otherwise modified from time to time, the "Prepetition 2014 Indenture"

and together with all other agreements, documents, and instruments executed and/or delivered

with, to or in favor of the Prepetition 2014 Notes Secured Parties, including, without limitation,

all security agreements, notes, guarantees, mortgages, Uniform Commercial Code financing

statements, documents, and instruments, including any fee letters, executed and/or delivered in

connection therewith or related thereto, the "Prepetition 2014 Indenture Documents"). Pursuant to

the Prepetition 2014 Indenture, 7.500% senior secured notes due 2021 in the aggregate principal

amount of $300,000,000 (the "Prepetition 2014 Notes" and the beneficial holders of the Prepetition

2014 Notes, collectively, the "Prepetition 2014 Noteholders") of indebtedness were issued. As of

---

[3]  The defined term "Obligations" in the Prepetition ABL Credit Agreement means (a) all obligations of every nature
of each Loan Party (as defined therein) from time to time owed under any Loan Document (as defined therein),
whether for principal, interest, fees, expenses, indemnification or otherwise and (b) obligations in respect of Secured
Bank Product Obligations (including in each of clauses (a) and (b) interest, fees and other amounts which, but for
the filing of a petition in bankruptcy with respect to such Loan Party, would have accrued on any such Obligation,
whether or not a claim is allowed against such Loan Party for such interest, fees and other amounts in the related
bankruptcy proceeding). For the avoidance of doubt, Increased Revolving Facility Commitment (as defined therein)
incurred pursuant to Section 2.22 thereof constitutes Obligations; provided that the "Obligations" of each Loan Party
exclude any Excluded Swap Obligations (as defined therein) of such Loan Party.

the Petition Date, approximately $275,379,000 in principal amount of Prepetition 2014 Notes was outstanding under the Prepetition 2014 Indenture (together with any other amounts outstanding under the Prepetition 2014 Indenture Documents, including interest, fees, and expenses, the "Prepetition 2014 Notes Obligations").

(iii)     Prepetition 2015 Indenture.  The Prepetition Note Obligors and The Bank of New York Mellon, as trustee and notes collateral agent (in such capacity, the "2015 Indenture Trustee" and, together with the 2014 Indenture Trustee, the "Indenture Trustees" and, together with the Prepetition ABL Agent and the 2014 Indenture Trustee, the "Prepetition Agents", and, the 2015 Indenture Trustee together with the Prepetition 2015 Noteholders (as defined below), the "Prepetition 2015 Notes Secured Parties" and, together with the Prepetition 2014 Notes Secured Parties, the "Prepetition Notes Secured Parties" and, together with the Prepetition ABL Secured Parties and the Prepetition 2014 Notes Secured Parties, the "Prepetition Secured Parties"), are parties to that certain Indenture, dated as of February 20, 2015 (as amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "Prepetition 2015 Indenture" and, together with the Prepetition 2014 Indenture, the "Prepetition Indentures," and the Prepetition 2015 Indenture together with all other agreements, documents, and instruments executed and/or delivered with, to or in favor of the Prepetition 2015 Notes Secured Parties, including, without limitation, all security agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements, documents, and instruments, including any fee letters, executed and/or delivered in connection therewith or related thereto, the "Prepetition 2015 Indenture Documents" and together with the Prepetition 2014 Indenture Documents, the "Prepetition Indenture Documents" and, together with the Prepetition ABL Loan Documents and the Prepetition 2014 Indenture Documents, the "Prepetition Documents"). Pursuant to the

Prepetition 2015 Indenture, 7.500% senior secured notes due 2021 in the aggregate principal amount of $135,000,000 (the "Prepetition 2015 Notes" and, together with the Prepetition 2014 Notes, the "Prepetition Notes" and the beneficial holders of the Prepetition 2015 Notes, collectively, the "Prepetition 2015 Noteholders") of indebtedness were issued. As of the Petition Date, approximately $103,255,000 in principal amount of Prepetition 2015 Notes was outstanding under the Prepetition 2015 Indenture (together with any other amounts outstanding under the Prepetition Indenture Documents, including interest, fees, and expenses, the "Prepetition 2015 Notes Obligations" and together with the Prepetition 2014 Notes Obligations, the "Prepetition Notes Obligations," and, together with the Prepetition ABL Obligations and the Prepetition 2014 Notes Obligations, the "Prepetition Obligations").

(iv)      Prepetition Collateral. To secure the Prepetition Obligations, the Debtors entered into certain guarantee and collateral agreements and certain other security documents governing the Prepetition Secured Parties' respective security interests in the Prepetition Collateral (such agreements, as amended, restated, amended and restated, supplemented or otherwise modified from time to time, and together with any ancillary collateral documents, including, without limitation, any related mortgages and deeds of trust, the "Prepetition Collateral Documents"). Pursuant to the Prepetition Collateral Documents, and on the terms set forth therein and subject to the Prepetition Intercreditor Agreement (as defined below), the Debtors granted to the Prepetition Secured Parties the Prepetition Liens (as defined below) on the Prepetition Collateral.

(v)      Prepetition Intercreditor Agreement. The Prepetition ABL Agent, the 2014 Indenture Trustee and the 2015 Indenture Trustee are parties to that certain Intercreditor Agreement, dated as of July 18, 2014 (as amended, restated, amended and restated, supplemented

or otherwise modified from time to time, the "Prepetition Intercreditor Agreement").  Section 6.8 of the Prepetition Intercreditor Agreement provides that its provisions (including, without limitation, the priority provisions thereof) are intended to be and shall be enforceable as a subordination agreement within the meaning of section 510(a) of the Bankruptcy Code.  The Prepetition Agents and the Ad Hoc Noteholder Group acknowledge and agree that the Prepetition Intercreditor Agreement is, as of the Petition Date, binding on all parties thereto.

(vi)      Prepetition ABL Collateral.  Pursuant to the Prepetition Collateral Documents and as described in the Prepetition Intercreditor Agreement, the Prepetition ABL Facility is secured by (1) first priority security interests in and liens (subject only to certain of the liens permitted under the Prepetition ABL Loan Documents) on certain of the Debtors' property, including (a) all Accounts Receivable[4] (except to the extent constituting proceeds of equipment, real property or Intellectual Property), (b) all inventory, (c) all instruments, chattel paper and other contracts, in each case evidencing, or substituted for, any Accounts Receivable referred to in clause (a) above, (d) all guarantees, supporting obligations and related letters of credit, security and other credit enhancements in each case for the Accounts Receivable referred to in clause (a) above, (e) all documents of title for any inventory, (f) all commercial tort claims and general intangibles, including contracts, to the extent relating to any of the items of property included in this clause (1), (g) all cash, cash equivalents, Deposit Accounts and Securities Accounts (including all cash and other funds on deposit therein and including "uncertificated securities" and "securities entitlements" (as defined in Article 8 of the UCC), except to the extent constituting identifiable proceeds of the Notes Priority Collateral (as defined below)), (h) all tax refunds (other than tax

---

[4] Capitalized terms used but not defined in this paragraph E shall have the meanings ascribed to them in the Prepetition Intercreditor Agreement, unless otherwise specified.

refunds relating to equipment, real property or Intellectual Property), (i) all Documents and books and records related to any of the foregoing, (j) proceeds and receivables arising under policies of business interruption insurance, to the extent such proceeds relate to ABL Priority Collateral (as defined below) and (k) all substitutions, replacements, accessions, products or proceeds (including, without limitation, insurance proceeds) of any of the foregoing clauses, in each case, to the extent a Lien (as defined in the Prepetition ABL Credit Agreement) has been granted or is purported to have been granted in favor of any ABL Claimholder under any ABL Collateral Document (such property, whether now existing or hereafter arising or acquired, in clauses (a) through (k), collectively, the "ABL Priority Collateral"); and (2) second priority security interests in and liens on the Notes Priority Collateral (as defined below) (such liens and security interests in clauses (1) and (2), the "Prepetition ABL Liens"); provided, the Prepetition ABL Obligations are not secured by any Excluded Property (as defined in the Prepetition ABL Credit Agreement). The Prepetition ABL Obligations, the Prepetition ABL Liens and all payments made to the Prepetition ABL Agent or applied to the Prepetition ABL Obligations owing under the Prepetition ABL Loan Documents prior to the Petition Date, are not subject to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaim, defense or "claim" (as defined in the Bankruptcy Code) of any kind, nature or description pursuant to the Bankruptcy Code or other applicable law.  As of the Petition Date, the value of the ABL Priority Collateral is no less than the outstanding amount of the Prepetition ABL Obligations.

(vii)    Prepetition Notes Collateral.  The Prepetition Notes Obligations are secured by (1) first priority security interests in and liens (subject only to certain of the liens permitted under the Prepetition Note Documents) on certain of the Debtors' property, including (a) all equipment, (b) fixtures, (c) certain real property, (d) Capital Stock of Subsidiaries, (e) Intellectual

Property and (f) all other assets and property of the Grantors, whenever arising and wherever located, on which a Lien is granted as security for any Prepetition  Obligations and does not constitute ABL Priority Collateral (such property, whether now existing or hereafter arising or acquired, in clauses (a) through (f), collectively, the "Notes Priority Collateral" and, together with the ABL Priority Collateral, the "Prepetition Collateral") and (2) second priority security interests in and liens on the ABL Priority Collateral (such liens and security interests in clauses (1) and (2), the "Prepetition Notes Liens" and, together with the Prepetition ABL Liens, the "Prepetition Liens"); provided, that the Prepetition Notes Obligations are not secured by any Excluded Assets (as defined in the Prepetition Note Documents).  The Prepetition Notes Obligations, the Prepetition Notes Liens and all payments made to the Indenture Trustees or applied to the Prepetition Notes Obligations owing under the Prepetition Indenture Documents prior to the Petition Date, are not subject to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaim, defense or "claim" (as defined in the Bankruptcy Code) of any kind, nature or description pursuant to the Bankruptcy Code or other applicable law.

(viii)    Prepetition Obligations.  The Prepetition Obligations owing to the Prepetition Secured Parties constitute legal, valid, and binding obligations of the Debtors and their applicable affiliates and are enforceable against them in accordance with their respective terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code).

(ix)    Prepetition Liens.  The Prepetition Liens granted to the Prepetition Secured Parties constitute legal, valid, binding, enforceable (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), and perfected security interests in and liens on the Prepetition Collateral and were granted to, or for the benefit of, the Prepetition Secured Parties for fair consideration and reasonably equivalent value.

(x)      <u>Release of Claims</u>.  Upon the entry of the Final Order granting such relief, and in each instance, subject to Section 5 below, in consideration of the Prepetition Agents permitting the Debtors to use the Prepetition Collateral (including Cash Collateral) pursuant to the terms and conditions of this Interim Order, the Releases (as defined below) set forth in Section 19 herein shall be effective.

F.      **Cash Collateral**.  The Debtors admit, stipulate, acknowledge and agree that all of the cash and all cash equivalents of the Debtors as of the Petition Date, wherever located, including (i) any cash in deposit accounts of the Debtors, and (ii) any income, proceeds, products, rents or profits of Prepetition Collateral or otherwise, constitutes ABL Priority Collateral and constitutes "<u>cash collateral</u>" of the Prepetition Secured Parties within the meaning of section 363(a) of the Bankruptcy Code (such cash and cash equivalents, the "<u>Cash Collateral</u>").

G.      **Bank Accounts**.  The Debtors acknowledge and agree that, as of the Petition Date, none of the applicable Debtors has either opened or maintains any bank accounts other than the accounts listed in the exhibit attached hereto as <u>Exhibit A</u>, which exhibit sets forth all current accounts pledged to the Prepetition ABL Agent and the current balance in each account as of the Petition Date.  The Debtors further acknowledge and agree that, as of the Petition Date, all such accounts are subject to deposit control account agreements in favor of the Prepetition ABL Agent or are maintained with the Prepetition ABL Agent.

H.      **Adequate Protection for Prepetition Secured Parties**.  The Prepetition Secured Parties have agreed to permit the Debtors to use the Prepetition Collateral, including the Cash Collateral, during the Interim Period (as defined below), subject to the terms and conditions set forth herein.  The Prepetition Secured Parties are entitled to the adequate protection as set forth herein pursuant to sections 361, 362, and 363 of the Bankruptcy Code for the Debtors' use of the

Prepetition Collateral, including the Cash Collateral, and the imposition of the automatic stay. Based upon the Motion and on the record presented to this Court at the Interim Hearing, the terms of the proposed adequate protection arrangements and the use of the Cash Collateral contemplated hereby are fair and reasonable, reflect the Debtors' prudent exercise of business judgment. The Prepetition Secured Parties have expressly consented to the entry of this Interim Order and the relief provided herein and pursuant to the terms of the Prepetition Documents. Such consent to the use of Cash Collateral on the terms and conditions of this Interim Order is predicated in part upon (i) the Debtors' filing and pursuit of confirmation of the Plan (as defined in Section 14(a) below), and (ii) the Debtors' entry into that certain Restructuring Support Agreement, dated as of October 21, 2020 (as amended, supplemented or otherwise modified from time to time, the "RSA"), by and among the Debtors and the Consenting Stakeholders (as defined therein).

I.        **Section 552(b)**.  Subject to and effective upon entry of the Final Order granting such relief, the Prepetition Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Parties with respect to the proceeds, products, offspring or profits of any of the Prepetition Collateral and Cash Collateral.

J.        **Good Faith**.  The parties herein have acted in good faith, at arm's length, and with sound business judgment in connection with this Interim Order.

K.        **Relief Essential; Best Interest**.  For the reasons stated above, the Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and the Local Rules.  Absent the relief set forth in this Interim Order, the Debtors' estates, their businesses and properties and their ability to successfully reorganize or otherwise preserve the enterprise

value of the Debtors' estates will be immediately and irreparably harmed.  Authorization of the use of Cash Collateral in accordance with this Interim Order is therefore in the best interests of the Debtors' estates.  Based upon all of the foregoing, sufficient cause exists for immediate entry of the Interim Order pursuant to Bankruptcy Rule 4001(b)(2) and the applicable Local Rules.

**NOW, THEREFORE**, based upon the Motion and the record before this Court with respect to the Motion, and with the consent of the Debtors and the Prepetition Secured Parties to the form and entry of this Interim Order, and good and sufficient cause appearing therefor,

**IT IS ORDERED** that:

1.      **Motion Granted**.  The Motion is hereby granted on an interim basis in accordance with the terms and conditions set forth in this Interim Order.  Any objections to the Motion with respect to the entry of this Interim Order that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby denied and overruled; provided, however, that the rights of all parties in interest to object to the entry of a Final Order on the Motion are reserved.

2.      **Authorization to Use Cash Collateral; Budget**.

(a)      Authorization to Use Cash Collateral.  To enable the Debtors to continue to operate their business and preserve and maximize the value of their estates, during the period from the entry of this Interim Order through and including the earlier to occur of (i) the entry of the Final Order or (ii) upon the occurrence and during the continuance of a Termination Event and following the Default Notice Period (each as defined below), in each case unless extended by written agreement of the Prepetition Agents (the period from the entry of this Interim Order through and including such earlier date, the "Interim Period"), the Debtors are hereby authorized to use Cash Collateral; any such use of Cash Collateral shall be consistent with the terms and conditions of this Interim Order, including the Approved Budget and the Budget Covenants (as

defined below); provided, however, that the Statutory Fees, as defined in Section 6(a) below, shall not be subject to any budget.  Following the entry of the Final Order, use of Cash Collateral will be governed by the terms and conditions of such Final Order.

(b)    Budget.  Attached hereto as Exhibit B is a 13-week cash flow budget (the "Initial Approved Budget") that includes on a line-item basis the Debtors' (i) weekly projected cash receipts, (ii) weekly projected disbursements (including, without limitation, debt service expenses), and (iii) weekly projected Borrowing Base (as defined in and as calculated in accordance with the Prepetition ABL Credit Agreement) and weekly projected "Excess Availability" (as calculated in accordance with the Prepetition ABL Credit Agreement).

(c)    Budget Timelines.

(i)    The Debtors shall, by 5:00 p.m. (prevailing Pacific Time) on or before Thursday of every second full week period after the Petition Date commencing on Thursday, December 10, 2020, propose to the Prepetition Agents, the Ad Hoc Noteholder Group, the United States Trustee and any official committee of unsecured creditors appointed in the Chapter 11 Cases (if any, the "Committee") an update to the then-existing Approved Budget (as defined below) by adding thereto the forecast of cash receipts, cash disbursements and other applicable information for the 13-week period commencing with the calendar week of the date such proposed update is required to be delivered hereunder, which update, once approved in writing by the Prepetition Agents in their reasonable discretion (each, a "Proposed Supplemental Budget" and, once approved in writing by the Prepetition Agents (or deemed approved, as provided below), a "Supplemental Approved Budget"), shall supplement and replace the then-existing Approved Budget then in effect (the Initial Approved Budget, as modified by any and all Supplemental Approved Budgets, shall constitute the "Approved Budget") without further notice,

motion, or application to, order of, or hearing before, this Court,  unless any of the Prepetition Agents, the United States Trustee or the Committee has objected to a Proposed Supplemental Budget within five (5) business days after delivery thereof (which objection may be in e-mail to the Debtors and counsel to the Debtors).  In the absence of any such objection, such Proposed Supplemental Budget shall be deemed acceptable to and approved for all purposes hereunder, and shall be promptly filed with the Court; provided, however, that unless and until such Proposed Supplemental Budget has been approved (or deemed approved as provided above), the Debtors shall still be subject to and be governed by the terms of the Approved Budget in effect prior to the Proposed Supplemental Budget in accordance with this Interim Order and the Debtors shall have no authority to use Cash Collateral other than in accordance with such Approved Budget.

(ii)    By no later than 5:00 p.m. (prevailing Pacific Time) by the Thursday of each calendar week, and commencing on December 10, 2020, the Debtors shall deliver to the Prepetition Agents, the Ad Hoc Noteholder Group, the United States Trustee and the Committee variance reports (in substantially the same format as the Initial Approved Budget) showing actual cash receipts, disbursements and other applicable information for the immediately preceding calendar week (ending on the immediately preceding Friday) noting therein all variances and including explanations for all such variances, on a line-item basis, from values set forth for such period(s) in the Initial Approved Budget or the most current Supplemental Approved Budget, as applicable (each, a "Variance Report"), provided, that each Variance Report delivered on a Testing Date (as defined below) shall include a cumulative variance report (in substantially the same format as the Initial Approved Budget) showing actual cash receipts, disbursements and other applicable information for the immediately preceding two week period (ending on the immediately preceding Friday) (the "Budget Period"), noting therein all variances and including explanations

for all such variances, on a line-item and aggregate basis, from values set forth for such period(s) in the Initial Approved Budget or the most current Supplemental Approved Budget, as applicable to allow the Prepetition Agents, the Ad Hoc Noteholder Group, the United States Trustee and the Committee to determine whether the Debtors are in compliance with the Budget Covenants; provided that the first Budget Period shall begin on the Petition Date and run through December 4, 2020.

(d)    Budget Covenants.  The permitted variances listed below (collectively, the "Permitted Variances") shall be tested on a rolling two week basis beginning on December 10, 2020 (with respect to the Budget Period ended December 4, 2020) and on every second Thursday thereafter (with respect to the immediately preceding Budget Period) (each such date, a "Testing Date").  The Debtors shall only expend Cash Collateral and proceeds thereof in accordance with the purposes, and in the time periods, set forth in the Approved Budget, subject to the following Permitted Variances:  (i) aggregate actual disbursements may not be more than 115% of the projected aggregate disbursements set forth in the Approved Budget for the relevant Budget Period, provided that for the avoidance of doubt, the cash disbursements considered for determining compliance with this covenant shall exclude the Debtors' cash disbursements after the Petition Date in respect of restructuring professional fees of the Prepetition Secured Parties and the Ad Hoc Noteholder Group, and provided, further, that the Debtors may carry forward the amount by which actual disbursements were below the budgeted amounts as set forth in the Approved Budget (as updated from time to time in accordance herewith) during an applicable Budget Period to the subsequent Budget Period and (ii) aggregate actual cash receipts may not be less than 85% of the projected aggregate cash receipts set forth in the relevant Budget Period, provided that the Debtors may carry forward the amount by which actual receipts exceeded the

budgeted amounts set forth in the Approved Budget (as updated from time to time in accordance herewith) during an applicable Budget Period to the subsequent Budget Period.  The budget-related covenants under this Section 2(d) are collectively referred to herein as the "Budget Covenants."

(e)    Professional Fees in Budget.  Notwithstanding anything to the contrary in this Interim Order (but, in any event, subject to Section 13(b) hereof), (i) allowed professional fees, costs and expenses of professionals retained by the Debtors, (ii) subject to the terms of the RSA (including the Sponsor Fee Cap (as defined in the RSA)), the professional fees, costs and expenses of Littlejohn & Co. LLC and its affiliates (collectively, the "Sponsor Equityholder"), and (iii) the professional fees, costs and expenses of the Prepetition Secured Parties and the Ad Hoc Noteholder Group ((i), (ii) and (iii) collectively, the "Case Professional Fees") shall be due, payable and paid in accordance with the terms and conditions of this Interim Order, the RSA and the Plan (to the extent the Plan is confirmed), notwithstanding (except in the case of the Sponsor Fee Cap) any budgeted amounts for such fees, costs and expenses set forth in the Approved Budget, and the Debtors shall not be deemed to have breached the terms of the Approved Budget or the Budget Covenants to the extent the actual amount of such fees, costs and expenses exceed the applicable budgeted amounts as set forth in the Approved Budget.

(f)    Limitations on Use of Cash Collateral.  The Debtors shall not be permitted to make any payments on account of any prepetition debt or obligation prior to the effective date of a confirmed chapter 11 plan or plans (including, without limitation, the Plan) with respect to any of the Debtors (the "Effective Date"), except: (i) with respect to the Prepetition Obligations as set forth in this Interim Order; (ii) as provided in any order in connection with any relief requested by the Debtors at the outset of the cases (the "First Day Orders"), each in form and substance reasonably acceptable to the Prepetition Agents; or (iii) any payment made in accordance with the

Approved Budget, subject to the Permitted Variances.  The use of Cash Collateral pursuant to the terms and conditions of this Interim Order and in accordance with the Approved Budget shall not be deemed to be a consent by the Prepetition Agents to any other or further use of Cash Collateral or to the use of any Cash Collateral in any amount or for any purpose in excess of the amount set forth in the Approved Budget, subject to the Permitted Variance, for each type of disbursement.

(g)    Solely for the purposes of this Interim Order, so long as the Ad Hoc Noteholder Group represents Prepetition 2014 Noteholders holding a majority in principal amount of the outstanding Prepetition 2014 Notes and/or Prepetition 2015 Noteholders holding a majority in principal amount of the outstanding Prepetition 2015 Notes, the Ad Hoc Noteholder Group shall be authorized to provide, and shall provide, any consent, approval, make any objection, deliver any notice or otherwise exercise any right or remedy or take any action under this Interim Order for and on behalf of the 2014 Indenture Trustee (on behalf of the Prepetition 2014 Notes Secured Parties) and/or the 2015 Indenture Trustee (on behalf of the Prepetition 2015 Notes Secured Parties), respectively, except to the extent any such action relates to the rights, privileges, protections, immunities, benefits, obligations or duties of the 2014 Indenture Trustee and/or the 2015 Indenture Trustee.  The Ad Hoc Noteholder Group shall promptly notify the Indenture Trustees in writing if the Ad Hoc Noteholder Group no longer represents (i) Prepetition 2014 Noteholders holding a majority in principal amount of the outstanding Prepetition 2014 Notes or (ii) Prepetition 2015 Noteholders holding a majority in principal amount of the outstanding Prepetition 2015 Notes.

3.    **Adequate Protection.**  In consideration for the use of the Prepetition Collateral (including Cash Collateral), the Prepetition Agents, for the benefit of the Prepetition Secured Parties, shall receive the following as adequate protection for and solely to the extent of any

diminution in value (including, as to the relief provided with the consent of the Debtors and the Prepetition Secured Parties under sub-sections (e), (f) and (g) of this Section 3, any and all risk of diminution in value) of their respective interests in the Prepetition Collateral and/or Cash Collateral, which diminution in value results from or may result from the use, sale or lease of Cash Collateral, the imposition of the automatic stay, subordination to, and funding of, the Carve Out (the "Diminution in Value") from and after the Petition Date (collectively referred to as the "Prepetition Secured Parties Adequate Protection"):

(a)    ABL Replacement Lien.  Subject to the Carve Out and the Prepetition Intercreditor Agreement, the Prepetition ABL Agent, for the benefit of itself and the other Prepetition ABL Secured Parties, is hereby granted, pursuant to sections 361 and 363 of the Bankruptcy Code, valid, binding, enforceable and perfected replacement liens upon and security interests in (the "ABL Replacement Lien") the Prepetition Collateral, the Cash Collateral and all of the Debtors' presently owned or hereafter acquired property and assets, whether such property and assets were acquired before or after the Petition Date, of any kind or nature, whether real or personal, tangible or intangible, wherever located, in each case, whether in existence on the Petition Date or hereafter arising, and including the proceeds thereof (collectively, with the Prepetition Collateral and the Cash Collateral, the "Collateral"); provided, that, upon the entry of the Final Order granting such relief, the ABL Replacement Lien shall attach to property recovered as a result of transfers or obligations avoided or actions maintained or taken pursuant to sections 542, 544, 545, 547, 548, 549, 550, 551, 552 and 553 of the Bankruptcy Code (the "Avoidance Actions").  The ABL Replacement Lien shall be junior and subordinate to (i) the

Carve Out, (ii) any Permitted Liens[5], (iii) the Prepetition ABL Liens, (iv) the Prepetition Notes Liens on the Notes Priority Collateral to the extent the ABL Replacement Lien encumbers the Notes Priority Collateral, and (v) the Notes Replacement Lien (as defined below) on the Notes Priority Collateral to the extent the ABL Replacement Lien encumbers the Notes Priority Collateral, and shall otherwise be senior to all other security interests in, liens on, or claims against any asset of a Debtor and all rights of payment of all other parties, except that the ABL Replacement Lien in any adequate assurance deposit that is ordered by this Court for the benefit of utility providers (the "Utility Deposit") shall be subordinate to the interests of the utility providers in the Utility Deposit until such time as the Utility Deposit is returned to the Debtors pursuant to the terms of that order.  Other than as set forth herein, the ABL Replacement Lien shall not be made subject to or *pari passu* with any lien or with any lien or security interest previously or hereinafter granted in any of the Chapter 11 Cases or any Successor Cases (as defined below). The ABL Replacement Lien shall be valid, binding and enforceable against any trustee or other estate representative appointed in any of the Chapter 11 Cases, upon the conversion of any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code (collectively, "Successor Cases") and/or upon the dismissal of any of the Chapter 11 Case or Successor Case.

(b)    Notes Replacement Lien.  Subject to the Carve Out and the Prepetition Intercreditor Agreement, the Indenture Trustees, for the benefit of themselves and the other Prepetition Notes Secured Parties, are hereby granted, pursuant to sections 361 and 363 of the Bankruptcy Code, valid, binding, enforceable and perfected replacement liens upon and security

---

[5] For purposes of this Interim Order, "Permitted Liens" shall mean any liens that are senior by operation of law (including any such liens that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code) or that were, as of the Petition Date, valid, properly perfected, non-avoidable and senior in priority to the applicable Prepetition Lien.

interests in the Collateral (the "Notes Replacement Lien" and together with the ABL Replacement Lien, the "Replacement Liens"); provided, that, upon the entry of the Final Order granting such relief, the Notes Replacement Lien shall attach to property recovered as a result of any Avoidance Actions.  The Notes Replacement Lien shall be junior and subordinate to (i) the Carve Out, (ii) any Permitted Liens, (iii) the Prepetition Notes Liens, (iv) the Prepetition ABL Liens on the ABL Priority Collateral to the extent the Notes Replacement Lien encumbers the ABL Priority Collateral, and (v) the ABL Replacement Lien on the ABL Priority Collateral to the extent the Notes Replacement Lien encumbers the ABL Priority Collateral, and shall otherwise be senior to all other security interests in, liens on, or claims against any asset of a Debtor and all rights of payment of all other parties, except that the Notes Replacement Lien in the Utility Deposit shall be subordinate to the interests of the utility providers in the Utility Deposit until such time as the Utility Deposit is returned to the Debtors.  Other than as set forth herein, the Notes Replacement Lien shall not be made subject to or *pari passu* with any lien or with any lien or security interest previously or hereinafter granted in any of the Chapter 11 Cases or any Successor Case. The Notes Replacement Lien shall be valid, binding and enforceable against any trustee or other estate representative appointed in any of the Chapter 11 Cases, Successor Cases, and/or upon the dismissal of any of the Chapter 11 Case or Successor Case.

(c)    ABL Adequate Protection Superpriority Claim.  Subject only to the Carve Out and the Prepetition Intercreditor Agreement, the Prepetition ABL Agent, for the benefit of itself and the other Prepetition ABL Secured Parties, is hereby granted, and to the extent provided by sections 503 and 507(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim in the Chapter 11 Cases and any Successor Cases (the "ABL Superpriority Claim"). The ABL Superpriority Claim shall be subordinate to (i) the Carve Out, and (ii) the Notes

Superpriority Claim (as defined below) as to the Notes Priority Collateral, but otherwise shall have priority over all administrative expense claims (to the extent permitted under the Bankruptcy Code), including administrative expenses of the kinds specified in or ordered pursuant to sections 503(b) and 507(b) of the Bankruptcy Code, and shall have priority over all non-administrative unsecured claims against each Debtor and each estate now existing or hereafter arising, or any kind or nature whatsoever.

(d)    <u>Notes Adequate Protection Superpriority Claim</u>.  Subject only to the Carve Out and the Prepetition Intercreditor Agreement, the Indenture Trustees, for the benefit of themselves and the other Prepetition Notes Secured Parties, are hereby granted, and to the extent provided by sections 503 and 507(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim in the Chapter 11 Cases and any Successor Cases (the "<u>Notes Superpriority Claim</u>" and together with the ABL Superpriority Claim, the "<u>Superpriority Claims</u>"). The Notes Superpriority Claim shall be subordinate to (i) the Carve Out, and (ii) the ABL Superpriority Claim as to the ABL Priority Collateral, but otherwise shall have priority over all administrative expense claims (to the extent permitted under the Bankruptcy Code), including administrative expenses of the kinds specified in or ordered pursuant to sections 503(b) and 507(b) of the Bankruptcy Code, and shall have priority over all non-administrative unsecured claims against each Debtor and each estate now existing or hereafter arising, or any kind or nature whatsoever.

(e)    <u>Interest, Fees and Charges</u>.  As additional adequate protection for the Prepetition Agents and other Prepetition Secured Parties and subject to Section 13(b) below, (i) the ABL Prepetition Agent shall receive cash payments in an amount equal to accrued or accruing prepetition and post-petition unpaid interest at the applicable contractual, non-default interest rate

and at the time or times and pursuant to the terms and conditions provided for in the Prepetition

ABL Loan Documents, (ii) the Prepetition Agents shall receive all other unpaid fees, costs and/or

other expenses, whether accrued or incurred prior to, on or following the Petition Date owing under

the Prepetition Documents, including but not limited to, the reasonable fees and expenses of

counsel for the Prepetition Agents provided for thereunder, (iii) professionals for the Ad Hoc

Noteholder Group shall receive all unpaid fees, costs and/or other expenses, whether accrued or

incurred prior to, on or following the Petition Date owing under any agreements with the Debtors

for the payment or reimbursement of fees, costs or expenses of such professionals, and (iv) subject

to the terms of the RSA and in light of the Sponsor Equityholder's status as a Prepetition Notes

Secured Party, professionals for the Sponsor Equityholder shall receive all accrued and unpaid

expenses incurred prior to, on or following the Petition Date owing under any agreements with the

Debtors for the payment or reimbursement of fees, costs or expenses of such professionals subject

to the Sponsor Fee Cap; provided, that, without prejudice to the rights of any other party to contest

such assertion, each Prepetition Agent reserves its rights to assert claims for the payment of

additional interest calculated at any other applicable rates of interest, or on any other basis, as

provided for in the Prepetition Documents.

(f)     Additional Adequate Protection.  As additional adequate protection for the

Prepetition Agents and other Prepetition Secured Parties: (i) the Debtors shall continue to prepare

and deliver to the Prepetition ABL Agent (with a copy to the Indenture Trustees, the Ad Hoc

Noteholder Group, the United States Trustee and the Committee) all documents and reports

required to be prepared and delivered to the Prepetition ABL Agent under the Prepetition ABL

Loan Documents, in each case at the times and in the manner and form set forth therein, unless

otherwise specified herein; (ii) the Debtors shall deliver to the Prepetition ABL Agent (with a copy

to the Ad Hoc Noteholder Group) a (X) monthly Borrowing Base report at the time and in the manner and form set forth in the Prepetition ABL Loan Documents, and (Y) on December 3, 2020, and, thereafter, at the time of the delivery of the weekly variance report described in Section 2(c)(ii), a weekly Borrowing Base report in the format agreed between the Prepetition ABL Agent and the Debtors (i.e., using gross accounts receivable balances, gross inventory balances and estimates of ineligible collateral, but otherwise in the form set forth in the Prepetition ABL Loan Documents); (iii) subject to the terms and conditions of the Prepetition Documents, the Prepetition Agents shall retain and is authorized to exercise all visitation, inspection and audit rights; (iv) the Debtors and the Prepetition ABL Agent shall continue to calculate the Borrowing Base in the manner (i.e., as to, inter alia, eligibility standards and methodology for establishing reserves) as the Borrowing Base was calculated as of the Petition Date in accordance with the Prepetition ABL Credit Agreement, provided, however, notwithstanding the filing of the Chapter 11 Cases and the entry of this Interim Order, that to the extent the Debtors' weekly Borrowing Base certificate shows that the Debtors have failed to maintain "Excess Availability" in the amount of $12,500,000 or more, within two (2) days of the date of the delivery of such weekly Borrowing Base certificate, the Debtors shall use Cash Collateral to fund a segregated cash reserve account, subject to the Replacement Liens, in an amount equal to the difference between $12,500,000 minus the amount of Excess Availability;  (v) the Debtors shall maintain with the respect to the Prepetition Collateral and the Cash Collateral insurance of the type and in the amount (1) as the Debtors maintained as of the Petition Date, and (2) as required under the Prepetition Documents; and (vi) the Debtors shall comply with the Milestones (as defined and set forth in Section 14 below).

(g)     Disposition of Collateral.  Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Prepetition Collateral or Cash Collateral outside the

ordinary course of business, other than the use of Cash Collateral pursuant to the terms of the Approved Budget (subject to the Permitted Variances), without (i) the prior written consent of the Prepetition Agents (and no such consent shall be implied, from any other action, inaction or acquiescence by the Prepetition Agents), or (ii) an order of this Court.

(h)    <u>Right to Seek Additional Adequate Protection</u>.  This Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of any of the Prepetition Secured Parties to request further or alternative forms of adequate protection at any time or the rights of the Debtors or any other party to contest such request.

4.    **Automatic Perfection of Replacement Liens**.  This Interim Order shall be sufficient and conclusive evidence of the extent, validity, enforceability, perfection, and priority of the Replacement Liens without the necessity of (a) filing or recording any financing statement, deed of trust, mortgage, or other instrument or document that may otherwise be required under the law of any jurisdiction, (b) obtaining "control" (as defined in any applicable Uniform Commercial Code or other law) over any Prepetition Collateral and Cash Collateral, or (c) taking any other action to validate or perfect the Replacement Liens or to entitle the Replacement Liens to the priorities granted herein.  Notwithstanding the foregoing, the Prepetition Agents (at the direction of the Prepetition Secured Parties) may enter into and file, as applicable, financing statements, mortgages, security agreements, notices of liens, and other similar documents, and is hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, mortgages, security agreements, notices, and other agreements or documents shall be deemed to have been entered into, filed or recorded as of the Petition Date. The applicable Debtors shall execute and deliver to the Prepetition Agents all such financing statements, mortgages, notices, and other documents as the Prepetition Agents (at the direction of

the Prepetition Secured Parties) may reasonably request to evidence and confirm the contemplated validity, perfection and priority of the Replacement Liens, as applicable, granted pursuant hereto. Without limiting the foregoing, the Prepetition Agents (at the direction of the Prepetition Secured Parties) may file a photocopy of this Interim Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which any Debtor has real or personal property, and in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Interim Order.

5.     **Third Party Challenge Rights**.     The stipulations, releases, agreements, and admissions contained in this Interim Order, including, without limitation, the Debtors' Stipulations, shall be binding on the Debtors in all circumstances.  The Debtors' Stipulations shall be binding on each other party in interest, including, without limitation, the Committee and any subsequently appointed chapter 11 trustee, unless, and solely to the extent that:

(a)     any such party in interest, with standing and requisite authority has timely commenced an adversary proceeding or other appropriate contested matter (subject to the limitations contained herein, including, inter alia, in this Section 5) by no later than (i) the earlier of (A) the deadline to object to confirmation of the Plan, provided the Plan is confirmed no later than January 17, 2021, and (B) in the case of the Committee, sixty (60) calendar days after the appointment of the Committee and for any other party in interest, seventy-five (75) calendar days after the entry of this Interim Order, or (ii) any other date as has been agreed to, in writing (which agreement may be documented by e-mail), by the applicable Prepetition Agents (with the consent of the applicable Prepetition Secured Parties), or (iii) any other date as set by an order of the Court for cause shown (such time period established by the foregoing clauses (i) through (iii), the "Challenge Period"), provided that if the cases convert to a Chapter 7, or if a Chapter 11 trustee is

appointed prior to the end of the Challenge Period, the Challenge Period shall be extended for the Chapter 7 or Chapter 11 trustee to 20 days after their appointment, against the Prepetition Secured Parties in connection with matters related to the Prepetition Documents, the Prepetition Obligations, the Prepetition Liens, and the Prepetition Collateral, including by (1) objecting to or challenging the amount, validity, perfection, enforceability, priority, or extent of the Prepetition Obligations or Prepetition Liens, or (2) otherwise asserting or prosecuting any action for preferences, fraudulent transfers or conveyances, other avoidance power claims or any other claims, counterclaims, or causes of action, objections, contests, or defenses with respect to the Prepetition Obligations or Prepetition Liens or otherwise seeking affirmative relief (a "Challenge Proceeding"); and

(b)      there is a final, non-appealable order in favor of the plaintiff sustaining any Challenge Proceeding in any such timely filed adversary proceeding or contested matter; provided, however, that any pleadings filed in connection with any Challenge Proceeding shall set forth with specificity the basis for such Challenge Proceeding, and any challenges or claims not so specified prior to the expiration of the Challenge Period shall be deemed forever waived, released, and barred.  For the avoidance of doubt, a party in interest's commencement of a timely Challenge Proceeding shall preserve the Challenge Period only with respect to such party in interest commencing the Challenge Proceeding and only to the extent of the express content of such Challenge Proceeding, provided that this provision shall not limit other persons or entities from benefitting from any successful Challenge Proceeding of any statutory committee or chapter 7 or 11 trustee.  If no such Challenge Proceeding is timely commenced, then:  (i) the Debtors' Stipulations shall be binding on all parties in interest; (ii) any and all Challenge Proceedings by any party (including, without limitation, the Committee, any chapter 11 trustee, or any examiner

and/or other estate representative appointed or elected in the Chapter 11 Cases, and any chapter 7 trustee and/or examiner or other estate representative appointed or elected in any Successor Case) shall be deemed to be forever waived, released, and barred; (iii) to the extent not theretofore repaid, the Prepetition Obligations shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, reduction, defense or avoidance, for all purposes in the Chapter 11 Cases and any subsequent chapter 7 case; (iv) the Prepetition Liens on the Prepetition Collateral shall be deemed to have been, as of the Petition Date, and to be, legal, valid, binding, perfected and of the priority specified in the Debtors' Stipulations, not subject to defense, counterclaim, recharacterization, subordination or avoidance; and (v) the Prepetition Obligations and the Prepetition Liens on the Prepetition Collateral shall not be subject to any other or further challenge by the Debtors, the Committee or any other party in interest, including, without limitation, any successor thereto (including, without limitation, any estate representative or a chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors with respect thereto).  If any Challenge Proceeding is timely commenced, the Debtors' Stipulations shall nonetheless remain binding and preclusive (as provided in this Section 5) on the Debtors, the Committee, and any other person or entity, except as to any such findings and admissions that were expressly and successfully challenged in such Challenge Proceeding as set forth in a final, non-appealable order of a court of competent jurisdiction.  Nothing in this Interim Order vests or confers on any Person (as defined in the Bankruptcy Code), including the Committee, standing or authority to pursue any cause of action belonging to the Debtors or their estates, including, without limitation, claims and defenses with respect to the Prepetition Obligations or the Prepetition Liens on the Prepetition Collateral, provided, however, that the filing of a motion seeking standing to file a Challenge Proceeding before the expiration of the Challenge Period, which attaches a complaint for the proposed

Challenge Proceeding, shall extend the Challenge Period with respect to that party until two business days after the Court approves the standing motion, or such other time period ordered by the Court in approving the standing motion.

6.    **Carve Out**.  Subject to the terms and conditions contained in this Section 6, the Prepetition Liens, the Replacement Liens, the Superpriority Claims, and all other claims and liens granted under this Interim Order, shall be subject and subordinate to payment of the Carve Out in accordance with the terms and conditions of this Interim Order:

(a)    Carve Out.  For purposes of this Interim Order, "Carve Out" means (i) all fees required to be paid in the Chapter 11 Cases to the Clerk of this Court and to the United States Trustee under 28 U.S.C. § 1930(a) and 31 U.S.C. § 3717 (collectively, the "Statutory Fees") which shall not be limited by any budget; (ii) all reasonable fees and expenses incurred by a trustee under section 726(b) of the Bankruptcy Code, in an aggregate amount not to exceed $50,000; (iii) to the extent set forth in the Approved Budget and allowed by this Court under sections 328, 330 or 363 of the Bankruptcy Code, whether by interim order, procedural order or otherwise, all reasonable unpaid fees, costs, and disbursements (the "Debtor Professional Fees") of professionals retained by the Debtors in the Chapter 11 Cases (collectively, the "Debtors' Professionals") that are incurred or have accrued before the Trigger Date (as defined below; and, in the event of accrual, only as to services provided before the Trigger Date), that remain unpaid after application of any retainers being held by such professionals; (iv) to the extent set forth in the Approved Budget and allowed by this Court under sections 328 or 330 of the Bankruptcy Code, whether by interim order, procedural order or otherwise, all reasonable unpaid fees, costs, and disbursements of professionals ("Committee Professional Fees") retained by the Committee in the Chapter 11 Cases (collectively, the "Committee's Professionals"), in each case that are incurred before the Trigger Date, that

remain unpaid after application of any retainers being held by such professionals; (v) subject to the Sponsor Fee Cap, to the extent set forth in the Approved Budget and subject to Section 13(b) hereof, the reasonable unpaid fees, costs, and disbursements of counsel retained by the Sponsor Equityholder in the Chapter 11 Cases, in each case that are incurred before the Trigger Date, that remain unpaid after application of any retainers being held by such counsel; (vi) the reasonable unpaid fees, costs, and disbursements of the Debtors' Professionals and, up to the Sponsor Fee Cap, counsel to the Sponsor Equityholder that are incurred or accrue on or after the Trigger Date and (X) as to the Debtors' Professionals allowed by this Court, after application of any retainers being held by such professionals, under sections 328, 330 or 363 of the Bankruptcy Code and (Y) as to counsel for the Sponsor Equityholder, subject to Section 13(b) hereof, in an aggregate amount (i.e., under the preceding clauses (X) and (Y)) not to exceed $1,000,000 (the "Professionals Carve Out Cap"); and (vii) the reasonable unpaid fees, costs, and disbursements of the Committee's Professionals that are incurred or accrue after the Trigger Date, that are allowed by this Court under sections 328, or 330 of the Bankruptcy Code after application of any retainers being held by such professionals, in an aggregate amount not to exceed $25,000 (the "Committee's Professional Carve Out Cap" and together with the Professionals Carve Out Cap, the "Post-Default Carve Out Cap"); provided, that any success, completion, or similar fees approved by the Court and payable from the Post-Default Carve Out Cap amount shall be subject and subordinate, and junior in right of payment, to all other amounts payable from such Post-Default Carve Out Cap amount. The "Trigger Date" shall mean the first day after the occurrence of a Termination Event (defined below).

(b)     No Direct Obligation to Pay Professional Fees; No Waiver of Right to Object to Fees. The Prepetition Secured Parties shall not be responsible for the direct payment or

reimbursement of any fees or disbursements of any of the Debtors' Professionals, Committee's Professionals, any Committee members or counsel to the Sponsor Equityholder incurred in connection with the Chapter 11 Cases or any Successor Cases under any chapter of the Bankruptcy Code.  Nothing in this Interim Order, the Final Order or otherwise shall be construed (i) to obligate any Prepetition Secured Party in any way to pay compensation to, or to reimburse expenses of, any of the Debtors' Professionals, the Committee's Professionals, Committee members, counsel to the Sponsor Equityholder, or to guarantee that the Debtors or their estates have sufficient funds to pay such compensation or reimbursement, or (ii) to increase the Carve Out if actual allowed fees and expenses of any of the Debtors' Professionals, Committee's Professionals, Committee members or counsel to the Sponsor Equityholder are higher in fact than the Post-Default Carve Out Cap.  Notwithstanding any provision in this Section 6 to the contrary, no portion of the Carve Out, Cash Collateral or Prepetition Collateral shall be utilized for the payment of professional fees and disbursements to the extent restricted under Section 10 of this Interim Order.  Nothing herein shall be construed as consent to the allowance of any professional fees or expenses of any of the Debtors, the Committee, any other official or unofficial committee in the Chapter 11 Cases or any Successor Cases, counsel to the Sponsor Equityholder or any trustee or of any other person or entity, and nothing herein shall affect the right of any Prepetition Secured Party or any other party to object to the allowance and payment of any such fees and expenses.

(c)    <u>Payment of Allowed Professional Fees and Expenses</u>.  The Debtors shall be permitted to pay fees and expenses of the Debtors' Professionals, the Committee's Professionals and counsel to the Sponsor Equityholder subject to this Interim Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any interim compensation procedures order entered by this Court.  The amounts paid, incurred or accrued prior to the Trigger Date (in the event of accrual,

only as to services provided prior to the Trigger Date) shall not reduce the Post-Default Carve Out Cap.

(d)    Carve Out Reserves.  On the last business day of each week, the Debtors shall fund a professional fee reserve (the "Professional Fee Reserve") in an amount equal to the professional fees as set forth in the Approved Budget for the week then ended.  All funds in the Professional Fee Reserve shall be used first to pay the Carve Out (whether such fees are allowed on an interim or final basis).  Notwithstanding anything in this Interim Order to the contrary, on the Trigger Date, the Debtors shall remit Cash Collateral in the amount of the Post-Default Carve Out Cap into the Professional Fee Reserve; the remittance by the Debtors of such Cash Collateral into the Professional Fee Reserve shall be deemed to have the consent of the Prepetition Secured Parties and shall be deemed to satisfy and discharge any and all obligations of the Prepetition Secured Parties with respect to the Post-Default Carve Out Cap.

(e)    Waiver of 506(c) Claims.  Subject to and effective upon entry of the Final Order granting such relief, (i) no costs or expenses of administration of the Chapter 11 Cases or any Successor Cases shall be charged against or recovered from or against any or all of the Prepetition Secured Parties, the Prepetition Collateral or the Cash Collateral, in each case pursuant to section 506(c) of the Bankruptcy Code or otherwise, without the prior written consent of the Prepetition Agents (at the direction of the Prepetition Secured Parties), and (ii) no such consent shall be implied from any action, inaction or acquiescence of any or all of the Prepetition Secured Parties (including, without limitation, consent to the Carve Out or the approval of any budget hereunder).

7.    **Cash Management**.  The Debtors shall maintain their existing cash management arrangements in a manner consistent with this Court's order(s) granting the Debtors' cash

management motion (the "Cash Management Motion").  Further to the preceding sentence, the Debtors shall maintain all prepetition practices and procedures for the payment and collection of proceeds of the Prepetition Collateral, and all lockbox, deposit account control agreements and other blocked depository bank account arrangements are hereby approved and shall continue without interruption.  For the avoidance of doubt, other than for expenditures expressly set forth on the Approved Budget and Statutory Fees, the Debtors shall be prohibited from transferring any amounts held in any current accounts subject to deposit control account agreements in favor of the Prepetition ABL Agent and/or maintained at Bank of America, N.A., in either event as listed on Exhibit A hereto, to any other depository account maintained by any of the Debtors, provided that the Debtors shall be permitted to make transfers in the ordinary course of business and/or, with respect to the Wells Fargo Accounts (as defined below) only, to make adequate assurance deposits for the benefit of Debtors' utility providers or to fund the Professional Fee Reserve into (i) accounts with Wells Fargo (0363) and (XXXX) (the "Wells Fargo Accounts"), and (ii) the operating account with Truist (1919) (each as described in more detail in the Cash Management Motion and, collectively, the "Subject Accounts"), provided, further, that all funds on deposit in the Subject Accounts (other than funds in the Wells Fargo Accounts constituting adequate assurance deposits for the benefit of the Debtors' utility providers or funds in the Wells Fargo Accounts comprising the Professional Fee Reserve) shall be deemed to be Cash Collateral.

8.     **Termination Events**.  The Debtors' right to use Cash Collateral pursuant to this Interim Order shall terminate without further notice or court proceeding on the earliest to occur of (a) the date that is thirty-five (35) calendar days after the Petition Date, if the Final Order has not been entered by the Court on or before such date ( unless such period is extended with the consent of the Prepetition Agents, which consent may be documented by e-mail and which extension shall

be effective without further application to, or approval by, the Court); (b) the Effective Date of a confirmed chapter 11 plan of any of the Debtors; or (c) five (5) business days (any such five business-day period of time, the "Default Notice Period") following delivery of a written notice served by email (a "Default Notice") from either or both Prepetition Agents to the other Prepetition Agent (if applicable), the Debtors, the Ad Hoc Noteholder Group, the United States Trustee and the Committee of the occurrence of any of the events set forth in clauses (a) through (s) below, unless such Termination Event is cured or waived (which waiver may be documented by e-mail) within the Default Notice Period (or such later date as may be agreed to in writing (which agreement may be documented by e-mail) by the Prepetition Agents). Each of the following shall constitute a termination event under this Interim Order unless waived in writing by the Prepetition Agents (which waiver may be documented by e-mail) (each, a "Termination Event"):

(a)    failure by any Debtor to comply with the Approved Budget (including any variance testing, but subject to the Permitted Variances);

(b)    failure by any Debtor to comply with Section 2(c), 2(f), 3(e), 3(f), 6(d) or 7 of this Interim Order;

(c)    the entry by a court of competent jurisdiction of an order pursuant to which the Prepetition ABL Secured Parties shall cease to have a valid and perfected first priority security interest in and lien on any ABL Priority Collateral, junior only to the Carve Out and any Permitted Liens;

(d)    the entry by a court of competent jurisdiction of an order pursuant to which the Prepetition Notes Secured Parties shall cease to have a valid and perfected first priority security interest in and lien on any Notes Priority Collateral, junior only to the Carve Out and any Permitted Liens;

(e)     failure by any Debtor to comply with any material provision of this Interim Order, and such failure to comply is not remedied within the Default Notice Period (the Debtors and the Prepetition Secured Parties agree that, to the extent that any failure by any Debtor, occurrence or event is encompassed under this subsection (e) of this Section 8 and under another subsection of this Section 8, such other subsection of this Section 8 shall govern);

(f)     the entry by a court of competent jurisdiction of an order amending, modifying, staying, revoking or reversing this Interim Order, without the express written consent (which consent may be documented by e-mail) of the Prepetition Agents (at the direction of the Prepetition Secured Parties);

(g)     any sale or other disposition of all or a material portion of the Prepetition Collateral pursuant to section 363 of the Bankruptcy Code that would materially and adversely affect the Debtors' ability to operate their business in the ordinary course other than as permitted by this Interim Order or the RSA or as otherwise agreed to by the Prepetition Agents (which agreement may be documented by email);

(h)     the termination of the Debtors' exclusivity period under section 1121 of the Bankruptcy Code;

(i)     the filing by the Debtors of a motion to convert any of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, or the entry by a court of competent jurisdiction of an order converting any of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code based upon a motion filed by any party;

(j)     the filing by the Debtors of a motion to dismiss any of the Chapter 11 Cases, or the entry by a court of competent jurisdiction of an order dismissing any of the Chapter 11 Cases based upon a motion filed by any party;

(k)      the filing by the Debtors of any application, motion or borrowing request seeking to use Cash Collateral on a nonconsensual basis;

(l)      the entry of an order appointing a chapter 11 trustee or an examiner with enlarged powers relating to the operation of the business of any Debtor (powers beyond those set forth in sections 1106(a)(3) and 1106(a)(4) of the Bankruptcy Code) under section 1106(b) of the Bankruptcy Code, unless consented to by the Prepetition Agents (which consent may be documented by e-mail);

(m)      failure to meet any Milestone under this Interim Order (or such later dates as may be approved by the Prepetition Agents, which approval may be documented by e-mail) and such failure to comply is not remedied within the Default Notice Period;

(n)      any amendment or modification of the RSA that materially prejudices any of the Prepetition ABL Secured Parties or any termination of the RSA;

(o)      except as provided in this Interim Order, the entry of an order granting relief from the automatic stay under section 362 of the Bankruptcy Code to the holder or holders of any security interest or lien on any part of the Prepetition Collateral;

(p)      except as provided in this Interim Order, the grant of any superpriority claim that is *pari passu* with or senior to those of the Prepetition Secured Parties;

(q)      the filing by the Debtors of a plan of liquidation or a plan of reorganization that is materially contrary to the terms of the RSA and this Interim Order;

(r)      the filing by the Debtors of a motion, seeking to exercise, prior to the entry of the Final Order, any rights under section 506(c) of the Bankruptcy Code or otherwise to charge any costs or expense of administration of the Chapter 11 Cases or any Successor Cases from or

against the Prepetition Secured Parties or their Prepetition Liens on or other interests in any or all of the Prepetition Collateral and the Cash Collateral; and

(s)    the entry of an order granting any party, prior to the entry of the Final Order, any rights under section 506(c) of the Bankruptcy Code or otherwise to charge any costs or expense of administration of the Chapter 11 Cases or any Successor Cases from or against the Prepetition Secured Parties or their Prepetition Liens on or other interests in any or all of the Prepetition Collateral or the Cash Collateral.

9.    **Rights and Remedies Upon Termination Event**.

(a)    Upon the occurrence and during the continuance of a Termination Event and delivery of a Default Notice to the Default Notice Parties, subject to the Carve Out, any automatic stay otherwise applicable to the Prepetition Secured Parties shall be modified, without requiring prior notice to or authorization of this Court, to the extent necessary to permit the Prepetition Secured Parties to (i) exercise all rights and remedies under this Interim Order; and/or (ii) declare a termination, reduction or restriction on the ability of the Debtors to use Cash Collateral (any such declaration hereunder shall be made to the respective lead counsel to the other Prepetition Agents (if applicable), the Debtors, the Committee, the Ad Hoc Noteholder Group and the United States Trustee, and shall be referred to herein as a "Termination Declaration" and the date that is the earliest to occur of any such Termination Declaration being herein referred to as the "Termination Declaration Date"). Notwithstanding anything herein to the contrary, during the Default Notice Period, the Debtors may use Cash Collateral in accordance with the Approved Budget and the other terms and conditions of this Interim Order and contest whether a Termination Event has occurred and/or is continuing.

(b)    The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified pursuant to the terms and conditions of this Interim Order as necessary to (i) permit the Debtors to grant the Replacement Liens and to incur all liabilities and obligations to the Prepetition Secured Parties under this Interim Order, (ii) authorize the Prepetition Secured Parties to retain and apply payments made in accordance with this Interim Order, (iii) permit each of the Prepetition Secured Parties to perform any act authorized under this Interim Order and/or the Prepetition Documents, and (iv) otherwise to the extent necessary to implement and effectuate the terms and conditions of this Interim Order.  Notwithstanding anything herein to the contrary, during the Default Notice Period, the Debtors or any party in interest shall be permitted to seek relief from this Court on an emergency basis.

10.    **Restriction on Use of Proceeds of Cash Collateral**.  Notwithstanding anything herein to the contrary, but subject to the proviso in this Section 10, no Cash Collateral (including any retainer held by any professionals for the below-referenced parties), Prepetition Collateral, or any portion of the Carve Out may be used by any Debtor, the Committee, any trustee or other estate representative appointed in the Chapter 11 Cases or any Successor Cases, or any other person, party, or entity (including any of the Debtors' Professionals, the Committee's Professionals, the Committee members, any official or ad hoc equity committee or counsel to the Sponsor Equityholder) to: (a) investigate (except as set forth below) or prosecute any Challenge Proceeding (including any litigation or other action) (or to pay any professional fees and disbursements incurred in connection therewith) at any time; (b) request authorization to obtain postpetition loans or other financial accommodations pursuant to section 364(c) or (d) of the Bankruptcy Code unless upon consummation of any such loan all Prepetition Obligations are to be paid in full in cash, or to seek any modification to this Interim Order not approved by the

Prepetition Agents (at the direction of the Prepetition Secured Parties); or (c) investigate (except as set forth below), assert, join, commence, support, or prosecute any action for any claim, counterclaim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination, or similar relief against, or adverse to the interests of, any or all of the Prepetition Secured Parties, their respective affiliates, assigns or successors and the respective officers, directors, employees, agents, attorneys, representatives and other advisors of the foregoing, with respect to any transaction, occurrence, omission, action, or other matter (including formal or informal discovery proceedings in anticipation thereof) in connection with the Prepetition Obligations, the Prepetition Liens or the debtor–creditor relationship between any of the Prepetition Secured Parties on the one hand, and any of the Debtors, on the other hand, including (i) any Challenge Proceedings and any Avoidance Actions or other actions arising under chapter 5 of the Bankruptcy Code; (ii) any action with respect to the extent, validity and enforceability of the Prepetition Obligations, or the extent, validity, enforceability, perfection and priority of the Prepetition Liens or the Replacement Liens; (iii) any action seeking to invalidate, set aside, avoid, or subordinate, in whole or in part, the Prepetition Liens, the Replacement Liens, or the other Prepetition Secured Parties Adequate Protection; or (iv) any action seeking to modify any of the rights, remedies, priorities, privileges, protections, and benefits granted to any or all of the Prepetition Secured Parties hereunder or any payments made hereunder; provided, however, that up to $50,000 of Cash Collateral may be used by the Committee (to the extent such Committee is appointed) to investigate (but not to prosecute) the Prepetition Obligations and Prepetition Liens so long as such investigation occurs within the Challenge Period.

      11.    **<u>Proofs of Claim</u>**.  The Prepetition Secured Parties shall not be required to file proofs of claim in any of the Chapter 11 Cases or Successor Cases for any claim allowed herein.

The Debtors' Stipulations shall be deemed to constitute a timely filed proof of claim for the Prepetition ABL Agent in respect of all Prepetition ABL Obligations and the Indenture Trustees in respect of all Prepetition Notes Obligations.  In addition, the Prepetition Secured Parties will not be required to file any request for allowance and/or payment of any administrative expenses, and this Interim Order shall be deemed to constitute a timely filed request for allowance and/or payment of any Prepetition ABL Obligations and Prepetition Notes Obligations constituting administrative expenses.  Notwithstanding any order entered by this Court in relation to the establishment of a bar date in any of the Chapter 11 Cases or Successor Cases to the contrary, each of the Prepetition ABL Agent, for the benefit of itself and the other Prepetition ABL Secured Parties, the 2014 Indenture Trustee, for the benefit of itself and the other Prepetition 2014 Notes Secured Parties and the 2015 Indenture Trustee, for the benefit of itself and the other Prepetition 2015 Notes Secured Parties, is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, in its respective discretion) in the Chapter 11 Cases or Successor Cases (a) a proof of claim and/or aggregate proofs of claim in respect of any Prepetition ABL Obligations or Prepetition Notes Obligations, as applicable, and (b) a request or aggregate requests for allowance and/or payment of any portion of the Prepetition ABL Obligations or Prepetition Notes Obligations, as applicable, constituting administrative expenses. For the avoidance of doubt, any such proof of claim of a Prepetition Agent may (but is not required to) be filed (and amended) as one master, consolidated proof of claim against all of the Debtors, rather than as separate proofs of claim against each Debtor, and such Prepetition Agent shall be deemed to have filed a proof of claim (or amendment thereto) in the amount and with respect to the claims set forth therein against the Debtors named in the master, consolidated proof of claim (or amendment) as if such entity had filed a separate proof of claim (or amendment) in each of the

Chapter 11 Cases or any successor cases in the amount and with respect to the claims set forth therein.

12. **Preservation of Rights Granted Under the Interim Order**.

(a)    <u>Dismissal</u>.  If any order dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, then notwithstanding any such dismissal, (i) all rights, remedies, liens, priorities, privileges, protections, and benefits granted to any or all of the Prepetition Secured Parties under this Interim Order, respectively, shall remain in full force and effect and be binding on all parties in interest and be governed in all respects by the terms and conditions of this Interim Order (and shall maintain their respective priorities as provided by this Interim Order) until all Prepetition Obligations have been paid in full, and (ii) to the fullest extent permitted by applicable law, this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing such rights, remedies, liens, priorities, privileges, protections, and benefits granted to any or all of the Prepetition Secured Parties.

(b)    <u>Survival of Interim Order</u>.  The terms and conditions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order that may be entered (i) confirming any plan of reorganization in any of the Chapter 11 Cases, (ii) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, (iii) dismissing any of the Chapter 11 Cases or Successor Cases, or (iv) pursuant to which this Court abstains from hearing any of the Chapter 11 Cases or Successor Cases. The terms and conditions of this Interim Order, including the Superpriority Claims, the Replacement Liens, and all other claims and liens granted by this Interim Order, shall (x) continue in this or any other superseding case under the Bankruptcy Code, (y) be valid and binding on all parties in interest, including, without limitation, the Committee, chapter 11 trustee, examiner or chapter 7 trustee, and (z) continue, notwithstanding

any dismissal or any Chapter 11 Case or Successor Case (and any such order of dismissal shall so provide), and such claims and liens shall maintain their priority as provided by this Interim Order until the Prepetition Obligations are satisfied in full.

13. **Other Rights and Obligations**.

(a)    <u>Payment of Prepetition Secured Parties' Fees and Expenses</u>.  The Debtors shall pay (i) all reasonable and documented fees and out-of-pocket expenses incurred by the Prepetition Agents, the Sponsor Equityholder (subject to the Sponsor Fee Cap) and the Ad Hoc Noteholder Group (including the reasonable and documented fees and out-of-pocket expenses of counsel for the Prepetition Agents, the Sponsor Equityholder (subject to the Sponsor Fee Cap) and the Ad Hoc Noteholder Group, including one local counsel for each, and any internal or third-party appraisers, consultants, advisors and auditors engaged by or for the benefit of the Prepetition Agents or the Ad Hoc Noteholder Group), whether incurred before or after the Petition Date and (ii) all reasonable and documented out-of-pocket costs and expenses of the Prepetition Agents, the Sponsor Equityholder (subject to the Sponsor Fee Cap) and the Ad Hoc Noteholder Group in connection with the preparation, execution, delivery, and administration of this Interim Order, the Final Order, and any other agreements, instruments, pleadings, or other documents prepared or reviewed in connection with any of the foregoing, whether or not any or all of the transactions contemplated hereby are consummated.

(b)    <u>Notice of Professional Fees</u>.  Professionals for the Prepetition Agents, the Sponsor Equityholder and the Ad Hoc Noteholder Group (including professionals engaged by counsel to Prepetition Agents) (collectively, the "<u>Secured Party Professionals</u>") shall not be required to comply with the United States Trustee fee guidelines or submit invoices to this Court. Each Secured Party Professional shall serve copies of all invoices for their professional fees,

expenses and disbursements on counsel to the other Prepetition Secured Parties, the Ad Hoc Noteholder Group, the Debtors, the United States Trustee and the Committee (collectively, the "Fee Notice Parties").  The invoices shall be in the form of an invoice summary for professional fees and categorized expenses incurred during the pendency of the Chapter 11 Cases or incurred prior to the Petition Date, but which will be paid during the pendency of the Chapter 11 Cases, and such invoice summary shall not be required to contain time entries, but shall include a summary regarding hours worked by each timekeeper for the applicable professional and such timekeepers' hourly rates (except for financial advisors compensated on other than an hourly basis) and a reasonably detailed description of the nature of the matters for which services were performed, and, with respect to the invoices of law firms, the year of law school graduation for each attorney; provided that during the Fee Objection Period (as defined below), any Fee Notice Party may request reasonable documentation related to any such costs, expenses and fees (including, for Secured Party Professionals that are compensated on an hourly basis, reasonable time entry detail); provided, however, that such summary statements, invoices or documentation may be redacted to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product or any other confidential information, and the provision of such summary statements, invoices or documentation shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine or other applicable privilege, and the United States Trustee reserves the right to seek to obtain unredacted copies of any summary statements, invoices or documentation.  If any Fee Notice Party objects to the reasonableness of the fees and expenses of (x) in the case of any Fee Notice Party other than the United States Trustee, any of the Secured Party Professionals that are compensated on an hourly basis or (y) in the case of the United States Trustee, any of the Secured Party Professionals,

and, in either case, cannot resolve such objection within ten (10) calendar days of receipt of such invoices, then such Fee Notice Party shall file with this Court and serve on such Secured Party Professionals and the Debtors an objection (the "Fee Objection") limited to the issue of the reasonableness of such fees and expenses, and any failure by any such party to file a Fee Objection within such ten (10) day period (the "Fee Objection Period") shall constitute a waiver of any right of such party to object to the applicable invoice.  Notwithstanding any provision herein to the contrary, any objection to, and any hearing on an objection to, payment of any fees, costs, and expenses set forth in a professional fee invoice in respect of Secured Party Professionals that are compensated on an hourly basis (or, in respect of any Secured Party Professional, in the case of any objection filed by the United States Trustee) shall be limited to the reasonableness of the particular items or categories of the fees, costs, and expenses that are the subject of such objection. Within three (3) business days after the expiration of the Fee Objection Period, the Debtors shall pay in accordance with the terms and conditions of this Interim Order (i) the undisputed fees, costs, and expenses reflected on any invoice to which a Fee Objection has been timely filed, and (ii) all fees, costs and expenses on any invoice to which no Fee Objection has been timely filed.  All such unpaid fees, costs, expenses, and charges of the Prepetition ABL Secured Parties that have not been disallowed by this Court on the basis of an objection filed by the Debtor, the United States Trustee or the Committee (or any subsequent trustee of the Debtors' estates) in accordance with the terms hereof shall constitute Prepetition Obligations and shall be secured by the Prepetition Collateral as specified in this Interim Order.  Payments of any amounts set forth in this Section 13 are not subject to recharacterization, avoidance, subordination or disgorgement, except to the extent that this Court rules otherwise in connection with a successful Challenge Proceeding.

(c)    Binding Effect.  Subject only to Section 5 above, the terms and conditions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in the Chapter 11 Cases and any Successor Cases, including the Prepetition Secured Parties, the Committee and the Debtors and their respective estates, successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, any other official or unofficial committee appointed in the Chapter 11 Cases, or any other fiduciary or responsible person appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors), whether in any of the Chapter 11 Cases, in any Successor Cases, or upon dismissal of any such Chapter 11 Case or Successor Case; provided, however, that except to the extent expressly provided in this Interim Order, the Prepetition Secured Parties shall have no obligation to permit the use of Cash Collateral or to extend any financing to any chapter 7 or chapter 11 trustee or other responsible person appointed for the estates of the Debtors in any Chapter 11 Case or Successor Case.

(d)    No Waiver.  The failure of the Prepetition Secured Parties to seek relief or otherwise exercise their rights and remedies under this Interim Order, the applicable Prepetition Documents or otherwise (or any delay in seeking or exercising same) shall not constitute a waiver of any of such parties' rights hereunder, thereunder or otherwise.  Nothing contained in this Interim Order (including the authorization of the use of any Cash Collateral) shall impair or modify any rights, claims, or defenses available in law or equity to any Prepetition Secured Party.  Except as prohibited by this Interim Order and the RSA (as to the parties thereto), the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair, any right or ability of the Prepetition Secured Parties under the Bankruptcy Code

or under non-bankruptcy law to (i) request conversion of the Chapter 11 Cases or any Successor Cases to cases under chapter 7, dismissal of the Chapter 11 Cases or any Successor Cases, or the appointment of a trustee or examiner in the Chapter 11 Cases or any Successor Cases, or to oppose the use of Cash Collateral in any Successor Case, (ii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, any chapter 11 plan or plans with respect to any of the Debtors or seek early termination of the Debtors' exclusive rights to propose a plan under the Bankruptcy Code, (iii) request additional restrictions upon the Debtors' business activities or use of funds, (iv) request termination or modification of this Interim Order or (v) exercise any of the rights, claims, or privileges (whether legal, equitable, or otherwise) of the Prepetition Secured Parties under the applicable Prepetition Documents, the Bankruptcy Code or otherwise.

(e)    No Third-Party Rights.    Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or direct, indirect or incidental beneficiary.

(f)    Limits on Lender Liability.    In determining to permit the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Interim order or the Prepetition Documents, the Prepetition Secured Parties shall not (i) be deemed to be in control of the operations of the Debtors or to be acting as a "controlling person", "responsible person", or "owner or operator" with respect to the operation or management of the Debtors, so long as such party's actions do not constitute, within the meaning of 42 U.S.C. § 9601(20)(F), actual participation in the management or operational affairs of a facility owned or operated by a Debtor or otherwise cause liability to arise to the federal or state government or the status of responsible person or managing agent to exist under applicable law (as such terms, or any similar terms, are used in the Internal Revenue Code, WARN Act, the United States Comprehensive

47

Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 et seq., as amended, or any similar federal or state statute), or (ii) owe any fiduciary duty to any of the Debtors. Furthermore, nothing in this Interim Order shall in any way be construed or interpreted to impose or allow the imposition upon any of the Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors and their respective affiliates (as defined in section 101(2) of the Bankruptcy Code).

(g)    No Marshaling.   Subject to and effective upon entry of the Final Order granting such relief, the Prepetition Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Prepetition Collateral and Cash Collateral, as applicable.

(h)    Enforceability.   This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable as of the Petition Date immediately upon execution hereof.    Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry, and there shall be no stay of execution or effectiveness of this Interim Order.

(i)    Reservation of Rights.   Nothing in this Interim Order shall be deemed to constitute the consent of the Prepetition Secured Parties, and each of the foregoing expressly reserves the right to object, to entry of any order of this Court that provides for the sale or other disposition of all or substantially all of the assets of the Debtors (or any other sale or other disposition of assets of any of the Debtors outside the ordinary course of business) to any party. Nothing contained in this Interim Order shall be treated as an admission by the Prepetition Secured

Parties regarding the truth, accuracy or completeness of any fact or the applicability or strength of any legal or equitable claim, theory, or defense, and the Prepetition Secured Parties shall have standing to assert, and shall not be precluded or estopped from asserting, any challenge to any factual representation set forth herein or from asserting any legal or equitable claim, theory, or defense against the Debtors or their estates.

14.    **Milestones**. Subject to Paragraph 8 and the Default Notice Period, it shall be a Termination Event if the  Debtors do not  adhere to the following milestones (collectively, the "Milestones"), subject to certain extensions pursuant to the RSA (in which event such milestones shall be deemed commensurately extended with the consent of the Prepetition ABL Agent, not to be unreasonably withheld); provided, however, that any such extensions, in each and every instance, shall be subject to the prior written consent of the Prepetition ABL Agent (which consent shall not be unreasonably withheld and may be documented by e-mail):

(a)    by no later than the Petition Date, each Debtor shall have filed in the Chapter 11 Cases (i) the Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization (as may be amended, modified, or supplemented, the "Plan"), in each case in accordance with the terms and conditions of this Interim Order, the RSA and otherwise as reasonably acceptable to the Debtors and the Prepetition Secured Parties (and all references in this Interim Order to the "Plan" shall mean such documents that comply with these provisions), and (ii) an accompanying disclosure statement (the "Disclosure Statement"), which Disclosure Statement shall be reasonably acceptable in form and substance to the Debtors and the Prepetition Secured Parties;

(b)    this Interim Order shall be entered in the Chapter 11 Cases by no later than November 28, 2020 (i.e., five (5) calendar days after the Petition Date), and shall not be reversed,

vacated, stayed, appealed, or subject to a request for a new trial, re-argument, or rehearing as of the Effective Date;

(c)    the Final Order shall be entered in the Chapter 11 Cases by no later than December 28, 2020 (i.e., thirty-five (35) calendar days after the Petition Date), and shall not be reversed, vacated, stayed, appealed, or subject to a request for a new trial, re-argument, or rehearing as of the Effective Date;

(d)    an order approving the Disclosure Statement, which shall be reasonably acceptable in form and substance to the Prepetition Secured Parties, shall be entered in the Chapter 11 Cases by no later than January 7, 2021 (i.e., forty-five (45) calendar days after the Petition Date);

(e)    an order confirming the Plan (the "Confirmation Order"), which shall be reasonably acceptable in form and substance to Prepetition Secured Parties, shall be entered in the Chapter 11 Cases by no later than January 7, 2021 (i.e., forty-five (45) calendar days after the Petition Date); and

(f)    the Effective Date shall occur no later than January 31, 2021.

15.    **Section 552(b) Waiver**.    Subject to and effective upon entry of the Final Order granting such relief, the Prepetition Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Parties with respect to proceeds, product, offspring, rents, or profits of or any of the items enumerated in section 552(b)(2) of the Bankruptcy Code with respect to any of the Prepetition Collateral in any motion, case or action brought by any Debtor.

16.    **Waiver of Prepetition Notes Secured Parties**.  Notwithstanding anything to the contrary in the Prepetition Intercreditor Agreement, including Section 6.1(a)(ii) thereof, the Indenture Trustees, for the benefit of the Prepetition Notes Secured Parties and with the consent of the Ad Hoc Noteholder Group, expressly waives its right to raise any objection to the use of Cash Collateral pursuant to the terms and conditions of this Interim Order on the basis that the Debtors are seeking confirmation of a specific plan of reorganization in reliance on this Interim Order and the Final Order.

17.    **Discharge Waiver**.  Subject to and effective upon entry of the Final Order granting such relief, the Debtors expressly stipulate, and the Court finds and adjudicates that, neither any of the Replacement Liens nor any of the Superpriority Claims, shall be discharged by the entry of an order confirming any plan of reorganization, notwithstanding section 1142(d) of the Bankruptcy Code.

18.    **Section 507(b) Reservation**. Subject to the Carve Out, nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided hereunder is insufficient to compensate the Prepetition Secured Parties for any Diminution in Value of their respective interests in the Prepetition Collateral during the Chapter 11 Cases or, if any of the Chapter 11 Cases are converted to chapter 7, during any such chapter 7 cases. Nothing contained herein shall be deemed a finding by this Court, or an acknowledgement by any of the Prepetition Secured Parties that the adequate protection granted herein does in fact adequately protect the Prepetition Secured Parties against any diminution of value of their respective interests in the Prepetition Collateral (including the Cash Collateral).

19.    **Releases**.  Upon the entry of the Final Order granting such relief, and in each instance, subject to Section 5 above, in consideration of the Prepetition Agents permitting the

Debtors to use the Prepetition Collateral (including Cash Collateral) pursuant to the terms and conditions of this Interim Order, each of the Debtors and their estates, on their own behalf and on behalf of each of their past, present and future predecessors, successors, heirs, subsidiaries, and assigns, hereby forever, unconditionally, permanently, and irrevocably release, discharge, and acquit each of the Prepetition Secured Parties and the Ad Hoc Noteholder Group, and (in such capacity) each of their respective successors, assigns, affiliates, parents, subsidiaries, partners, controlling persons, representatives, agents, attorneys, advisors, investment bankers, financial advisors, consultants, professionals, officers, directors, members, managers, shareholders, and employees, past, present and future, and their respective heirs, predecessors, successors and assigns (collectively, the "Released Parties") of and from any and all claims, controversies, disputes, liabilities, obligations, demands, damages, expenses (including, without limitation, attorneys' fees), debts, liens, actions, and causes of action of any and every nature whatsoever, whether arising in law or otherwise, and whether known or unknown, matured or contingent, arising under, in connection with, or relating to the Prepetition Obligations or the Prepetition Documents, as applicable, including, without limitation, (a) any so-called "lender liability" or equitable subordination claims or defenses, (b) any and all "claims" (as defined in the Bankruptcy Code) and causes of action arising under the Bankruptcy Code, and (c) any and all offsets, defenses, claims, counterclaims, set off rights, objections, challenges, causes of action, and/or choses in action of any kind or nature whatsoever, whether arising at law or in equity, including any recharacterization, recoupment, subordination, avoidance, or other claim or cause of action arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state, federal, or foreign law, including, without limitation, any right to assert any disgorgement or recovery, in each case, with respect to the extent, amount,

validity, enforceability, priority, security, and perfection of any of the Prepetition Obligations, the Prepetition Documents, or the Prepetition Liens, and further waive and release any defense, right of counterclaim, right of setoff, or deduction to the payment of the Prepetition Obligations that the Debtors now have or may claim to have against the Released Parties, arising under, in connection with, based upon, or related to any and all acts, omissions, conduct undertaken, or events occurring prior to entry of this Interim Order (the "Releases").  Upon the entry of the Final Order granting such relief, the Debtors are authorized in any payoff letter or similar agreement into which they enter upon payment in full of the Prepetition ABL Obligations to provide a waiver and release for the benefit of the Prepetition ABL Agent, the Prepetition ABL Lenders, the Prepetition Lender Counterparties and their affiliated parties substantially similar to the Releases.

20.    **Final Hearing**.  The Final Hearing to consider entry of the Final Order is scheduled for December 18, 2020, at 9:00 a.m. (prevailing Eastern Time) at the United States Bankruptcy Court for the District of Delaware.  If no objections to the relief sought in the Final Hearing are filed and served in accordance with this Interim Order, no Final Hearing may be held, and a separate Final Order may be presented by the Debtors and entered by this Court.  Within three (3) business days after entry of this Interim Order, the Debtors shall serve, by United States mail, first-class postage prepaid (such service constituting adequate notice of the Final Hearing), (i) notice of the entry of this Interim Order and of the Final Hearing (the "Final Hearing Notice") and (ii) a copy of this Interim Order on the parties listed in the Notice provision of the Motion, or which were otherwise  given notice of the Interim Hearing; all parties known to the Debtor to be asserting liens against or security interests in any of the Pre-Petition Collateral or other property addressed in this Interim Order; all federal or state regulatory authorities governing the Debtors' industry; any other party that has filed a request for notices with this Court; and to the Committee after the

same has been appointed or Committee counsel if the same shall have been appointed.  The Final

Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final

Order shall file written objections with the Clerk of this Court no later than December [●] at 4:00

p.m. (prevailing Eastern Time), which objections shall be served on or before such date, on the

following parties:

> (i)      proposed attorneys for the Debtors:
>
>          Gibson, Dunn & Crutcher LLP
>          200 Park Avenue
>          New York, NY 10166
>          Attention: David M. Feldman, J. Eric Wise, Matthew K. Kelsey
>          and Alan Moskowitz
>          E-mail: dfeldman@gibsondunn.com; ewise@gibsondunn.com;
>          mkelsey@gibsondunn.com; amoskowitz@gibsondunn.com
>
> (ii)     proposed local counsel for the Debtors:
>
>          Young Conaway Stargatt & Taylor, LLP
>          Rodney Square
>          1000 North King Street
>          Wilmington, Delaware 19801
>          Attention: Sean M. Beach and Jacob D. Morton
>          E-mail: sbeach@ycst.com; jmorton@ycst.com
>
> (iii)    the United States Trustee:
>
>          The Office of the United States Trustee
>          for the District of Delaware
>          844 N. King Street
>          Wilmington, Delaware 19801
>          Attention: Juliet M. Sarkessian
>          E-mail: Juliet.M.Sarkessian@usdoj.gov
>
> (iv)     counsel to the Prepetition ABL Agent:
>
>          McGuireWoods LLP
>          1251 Avenue of the Americas, 20th Floor
>          New York, NY 10020
>          Attention: Brian Swett and Ha Young Chung
>          E-mail: bswett@mcguirewoods.com; hchung@mcguirewoods.com
>
> (v)      local counsel to the Prepetition ABL Agent:

Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
Attention: John Knight
E-mail: knight@rlf.com

(vi)     counsel to the Indenture Trustees:

Emmet, Marvin & Marvin, LLP
120 Broadway 32nd Floor
New York, NY 10271
Attention: Thomas A. Pitta and Elizabeth Taraila
E-mail: TPitta@EmmetMarvin.com;
             ETaraila@EmmetMarvin.com

(vii)    counsel to the Ad Hoc Noteholder Group:

Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019
Attention:  Jeffrey Pawlitz and Weston Eguchi
E-mail:  jpawlitz@willkie.com; weguchi@willkie.com

and

(vi)     local counsel to the Ad Hoc Noteholder Group:

Pachulski Stang Ziehl & Jones
919 North Market Street, 17th Floor
Wilmington, Delaware 19801
Attention: Laura Davis Jones
E-mail: ljones@pszjlaw.com

21.    **Surety**.  Notwithstanding anything in this Interim Order to the contrary, nothing in this Interim Order or the documents relating to this Interim Order shall prejudice or constitute a waiver of: (1) any of the rights and/or priorities of Westchester Fire Insurance Company and its affiliates (collectively, the "Surety") under any applicable agreements, documents or applicable law, including without limitation the Surety's common law, equitable subrogation and trust fund

rights, (2) the Surety's rights and/or priorities in any collateral for the obligations arising under the applicable surety agreement, whether in the form of cash, letter of credit, proceeds of letter of credit, bonded contract receivables or otherwise, and (3) the Debtors rights, if any, with respect to the Surety and any applicable agreements, documents and applicable law, and all such rights of the Debtors are hereby reserved, and the Surety's rights, remedies and defenses are reserved as well.

22.   **Retention of Jurisdiction**.  This Court has and will retain jurisdiction to enforce this Interim Order according to its terms and to adjudicate any and all matters arising from or related to the interpretation or implementation of this Interim Order.

**Dated: November 24th, 2020**
**Wilmington, Delaware**

**CHRISTOPHER S. SONTCHI**
**UNITED STATES BANKRUPTCY JUDGE**