**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| NORTHWEST HARDWOODS, INC., *et al.*,[1] | ) | Case No. 20-13005 (CSS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) | **Re: Docket Nos. 2, 14, 15, 16, 45, 56, 64, 68, 75, 105, 116, 119, 122, 132, 150, 153, 154, 155, 156 & 172** |

**ORDER (I) APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT
AND THE PREPETITION SOLICITATION PROCEDURES AND (II) CONFIRMING
THE JOINT PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION**

Northwest Hardwoods, Inc. and its affiliated debtors and debtors-in-possession (each, a

"Debtor," and collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter

11 Cases") having:

a.    commenced, on November 13, 2020, a prepetition solicitation of votes on the
*Joint Prepackaged Chapter 11 Plan of Reorganization of Northwest Hardwoods,
Inc., and Its Debtor Affiliates* [Docket No. 15] (as supplemented by the Plan
Supplement (defined below) and as may be amended, modified and further
supplemented from time to time, including the Second Amended Plan (as defined
below), the "Plan")[2] by distributing to those Holders of Claims and Interests
entitled to vote on the Plan (the "Voting Parties"):[3] the Plan; the *Disclosure
Statement for the Joint Prepackaged Chapter 11 Plan of Reorganization of
Northwest Hardwoods, Inc. and Its Debtor Affiliates* [Docket No. 16]
(the "Disclosure Statement"); and ballots to vote on the Plan (the "Ballots", and
together with the Plan and the Disclosure Statement, the "Solicitation Package");

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification
number, are:  Northwest Hardwoods, Inc. (5401), Hardwoods Intermediate Holdings II, Inc. (7760), and
Hardwoods Holdings, Inc. (3443).  The location of the Debtors' service address in these chapter 11 cases is:
1313 Broadway, Suite 300, Tacoma, WA 98402.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan.

[3]    *See* the *Affidavit of Service of Solicitation Materials* [Docket No. 45] (the "Solicitation Affidavit" and together
with the Combined Hearing Notice Affidavit and the Voting Affidavit (each as defined below) and the various
other affidavits and declarations of service relating to the matters set forth in this preamble, the "Affidavits").

b.    served the *Notice of (I) Commencement of Prepackaged Chapter 11 Cases, (II) Combined Hearing to Consider (A) Adequacy of Disclosure Statement and (B) Confirmation of Prepackaged Plan, (III) Assumption and Rejection of Executory Contracts and Unexpired Leases and (IV) Objection Deadlines and Summary of Prepackaged Plan* [Docket No. 68] (the "Combined Notice"), which provided a summary of the Plan, on all known Holders of Claims against and Interests in the Debtors, the U.S. Trustee, and certain other parties in interest on November 24, 2020;[4]

c.    filed, on January 4, 2021, the *Declaration of James F. Daloia of Prime Clerk LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Joint Prepackaged Chapter 11 Plan of Reorganization of Northwest Hardwoods, Inc., and Its Debtor Affiliates* [Docket No. 156] (the "Voting Affidavit"), which provides that, after the forty (40)-day solicitation period, the Debtors received the requisite acceptances on the Plan from Voting Parties;

d.    filed and served notices of the documents comprising the Plan Supplement on December 16, 2020 [Docket No. 116], December 21, 2020 [Docket No. 122], and January 5, 2021 [Docket No. 172] (as may be further amended or supplemented, the "Plan Supplement");

e.    filed on December 20, 2020, for the convenience of the Bankruptcy Court and all parties in interest, notice of a blacklined version of the *Amended Joint Prepackaged Chapter 11 Plan of Reorganization of Northwest Hardwoods, Inc., and Its Debtor Affiliates* against the initial version of the Plan [Docket No. 119];

f.    attached hereto as **Exhibit A**, the *Second Amended Joint Prepackaged Chapter 11 Plan of Reorganization of Northwest Hardwoods, Inc., and Its Debtor Affiliates* (the "Second Amended Plan"), having filed on December 28, 2020, for the convenience of the Bankruptcy Court and all parties in interest, notice of a blacklined version of the Second Amended Plan against the initial version of the Plan [Docket No. 132];

g.    filed, on January 4, 2021:

    i.    the *Memorandum of Law in Support of an Order (I) Approving the Adequacy of the Disclosure Statement and the Prepetition Solicitation Procedures and (II) Confirming the Joint Prepackaged Chapter 11 Plan of Reorganization* [Docket No. 150] (the "Confirmation Brief");

    ii.    the *Declaration of Nathan Jeppson in Support of an Order (I) Approving the Adequacy of the Disclosure Statement and the Prepetition Solicitation Procedures and (II) Confirming the Joint Prepackaged Chapter 11 Plan of Reorganization* [Docket No. 153] (the "Jeppson Confirmation Declaration");

---

[4]  *See* the *Affidavit of Service* [Docket No. 75] (the "Combined Hearing Notice Affidavit").

    iii.    the *Declaration of Aaron Kibbey in Support of an Order (I) Approving the Adequacy of the Disclosure Statement and the Prepetition Solicitation Procedures and (II) Confirming the Joint Prepackaged Chapter 11 Plan of Reorganization* [Docket No. 155] (the "Kibbey Declaration");

    iv.    the *Declaration of Stephen Darr in Support of an Order (I) Approving the Adequacy of the Disclosure Statement and the Prepetition Solicitation Procedures and (II) Confirming the Joint Prepackaged Chapter 11 Plan of Reorganization* [Docket No. 154] (the "Darr Declaration"); and

h.    operated their businesses during the Chapter 11 Cases as debtors in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code; and

i.    consolidated the Chapter 11 Cases for procedural purposes only in accordance with the *Order Authorizing Joint Administration of Chapter 11 Cases* [Docket No. 56], and, accordingly, the Plan represents a separate plan of reorganization for each Debtor; and

The Bankruptcy Court having:

a.    determined that: (i) it has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012; (ii) approval of the Disclosure Statement and confirmation of the Plan are core proceedings under 28 U.S.C. § 157(b)(2); (iii) it has jurisdiction to (a) approve the adequacy of information contained in the Disclosure Statement and the Solicitation Procedures (defined below) and to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed, and (b) enter a final order (this "Order"), consistent with Article III of the United States Constitution, with respect thereto; and (iv) venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409;

b.    entered on December 15, 2020, the *Final Order (I) Authorizing Use of Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Granting Liens and Superpriority Claims, (IV) Modifying the Automatic Stay and (V) Granting Related Relief* (the "Final Cash Collateral Order") [Docket No. 105];

c.    reviewed the solicitation procedures regarding votes to accept or reject the Plan (the "Solicitation Procedures"), which were conditionally approved by the *Order (I) Scheduling Combined Hearing on Adequacy of Disclosure Statement and Confirmation of Prepackaged Plan; (II) Fixing Deadline to Object to Disclosure Statement and Prepackaged Plan; (III) Conditionally Approving Prepetition Solicitation Procedures; (IV) Approving the Form and Manner of Notice of the Combined Hearing and Objection Deadline; (V) Approving Notice and Objection*

> *Procedures for the Assumption and Rejection of Executory Contracts and Unexpired Leases; (VI) (A) Providing that the United States Trustee Shall Not Be Required to Convene Section 341(a) Meeting of Creditors and (B) Extending the Time for Debtors to File Statements of Financial Affairs and Schedules of Assets and Liabilities and Rule 2015.3 Reports, and Permanently Waiving the Requirement to File Same Upon Confirmation of the Debtors' Prepackaged Plan; and (VII) Granting Related Relief*, entered on November 24, 2020 [Docket No. 64] (the "Scheduling Order"), and the related motion [Docket No. 14] (the "Scheduling Motion");

    d.    held the Combined Hearing on January 6, 2021, at 11:00 a.m. (prevailing Eastern Time), pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code;

    e.    reviewed the *Declaration of Nathan Jeppson in Support of Debtors' Chapter 11 Petitions and Requests for First Day Relief* [Docket No. 2] (the "First Day Declaration"), the Plan, the Plan Supplement, the Disclosure Statement, the Ballots, the Confirmation Brief, the Jeppson Confirmation Declaration, the Kibbey Declaration, the Affidavits, and all other pleadings, exhibits, statements, and documents filed by the Debtors in support of confirmation of the Plan;

    f.    heard the statements, arguments, and any objections made at the Combined Hearing; and

    g.    considered all other materials and evidence filed, presented or submitted regarding approval of the Disclosure Statement and the Solicitation Procedures and Confirmation of the Plan, including all objections, statements, and reservations of rights, if any, made with respect thereto;

**NOW, THEREFORE**, after due deliberation thereon and good cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.    The Plan satisfies all the requirements for Confirmation, including those set forth in section 1129 of the Bankruptcy Code;

B.    The Plan was solicited in good faith and in compliance with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and the Scheduling Order. The Exculpated Parties have at all times acted in good faith and in compliance with the Bankruptcy Code with regard to the solicitation of acceptances or rejections of the Plan, and their participation, to the extent applicable, in any offer, issuance, sale, solicitation, or purchase of a security, offered or sold

under the Plan and, therefore, are not liable at any time on account of such solicitation or participation for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan, and are entitled to the protections of section 1125(e) of the Bankruptcy Code;

C.    The Debtors have proposed the Plan (and all documents necessary to effectuate the Plan) in good faith and not by any means forbidden by law.  The Debtors' good faith is evidenced from the facts and record of the Chapter 11 Cases, the Disclosure Statement, the record of the Combined Hearing, and other proceedings held in the Chapter 11 Cases.  The terms of the Plan (including all documents necessary to effectuate the Plan) were negotiated at arms' length among the Debtors, the Consenting Stakeholders, and their respective advisors, and are in the best interests of the Debtors, the Reorganized Debtors, the Debtors' Estates and the Holders of Claims and Interests and other parties in interest.  The payment of fees and expenses in connection with the Plan (including, without limitation, under the Restructuring Support Agreement, the Interim Financing Order, the Final Financing Order, and all documents necessary to effectuate the Plan, including the Exit Facility Documents), is fair and reasonable and supported by reasonably equivalent value and fair consideration;

D.    The Debtor releases contained in Article VIII.D of the Plan constitute good faith compromises and settlements of all Claims and controversies of the Debtors, good and valid justifications have been demonstrated in support of the Debtor releases and such compromises and settlements, and the compromises and settlements of the Debtors' Claims and controversies are in the best interests of the Debtors, their Estates, the Reorganized Debtors and Holders of Claims and Interests, are fair, equitable and reasonable and satisfy the standards for approval under applicable provisions of the Bankruptcy Code and Bankruptcy Rules, and applicable case

law. Due and adequate notice of, and to the extent applicable, the opportunity to object to, the third-party releases contained in Article VIII.E of the Plan has been provided, and such third party releases are consensual and appropriate. The exculpation contained in Article VIII.F of the Plan is appropriate;

E.      Adequate and sufficient notice of the Plan, including the Second Amended Plan, and the Plan Supplement has been given, no other further notice, or re-solicitation of votes on the Plan, is required; and

F.      Notice of the Combined Hearing and the Executory Contracts and Unexpired Leases to be assumed or rejected under the Plan has been adequate and appropriate and all parties have had a full and fair opportunity to be heard on all issues raised by any objections to approval of the Disclosure Statement and the Solicitation Procedures and confirmation of the Plan, including the assumption or rejection of Executory Contracts or Unexpired Leases to be assumed or rejected in accordance with the Plan, and that all such objections and all other statements and reservations of rights not consensually resolved or withdrawn are overruled on the merits.

**NOW, THEREFORE**, after due deliberation thereon and good cause appearing therefor,

**IT IS HEREBY FURTHER FOUND AND DETERMINED AND ORDERED, ADJUDICATED, AND DECREED THAT:**

**I.      Findings of Fact and Conclusions of Law**

1.      The recitals, findings of fact and conclusions of law herein and in the record of the Combined Hearing are hereby incorporated by reference as though fully set forth herein and constitute findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.

## II.    Eligibility for Relief

2.    The Debtors were and are entities eligible for relief under section 109 of the Bankruptcy Code.

## III.    Notice

3.    As evidenced by the Affidavits, notice of each of the Disclosure Statement, the Plan, the Executory Contract Procedures (as defined in the Scheduling Motion), the Plan Supplement, and the Combined Hearing was appropriate and satisfactory in all respects. Furthermore, the service of the foregoing, including the Combined Notice, and the deadlines for (a) voting to accept or reject the Plan, (b) objecting to the Disclosure Statement and the Plan, and (c) objecting to assumption or rejection of Executory Contracts and Unexpired Leases afforded parties in interest timely, sufficient, appropriate and adequate notice of the Combined Hearing and the applicable deadlines, were appropriate and satisfactory, and are approved in all respects.

## IV.    Combined Hearing on the Disclosure Statement and Plan Confirmation

4.    It was appropriate to hold the Combined Hearing on the Debtors' request for approval of the Disclosure Statement and Confirmation of the Plan under sections 105(d)(2)(B)(vi) and 1125(g) of the Bankruptcy Code, and Bankruptcy Rule 3018(b).

## V.    Approval of the Disclosure Statement

5.    The Disclosure Statement is approved in all respects as containing "adequate information" (as such term is defined in section 1125(a) of the Bankruptcy Code and used in section 1126(b)(2) of the Bankruptcy Code) in accordance with section 1125 of the Bankruptcy Code.

6.    Any and all objections and reservations of rights to the Disclosure Statement that have not been withdrawn, waived, or resolved prior to the Combined Hearing are hereby overruled on the merits.

### VI.    Solicitation

7.      On November 13, 2020, prior to the Debtors filing the Chapter 11 Cases on November 23, 2020 (the "<u>Petition Date</u>"), the Debtors began transmitting and serving the Solicitation Package in compliance with sections 1125(g) and 1126(b) of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, all other applicable provisions of the Bankruptcy Code, and all other applicable rules, laws, and regulations applicable to such solicitation.

8.      The Voting Parties, who were served with the Combined Hearing Notice on November 24, 2020,[5] received adequate notice of the December 23, 2020 deadline at 5:00 p.m. prevailing Eastern Time to submit completed Ballots and how to properly complete and submit the Ballots.

9.      The instructions in the Solicitation Package, including in the Ballots, adequately informed the Voting Parties of how to properly complete and submit the Ballots.

10.      Modifications made or supplements to the Plan following the solicitation of votes thereon do not adversely change the treatment of the claim of any Voting Party and therefore satisfy the requirements of section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, and no further solicitation is required.

11.      Accordingly, the Solicitation Package, including the Ballots, adequately addressed the particular needs of the Chapter 11 Cases and is appropriate, and the Solicitation Package, including the Ballots, is hereby approved in all respects.  The Solicitation Procedures were appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, were conducted in good faith, complied with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, all other provisions of the Bankruptcy Code, Bankruptcy

---

[5]    *See* Combined Hearing Notice Affidavit.

Rules, and Local Rules, and all other applicable non-bankruptcy rules, laws, and regulations, and are approved.

12.     Any and all objections and reservations of rights to the Solicitation and the Solicitation Procedures that have not been withdrawn, waived, or resolved prior to the Combined Hearing are hereby overruled on the merits.

**VII.    Voting**

13.     As set forth in the Voting Affidavit, 98.82% of voting Holders of Class 4 Secured Notes Claims in number and 98.04% in dollar amount of such Class 4 Secured Notes Claims voted to accept the Plan; and 100% in amount of Class 9 Existing Common Equity Interests held by voting Holders voted to accept the Plan; and votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with sections 1126(c)-(d) and other applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Solicitation Procedures, and the Local Rules.

**VIII.   Confirmation of the Plan**

14.     The requirements for Confirmation set forth in sections 1129(a) and 1129(b), which include by reference sections 1122(a) and 1123(a)(1), of the Bankruptcy Code have been satisfied.  In addition, the Plan is dated and identifies the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).   The Second Amended Plan, attached hereto as **Exhibit A**, is confirmed pursuant to section 1129 of the Bankruptcy Code.

15.     Any and all objections and reservations of rights to the Plan that have not been withdrawn, waived, or resolved prior to the Combined Hearing are hereby overruled on the merits.

16.     Each term of the Plan, the Plan Supplement, and each exhibit thereto is incorporated herein by reference and, collectively, are an integral part of this Order.  The terms

27513371.7

of the Plan, the Plan Supplement, all exhibits thereto, and all other relevant and necessary documents are authorized and shall be valid, effective and binding as of the Effective Date, upon execution and delivery, as applicable, in accordance with their terms without the need for any further notice to or action, order or approval of the Bankruptcy Court.  This Order constitutes the Bankruptcy Court's approval, as of the Effective Date, of the compromises and settlements of all Claims, Interests, and controversies described in paragraph D of this Order or as otherwise set forth in the Plan, and such compromises and settlements shall be effective and binding on all parties in interest on the Effective Date. The failure to specifically include or refer to any particular article, section, or provision of the Plan, the Plan Supplement or any related document in this Order does not diminish or impair the effectiveness or enforceability of such article, section, or provision.

17.    To the fullest extent allowed by section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Reorganized Debtors), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests

relate to services performed by employees of the Debtors before the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not:  (1) a Proof of Claim based upon such debt or right is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan.  With respect to any Executory Contract or Unexpired Lease to be assumed by the Debtors or Reorganized Debtors, any non-monetary default or "event of default" by the Debtors or Affiliates on account of the filing of the Chapter 11 Cases or otherwise caused by any Debtor's insolvency or financial condition at any point prior to the Effective Date shall be deemed cured or shall otherwise no longer constitute a default or "event of default" as of the Effective Date.  The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring, and subject to Article III.C of the Plan (Special Provision Governing Unimpaired Claims).

18.      **The discharge, compromises, settlements, releases, exculpations, and injunctions set forth in Article VIII of the Plan are hereby approved in their entirety as if set forth herein, and will be effective immediately and, except as otherwise provided in the Plan, binding on all parties in interest on the Effective Date.  Entry of this Order constitutes the Bankruptcy Court's approval, of the discharge, compromises, settlements, releases, exculpations, and injunctions described in the Plan by the Debtors, Reorganized Debtors, and the Debtors' Estates, which includes by reference each of the related**

provisions contained in the Plan, and further constitutes the Bankruptcy Court's finding of the matters described in paragraph D of this Order.

19.    **Entry of this Order shall constitute the Bankruptcy Court's finding that each release described in the Plan is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) in the best interest of the Debtors, Reorganized Debtors, and the Debtors' Estates; (c) fair, equitable, and reasonable; (d) given and made after due notice and opportunity for hearing; and (e) subject to the terms and provisions of the Plan and this Order, a bar to the Debtors, Reorganized Debtors, and the Debtors' Estates asserting any Cause of Action, or liability related thereto, of any kind whatsoever, against any of the Released Parties or their assets and property.**

20.    **<u>Releases by the Debtors</u>.    Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released by the Debtors, the Reorganized Debtors, and their Estates from any and all Causes of Action, including any derivative claims asserted on behalf of the Debtors, that the Debtors, the Reorganized Debtors, or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or would have been legally entitled to assert on behalf of the Holder of any Claim or Interest, or that any Holder of any Claim or Interest could have asserted on behalf of the Debtors, based on or relating to, or in any manner arising from, in whole or in part, on or before the Effective Date: (a) the Debtors, the Debtors' restructuring efforts, intercompany transactions, the formulation, preparation, dissemination, negotiation, or filing of the Restructuring Support Agreement; (b) any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity**

regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Entity on the Plan or this Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, or the Plan; (c) the Chapter 11 Cases, the Disclosure Statement, the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement; or (d) any other act or omission, transaction, agreement, event, or other occurrence relating to the Debtors taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any (x) post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, or (y) claims related to any act or omission that is determined in a final order to have constituted actual fraud or willful misconduct, or, with respect to the Exculpated Parties, solely to the extent of the exculpation contained in Article VIII.F of the Plan, gross negligence.

21.    **Releases by Holders of Claims and Interests of the Debtors**.  As of the Effective Date, each Releasing Party on behalf of itself and any Entity that could assert on behalf of such Releasing Party is deemed to have released each Released Party and deemed to have released and discharged each Debtor and Reorganized Debtor, and each of the Debtors' and Reorganized Debtors' predecessors, successors and affiliates, from any and all Causes of Action, including any derivative claims asserted on behalf of the Debtors, that

such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, on or before the Effective Date: (a) the Debtors, the Debtors' restructuring efforts, intercompany transactions, the formulation, preparation, dissemination, negotiation, or filing of the Restructuring Support Agreement; (b) any transaction that is part of the Restructuring Transactions, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Entity on the Plan or the order confirming the Plan in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, or the Plan; (c) the Chapter 11 Cases, the Disclosure Statement, the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation of the Plan, the pursuit of Consummation of the Plan, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement; or (d) any other act or omission, transaction, agreement, event, or other occurrence relating to the Debtors taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any (w) post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, or (x) claims related to any act or omission that is determined in a final order to have constituted actual fraud or willful misconduct, or, with respect to the Exculpated Parties, solely to the extent of the exculpation contained in Article VIII.F of the

Plan, gross negligence.  Notwithstanding anything herein to the contrary, nothing herein shall be intended to be a release of (y) the Sponsor Equityholder's (i) Secured Notes Claims, or (ii) Claims under the MSA, or (z) Claims arising under the Restructuring Support Agreement, and such Claims in each case are expressly reserved.

22.    **Exculpation**.  Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is hereby exculpated from any Cause of Action for any claim related to any act or omission through the Effective Date in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or termination of the Restructuring Support Agreement and related prepetition transactions, the Disclosure Statement, the Plan, or any Restructuring Transaction, contract, instrument, release or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or this Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, except for claims related to any act or omission that constitutes actual fraud, willful misconduct, or gross negligence.

23.    **Injunction**.  All Entities that have held, hold, or may hold Causes of Action, claims or interests that have been released pursuant to the Plan, or that have been discharged pursuant to the Plan, or that are subject to exculpation pursuant to the Plan,

**are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, or the Released Parties:  (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Causes of Action, claims or interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Causes of Action, claims or interests; (c) creating, perfecting, or enforcing any lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Causes of Action, claims or interests; (d) asserting any right of setoff (except to the extent timely asserted in accordance with applicable law), or subrogation of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Causes of Action, claims or interests; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Causes of Action, claims or interests released or settled pursuant to the Plan. Notwithstanding anything to the contrary in this provision or elsewhere in the Plan, the Plan does not discharge, release or enjoin the assertion of defenses by Holders of Claims, including but not limited to the defense of setoff or recoupment, in response to any Cause of Action asserted by the Debtors, Reorganized Debtors or other Released Party.**

24.    <u>Unimpaired Claims</u>.  The Debtors, the Reorganized Debtors and any other Entity shall retain all defenses, counterclaims, rights to setoff and rights to recoupment, if any, as to Unimpaired Claims other than the CITIC Claim and the MSA Claim.  Holders of Unimpaired

Claims shall not be required to file a Proof of Claim with the Bankruptcy Court except for damages related to the rejection of executory contracts and unexpired releases ("Rejection Damages Claims"), shall not be subject to any claims resolution process in Bankruptcy Court in connection with their Claims, and shall retain all their rights under applicable non-bankruptcy Law to pursue their Unimpaired Claims in any forum with jurisdiction over the parties. Notwithstanding anything to the contrary in the Plan, Plan Supplement, or this Order, each Holder of an Unimpaired Claim in the Plan, including Classes 1, 2, 3 and 5 (including cure claims related to the assumption of Executory Contracts and Unexpired Leases, and claims for damages related to the rejection of the same), or which is an Administrative Claim or Priority Tax Claim shall be entitled to enforce its rights in respect of such Unimpaired Claim against the Debtors or the Reorganized Debtors, as applicable, and (a) the provisions of sections VIII.B (Discharge of Claims and Termination of Interests), VIII.E (Releases by Holders of Claims and Interests of the Debtors) and VIII.G (Injunction) of the Plan, and paragraphs 17, 21, and 23 of this Order, shall not apply or take effect with respect to such Claim, (b) such Claim shall not be deemed settled, satisfied, resolved, released, discharged, barred or enjoined, (c) the property of each of the Debtors' Estates that vests in the applicable Reorganized Debtor pursuant to the Plan shall not be free and clear of such Claims, and (d) any Liens of Holders of Unimpaired Claims shall not be deemed released, until such Unimpaired Claim has been either (x) paid in full (i) on terms agreed to between the Holder of such Unimpaired Claim and the Debtors or the Reorganized Debtors, as applicable, or (ii) in accordance with the terms and conditions of the applicable documentation or laws giving rise to such Unimpaired Claim or (y) otherwise satisfied or disposed of as determined by a court of competent jurisdiction. If the Debtors or the Reorganized Debtors dispute any Unimpaired Claim, such dispute shall be determined, resolved

or adjudicated pursuant to applicable non-bankruptcy law, in the manner as if the Chapter 11 Cases had not been commenced, except with respect to Rejection Damages Claims, which shall be determined, resolved or adjudicated as set forth in Article VII of the Plan.

25.     Notwithstanding any provision of the Plan or this Order, unless and until paid in full, that certain Promissory Note, between Northwest Hardwoods, Inc. and Keystone Transportation Solutions, LLC (together with its successor, "KTS"), dated as of May 3, 2019 (as amended, modified, or supplemented from time to time, the "KTS Note"), and any and all of KTS's claims, rights and remedies under, based upon, or related to, the KTS Note, shall be rendered unimpaired, preserved and passed through the Chapter 11 Cases; and the Debtors' rights and defenses under and in connection with the KTS Note are preserved.  Upon payment in full of the KTS Note, the Debtors' obligations under the KTS Note, and any and all claims, rights, and remedies of KTS under the KTS Note, shall be deemed fully and finally satisfied, settled, released, and discharged.

26.     The Debtors shall cause to be served a notice of the entry of this Order and occurrence of the Effective Date, substantially in form attached hereto as **Exhibit B** (the "Confirmation Notice"), upon (a) all parties listed in the creditor matrix maintained by the Debtors' claims and noticing agent, Prime Clerk LLC, and (b) such additional persons and entities as deemed appropriate by the Debtors, no later than five (5) business days after the Effective Date, or as soon as reasonably practicable thereafter.

## IX.    Implementation of the Plan

27.     Upon effectiveness of this Order, the Debtors and the Reorganized Debtors, as applicable, shall be authorized to take any and all actions as may be necessary or appropriate to effectuate, implement, consummate and further evidence the terms and conditions of the Plan, including the Restructuring Transactions and the filing of any appropriate certificates or articles

27513371.7

of incorporation or formation, reincorporation, merger, conversion, dissolution, cancellation or other organizational documents, as applicable, pursuant to applicable state law, without the need for any further notice to or action, order or approval of the Bankruptcy Court.  Without limiting the generality of the foregoing provisions of this paragraph 27, the Debtors are authorized to enter into with the ABL Agent and the lenders party to the ABL Credit Agreement a payoff letter (containing ordinary and customary terms and conditions and otherwise in accordance with Section 19 of the Final Cash Collateral Order) in connection with the payment under the Plan of the ABL Claims.

28.    The Reorganized Debtors shall prepare and issue all necessary U.S. federal, state or local tax forms, and make any payments in respect of fees and costs related thereto, for any Debtor or Reorganized Debtor, or any of their Affiliates, as applicable, for any taxable year.

29.    Reorganized HHI shall prepare, execute, and file IRS Form 8832, electing to be classified as an association taxable as a corporation for U.S. federal income purposes, effective as of the date of the reincorporation of Reorganized HHI as a Delaware limited liability company.

**X.    Vesting of Assets in the Reorganized Debtors**

30.    Except as otherwise provided in the Plan or in this Order, on or after the Effective Date, all property and assets of the Debtors' Estates (including Causes of Action, but only to the extent such Causes of Action have not been waived or released pursuant to the terms of the Plan, pursuant to an order of the Bankruptcy Court, or otherwise) and any property and assets acquired by the Debtors pursuant to the Plan, will vest in the Reorganized Debtors, free and clear of all Liens or Claims.  Except as may be otherwise provided in the Plan, on and after the Effective Date, the Reorganized Debtors may operate their businesses and may use, acquire or dispose of property and compromise or settle any Claims without supervision or approval by the

Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan, this Order, the New Organizational Documents, or the Reorganized HHI LLC Agreement.

## XI.    Issuance and Distribution of the New Common Stock

31.    To the maximum extent provided by section 1145 of the Bankruptcy Code and applicable non-bankruptcy law, the offering, issuance, and distribution of the New Common Stock and any other applicable Securities pursuant to the terms of the Plan comply with section 1145 of the Bankruptcy Code and shall be exempt from, among other things, the registration requirements of Section 5 of the Securities Act and any other applicable U.S. or state law.

## XII.    Management Incentive Plan

32.    For the avoidance of doubt, entry of this Order by the Bankruptcy Court shall not be construed to be the Bankruptcy Court's approval of any Management Incentive Plan.

## XIII.    Restructuring Expenses

33.    The Restructuring Expenses incurred, or estimated to be incurred, up to and including the Effective Date shall be paid in full in Cash on the Effective Date (to the extent not previously paid during the course of the Chapter 11 Cases) without the requirement to file a fee application with the Bankruptcy Court and without any requirement for Bankruptcy Court review or approval; *provided*, that, with respect to any such Restructuring Expenses of legal counsel to the Ad Hoc Noteholder Group or the Sponsor Equityholder (subject to the Sponsor Fee Cap), the Debtors and Reorganized Debtors (as applicable) shall have the right to review (subject to applicable attorney-client privilege) and object to any such Restructuring Expenses on reasonableness grounds.  All Restructuring Expenses to be paid on the Effective Date shall be estimated prior to and as of the Effective Date and such estimates shall be delivered to the Debtors at least five (5) Business Days before the anticipated Effective Date; *provided, further*,

that such estimate shall not be considered an admission or limitation with respect to such Restructuring Expenses.  On the Effective Date, final invoices for all Restructuring Expenses incurred prior to and as of the Effective Date shall be submitted to the Debtors.

## XIV.    Exit Facility Documents

34.    On the Effective Date, the Reorganized Debtors are authorized, without further approval of the Bankruptcy Court, to enter into agreements substantially in the form of the Exit ABL Credit Documents and the Exit Take Back Debt Documents and to perform their obligations thereunder, including the payment or reimbursement of certain fees, expenses, losses, damages or indemnities.  On the Effective Date, the Exit Facility Documents shall constitute legal, valid, binding, and authorized joint and several obligations of the Reorganized Debtors, enforceable in accordance with their terms, and such obligations shall not be enjoined or subject to discharge, impairment, release, avoidance, recharacterization, or subordination (including equitable subordination) under applicable law, the Plan, or this Order.  The terms of the Exit Facility have been negotiated in good faith and on an arm's-length basis, without intent to hinder, delay or defraud any creditor of the Debtors and each party thereto may rely upon the provisions of this Order in closing their respective Exit Facility.  The terms and conditions of the Exit Facilities are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, are supported by reasonably equivalent value and fair consideration and are in the best interests of the Debtors' Estates and their creditors.  The financial accommodations to be extended pursuant to the Exit Facility Documents are being extended in good faith, for legitimate business purposes, and are reasonable.

35.    This Order shall be deemed approval of the Exit Facilities (including the transactions contemplated thereby, and all actions to be taken, undertaking to be made, and obligations to be incurred and fees paid by the Debtors or the Reorganized Debtors, as

applicable, in connection therewith), to the extent not approved by the Court previously, and the Reorganized Debtors are authorized to execute and deliver those documents necessary or appropriate, or approval of any Person, subject to such modifications as the Reorganized Debtors and the other parties thereto may deem necessary to consummate the Exit Facility.

36.    On the Effective Date, as applicable, all liens and security interests granted pursuant to, or in connection with the Exit ABL Credit Documents shall be deemed approved by the Court and granted by the Reorganized Debtors pursuant to the Exit ABL Credit Documents, and all liens and security interests granted pursuant to, or in connection with the Exit ABL Credit Documents (including any liens and security interests granted on the Reorganized Debtors' assets) shall (y) be valid, binding, perfected, enforceable liens and security interests in thecollateral granted thereunder (including the Collateral as defined in the Exit ABL Credit Documents), subject to a security interest granted by the Reorganized Debtors pursuant to the Exit Take Back Debt Documents, with the priorities established in respect thereof under applicable non-bankruptcy law and the Exit Intercreditor Agreement, and (z) not be enjoined or subject to discharge, impairment, release, avoidance, recharacterization, or subordination under any applicable law, the Plan, or this Order.

37.    On the Effective Date, as applicable, all liens and security interests granted pursuant to, or in connection with the Exit Take Back Debt Documents shall be deemed approved by the Court and granted by the Reorganized Debtors pursuant to the Exit Take Back Debt Documents, and all liens and security interests granted pursuant to, or in connection with the Exit Take Back Debt Documents (including any liens and security interests granted on the Reorganized Debtors' assets) shall (y) be valid, binding, perfected, enforceable liens and security interests in the collateral granted thereunder (including the Collateral as defined in the Exit Take

Back Debt Documents), subject to a security interest granted by the Reorganized Debtors pursuant to the Exit ABL Credit Documents, with the priorities established in respect thereof under applicable non-bankruptcy law and the Exit Intercreditor Agreement, and (z) not be enjoined or subject to discharge, impairment, release, avoidance, recharacterization, or subordination under any applicable law, the Plan, or this Order.

38.    For the avoidance of doubt, on the Effective Date, all Holders of Secured Notes Claims shall be deemed party to the Exit Take Back Debt Agreement and the applicable other Exit Take Back Debt Documents, in each case, without the need for execution by any party thereto other than the Reorganized Debtors.

39.    The Exit ABL Agent and the Exit Take Back Agent, as applicable, are authorized to file with the appropriate authorities: financing statements, amendments thereto, or assignments thereof and other documents, including mortgages or amendments or assignments thereof in order to evidence the liens, pledges, mortgages, and security interests granted in connection with the Exit ABL Credit Documents and the Exit Take Back Debt Documents, as applicable.  The guarantees, mortgages, pledges, liens, and other security interests granted in connection with the Exit Facility Documents are granted in good faith as an inducement to the lenders under the Exit Facilities to extend credit thereunder, shall be deemed not to constitute a fraudulent conveyance or fraudulent transfer, shall not otherwise be subject to avoidance, and the priorities of such liens, mortgages, pledges, and security interests shall be as set forth in the Exit Facility Documents (including the Exit Intercreditor Agreement).

40.    Notwithstanding anything to the contrary in the Plan or this Order, the Bankruptcy Court's retention of jurisdiction shall not govern the enforcement of the Exit Facility

Documents or any rights or remedies related thereto, or any other matters arising thereunder, other than the effectiveness of the Reorganized Debtors' entry into the Exit Facility Documents.

**XV.     Treatment of Executory Contracts and Unexpired Leases**

41.     The Executory Contract Procedures are approved in all respects.

42.     Except as otherwise provided in the Plan, as of the Effective Date, each Debtor shall be deemed to have assumed each Executory Contract and Unexpired Lease to which it is a party in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, without the need for any further notice to or action, order or approval of the Bankruptcy Court, unless such Executory Contract or Unexpired Lease: (a) was assumed or rejected previously by such Debtor; (b) expired or terminated pursuant to its own terms prior to the Effective Date; (c) is the subject of a motion to reject filed on or before the Effective Date; or (d) identified on the Rejected Executory Contract and Unexpired Lease List as an Executory Contract or Unexpired Lease designated for rejection.  The assumption of any Executory Contracts and Unexpired Leases may include the assignment of certain of such contracts to one or more Reorganized Debtors.  This Order constitutes an order of the Bankruptcy Court approving the above-described assumptions.

43.     This Order shall constitute an order approving the rejection of Executory Contracts and Unexpired Leases identified on the Rejected Executory Contract and Unexpired Lease List and assumption or, as applicable, assumption and assignment, of all other Executory Contracts and Unexpired Leases, subject to the exceptions noted above, all pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Notwithstanding anything to the contrary in the Plan, the Debtors or Reorganized Debtors, as applicable, reserve the right to alter, amend, modify, or supplement the Rejected Executory Contract and Unexpired Lease List as set forth in the Plan and the Scheduling Order until no later than seven (7) days prior to the Effective Date.

27513371.7

44.     Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or this Order, if any, must be filed with the Bankruptcy Court within 30 days after the later of (a) the date of service of notice of entry of an order of the Bankruptcy Court (including this Order) approving such rejection, (b) the effective date of such rejection, or (c) service of notice of the Effective Date.  All Allowed Claims arising from the rejection of an Executory Contract or Unexpired Lease shall be classified as General Unsecured Claims and shall be treated in accordance with Article III.B.5 of the Plan.

45.     For the avoidance of doubt and notwithstanding anything herein or in the Plan to the contrary, (x) no Proof of Claim shall be required to be filed to evidence Claims arising from the rejection of the MSA or the CITIC Agreement, (y) each of the MSA Claim and the CITIC Claim shall be Allowed General Unsecured Claims, and (z) the Allowed General Unsecured Claims in respect of the MSA Claim and the CITIC Claim shall be paid in Cash on the Effective Date.

46.     In the event of a dispute regarding (a) the amount of any Cure Claim, (b) the ability of the Reorganized Debtors to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (c) any other matter pertaining to assumption or the payment of Cure Claims required by section 365(b)(1) of the Bankruptcy Code, payment of a Cure Claim, if any, shall occur as soon as reasonably practicable after entry of a Final Order or Final Orders of the Bankruptcy Court or other court of competent jurisdiction resolving such dispute and approving such assumption. The Debtors (with the consent of the Required Consenting Noteholders), or Reorganized Debtors, as applicable, reserve the right at any time prior to the

Effective Date to move to reject any Executory Contract or Unexpired Lease based upon the existence of any unresolved dispute or upon a resolution of such dispute that is unfavorable to the Debtors or Reorganized Debtors.

47.     Any and all objections or reservations of rights in connection with the assumption or assignment of an Executory Contract or Unexpired Lease under the Plan or the proposed cure in the ordinary course by the Reorganized Debtors, if any, are overruled on their merits.  Any counterparty to an Executory Contract or Unexpired Lease that did not timely object to the proposed assumption of any Executory Contract or Unexpired Lease shall be deemed to have consented to such assumption.

**XVI.    Insurance Policies.**

48.     Notwithstanding anything herein or in the Plan to the contrary, all of the Debtors' insurance policies and any agreements, documents or instruments relating thereto, are treated as and deemed to be Executory Contracts under the Plan.  On the Effective Date, pursuant to section 365(a) of the Bankruptcy Code, the Reorganized Debtors shall be deemed to have assumed all insurance policies and any agreements, documents and instruments related thereto, including all D&O Liability Insurance Policies.  Entry of this Order constitutes the Bankruptcy Court's approval of the Reorganized Debtors' assumption of all such insurance policies, including the D&O Liability Insurance Policies.  Notwithstanding anything to the contrary contained in the Plan, this Order shall not discharge, impair or otherwise modify any indemnity obligations presumed or otherwise referenced in the foregoing insurance policies, including the D&O Liability Insurance Policies, and each such indemnity obligation shall be deemed and treated as an Executory Contract that has been assumed by the Reorganized Debtors under the Plan as to which no Proof of Claim need be filed, and shall survive the Effective Date.

## XVII.  Indemnification

49.    All indemnification obligations in place as of the Effective Date (whether in the bylaws, certificates of incorporation or formation, limited liability company agreements, other organizational or formation documents, board resolutions, indemnification agreements, employment contracts, service contracts, or otherwise) for the current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors, as applicable, shall be assumed and remain in full force and effect after the Effective Date, and shall not be modified, reduced, discharged, impaired, or otherwise affected in any way, including by this Order, and shall survive unimpaired and unaffected, irrespective of when such obligation arose by the Reorganized Debtors, as applicable.

## XVIII. Employment Obligations and Programs

50.    Except as otherwise provided in the Plan, on and after the Effective Date, subject to any Final Order and, without limiting any authority provided to the New Board under the Debtors' respective formation, organizational and constituent documents, the Reorganized Debtors shall adopt, assume, and/or honor in the ordinary course of business any written contracts, agreements, policies, programs, and plans, in accordance with their respective terms, for, among other things, compensation, bonuses, reimbursement, indemnity, health care benefits, disability benefits, deferred compensation benefits, travel benefits, vacation and sick leave benefits, savings, severance benefits, retirement benefits, welfare benefits, relocation programs, life insurance and accidental death and dismemberment insurance, including written contracts, agreements, policies, programs, and plans, in accordance with their respective terms, for bonuses and other incentives or compensation for the Debtors' current and former employees, directors, officers, and managers, including executive compensation programs and all existing

compensation arrangements for the employees of the Debtors, in each case on the current terms of such arrangements as may be modified from time to time in the ordinary course of business.

## XIX.    Workers' Compensation Benefits

51.    Except as otherwise provided in the Plan, as of the Effective Date, the Debtors and the Reorganized Debtors shall continue to honor their obligations under: (a) all applicable workers' compensation laws in states in which the Reorganized Debtors operate and (b) the Debtors' written contracts, agreements, agreements of indemnity, self-insurer workers' compensation bonds and any other policies, programs, and plans regarding or relating to workers' compensation and workers' compensation insurance; all such contracts and agreements are treated as Executory Contracts under the Plan and on the Effective Date shall be assumed by the Reorganized Debtors pursuant to the provisions of sections 365 and 1123 of the Bankruptcy Code.  Notwithstanding anything to the contrary contained in the Plan, this Order shall not impair or otherwise modify any rights of the Reorganized Debtors under any such contracts, agreements, policies, programs or plans regarding or relating to workers' compensation or workers' compensation insurance.

## XX.    No Action Required

52.    Under the provisions of the Delaware General Corporation Law, including section 303 thereof, and the comparable provisions of the Delaware Limited Liability Company Act or any analogous provisions of the application business organizations law or code of each other state in which the Reorganized Debtors are incorporated or organized, and section 1142(b) of the Bankruptcy Code, no action of the respective directors, equity holders, managers or members of each of the Debtors or Reorganized Debtors is required to authorize the Debtors or the Reorganized Debtors, as applicable, to enter into, execute, deliver, file, adopt, amend, restate, consummate or effectuate, as the case may be, the Plan, the Restructuring, and any contract,

27513371.7

assignment, certificate, certificate of dissolution, instrument, or other document to be executed, delivered, adopted or amended in connection with the implementation of the Plan.

## XXI.   Governmental Approvals Not Required

53.     This Order constitutes all approvals and consents required, if any, by the laws, rules, or regulations of any state or any other governmental authority with respect to the dissemination, implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in or contemplated by the Plan, the Disclosure Statement, and any documents, instruments, or agreements, and any amendments or modifications thereto.

## XXII.  Taxing Authorities

54.     The (a) La Porte Independent School District, (b) Clear Lake City Water Authority, and (c) Harris County (collectively, the "Certain Texas Tax Authorities") assert that they are Holders of prepetition Claims for certain 2020 property taxes owed by the Debtors (the "Certain Texas Tax Authorities' Claims").  The Debtors or Reorganized Debtors, as applicable, shall pay the Allowed Certain Texas Tax Authorities' Claims on the later of (x) the Effective Date, and (y) January 31, 2021 (subject to any applicable extensions, grace periods, or similar rights under Texas law).  To the extent such Claims are not so timely paid, the Certain Texas Tax Authorities' Claims shall include interest on any Allowed Certain Texas Tax Authorities' Claims from the Petition Date through payment in full at the state statutory rate pursuant to 11 U.S.C. §§ 506(b), 511, and 1129, solely to the extent the Texas Tax Code provides for payment of interest on such Claims and to the extent required by the Bankruptcy Code.  The Certain Texas Tax Authorities shall retain the liens that secure all prepetition amounts ultimately owed on the Certain Texas Tax Authorities' Allowed Claims as well as the state law priority of those liens until the Certain Texas Tax Authorities' Allowed Claims are paid in full.  In the event that

collateral that secures the Claim of one or more of the Certain Texas Tax Authorities is returned to a creditor holding a Claim that is junior to the Certain Texas Tax Authorities, the applicable Debtor or Reorganized Debtor shall first pay all property taxes owing to the Certain Texas Tax Authorities that are secured by such collateral.  Any property tax liabilities owing to the Certain Texas Tax Authorities that are incurred by the Reorganized Debtors after the Petition Date shall be paid by the applicable Reorganized Debtor in the ordinary course of business. Pursuant to 11 U.S.C § 503(b)(1)(D), the Certain Texas Tax Authorities shall not be required to file any proof of claim or other request for payment of a postpetition property tax claim to receive payment for any liability described in section 503(b)(1)(B) of the Bankruptcy Code.  The Debtors' and the Reorganized Debtors' (as applicable) rights and defenses under applicable law and the Bankruptcy Code with respect to the foregoing, including their right to dispute or object to the Certain Texas Taxing Authorities' Claims and liens, are fully preserved.

## XXIII. Retention of Rights of Governmental Units

55.    Notwithstanding any provision in the Plan, the Plan Supplement, Confirmation Order, the Definitive Documents, or any documents related to the foregoing (collectively, "Plan Documents"): Nothing discharges or releases the Debtors, the Reorganized Debtors, or any non-debtor from any right, claim, liability, defense or Cause of Action of the United States or any State, or impairs the ability of the United States or any State to pursue any right, claim, liability, defense, or Cause of Action against any Debtor, Reorganized Debtor or non-debtor. Contracts, purchase orders, agreements, leases, covenants, guaranties, indemnifications, operating rights agreements or other interests of or with the United States or any State shall be, subject to any applicable legal or equitable rights or defenses of the Debtors or Reorganized Debtors under applicable non-bankruptcy law, paid, treated, determined and administered in the ordinary course of business as if the Debtors' bankruptcy cases were never filed and the Debtors and

Reorganized Debtors shall comply with all applicable non-bankruptcy law.  All rights, claims, liabilities, defenses or Causes of Action, of or to the United States or any State shall survive the Chapter 11 Cases as if they had not been commenced and be determined in the ordinary course of business, including in the manner and by the administrative or judicial tribunals in which such rights, claims, liabilities, defenses or Causes of Action would have been resolved or adjudicated if the Chapter 11 Cases had not been commenced; *provided*, that nothing in the Plan Documents shall alter any legal or equitable rights or defenses of the Debtors or the Reorganized Debtors under non-bankruptcy law with respect to any such claim, liability, or cause of action.  Without limiting the foregoing, for the avoidance of doubt, nothing shall: (a) require the United States or any State to file any proofs of claim or administrative expense claims in the Chapter 11 Cases for any right, claim, liability, defense, or Cause of Action; (b) affect or impair the exercise of the United States' or any State's police and regulatory powers against the Debtors, the Reorganized Debtors or any non-debtor; (c) be interpreted to set cure amounts or to require the United States or any State to novate or otherwise consent to the transfer of any federal or state contracts, purchase orders, agreements, leases, covenants, guaranties, indemnifications, operating rights agreements or other interests; (d) affect or impair the United States' or any State's rights and defenses of setoff and recoupment, or ability to assert setoff or recoupment against the Debtors or the Reorganized Debtors and such rights and defenses are expressly preserved; (e) constitute an approval or consent by the United States or any State without compliance with all applicable legal requirements and approvals under non-bankruptcy law; or (f) relieve any party from compliance with all licenses and permits issued by governmental units in accordance with non-bankruptcy law.

56.     Nothing herein or in the Plan should be construed to impair the right of the U.S. Trustee to be heard on a motion for substantial contribution.

## XXIV. Westchester Fire Insurance Company

57.     Notwithstanding any other provisions of the Plan Documents, on the Effective Date, all rights, liens and interests of Westchester Fire Insurance Company and/or its past, present or future affiliated sureties (individually and collectively hereafter referred to as the "Surety") that existed prior to the Effective Date related to: (i) bonds of any kind and related instruments, such as rider(s) thereto, issued and/or executed by the Surety in the ordinary course of business (each a "Bond" and collectively "Bonds"), (ii) payment and indemnity agreements between or involving any of the Debtors and the Surety (including the Agreement of Indemnity executed on or about December 30, 2014, by Hardwoods Holdings, Inc., Hardwoods Acquisition, Inc., and Northwest Hardwoods, Inc., and the Amendment to Agreement of Indemnity executed on or about March 15, 2015, by Potomac Supply Holdings, Inc., Potomac Supply, LLC, ITL, LLC, Northwest Hardwoods, Inc., Hardwoods Holdings, Inc., and Hardwoods Acquisition, Inc.), setting forth the Surety's rights against the Debtors, and the Debtors' obligations to pay and indemnify the Surety from any loss, cost, or expense that the Surety may incur, in each case, on account of the issuance of any bonds on behalf of the Debtors, (iii) ordinary course payments to the Surety for any of the Bonds, (iv) any funds the Surety is holding and/or being held for it presently or in the future, whether in trust, as security, or otherwise, including any proceeds due or to become due to any of the Debtors or their non-debtor affiliates in relation to contracts or obligations for which the Surety has issued the Bonds, (v) the Irrevocable Standby Letter of Credit Number: 68109042, any and all amendments thereto and any proceeds thereof, and/or (vi) current or future setoff, recoupment, lien, trust fund, subrogation or common law rights and/or claims of the Surety or any party to whose rights the

Surety has may be subrogated ((i) through (vi), above, collectively, the "<u>Bond Program</u>," and certain of the Debtors' obligations arising therefrom, the "<u>Bond Obligations</u>") are not discharged, impaired, released or precluded by the Plan Documents and shall be reaffirmed and ratified by the applicable Reorganized Debtors and continue in full force and effect according to their terms and applicable nonbankruptcy law and; notwithstanding the foregoing, the Surety shall be entitled to cancel and/or terminate and/or not renew, at any time, any Bond, in accordance with the applicable Bond's terms and/or conditions, solely to the extent the Surety is entitled to do so under the terms and conditions of the applicable Bond. Nothing in the Plan Documents shall affect in any way the Surety's rights against any non-debtor, or any non-debtor's rights against the Surety under the Bond Program or with regard to the Bond Obligations.  Notwithstanding anything to the contrary in the Plan Documents, the Debtors and the Surety reserve all rights and defenses with respect to any right, claim, interest, obligation and all documents related to the Bond Obligations. For the avoidance of any doubt, and only to the extent applicable, all agreements related to the Bond Obligations are assumed by the Debtors and the Reorganized Debtors pursuant to section 365 of the Bankruptcy Code upon the Effective Date.

**XXV.  Non-Severability of Plan Provisions**

58.    This Order constitutes a judicial determination that each term and provision of the Plan is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan; and (c) non-severable and mutually dependent

59.    The failure to specifically include or refer to any particular article, section, or provision of the Plan, the Plan Supplement, any exhibit, or any related document in this Order does not diminish or impair the effectiveness of enforceability of such article, section, or provision.

### XXVI. Immediate Binding Effect; Waiver of Stay

60.     Subject to Article IX.A of the Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062, or otherwise, upon the occurrence of the Effective Date, this Order is intended to be a Final Order and the period within which an appeal must be filed commences upon entry hereof, and the terms of this Order, the Plan, and the Plan Documents (including any such Plan Documents included in the Plan Supplement) shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all Holders of Claims or Interests (irrespective of whether Holders of such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.  This Order shall take effect immediately and shall not be stayed pursuant to Bankruptcy Rules 3020(e), 6004(g), 6006(d), or 7062.

### XXVII.          Retention of Jurisdiction

61.     Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding the entry of this Order or the occurrence of the Effective Date, the Bankruptcy Court, except as otherwise provided in the Plan or herein, shall retain jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law.

### XXVIII.          Post-Confirmation Pre-Effective Date Modifications

62.     Subject to the limitations set forth in the Plan, and subject to the terms of the Restructuring Support Agreement, after entry of this Order, the Debtors may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with Bankruptcy Code section 1127(b).  Notwithstanding the foregoing, the Debtors are authorized to make appropriate technical adjustments, remedy any defect or omission, or reconcile any inconsistencies in the

Plan, the documents included in the Plan Supplement, any and all exhibits to the Plan, the Plan Supplement, and this Order prior to the Effective Date without further order of the Bankruptcy Court, provided that no such technical adjustment, remedy of defect or omission, or reconciliation of inconsistencies has a materially adverse impact on any Holder of a Claim or Interest in these cases.

## XXIX. Applicable Non-Bankruptcy Law

63.     Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Order, the Plan, the Restructuring Transactions, and any related documents, or any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.  To the maximum extent permitted by law, to the extent any provision in any document restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the transactions contemplated under the Plan (including any "change of control" provision), then such provision is deemed modified such that the transactions contemplated by the Plan shall not entitle any party to terminate such document or exercise any default-related rights with respect thereto.

## XXX.  Substantial Consummation

64.     Substantial consummation of the Plan under section 1101(2) of the Bankruptcy Code shall be deemed to occur on the Effective Date.

## XXXI. Separate Plans.

65.     The Plan is a separate Plan for each of the Debtors.  Accordingly, the provisions of the Plan, including the definitions and distributions to creditors and equity interest holders, shall apply to the respective assets of, Claims against, and Interests in, each Debtor's separate Estate.

## XXXII.        Exemption from Certain Transfer Taxes and Fees

66.        To the maximum extent permitted by section 1146 of the Bankruptcy Code, any post-confirmation (a) issuance, transfer or exchange of any securities, instruments or documents, (b) creation of any Lien, mortgage, deed of trust or other security interest, (c) sale transactions consummated by the Debtors and approved by the Bankruptcy Court, including any transfers effectuated under the Plan, (d) assumption, assignment, or sale by the Debtors of their interests in unexpired leases of nonresidential real property or executory contracts pursuant to section 365(a) of the Bankruptcy Code, (e) grant of collateral under the Exit Take Back Debt Agreement, and (f) issuance, renewal, modification or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including this Order, shall not be subject to any document recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, sales tax, use tax or other similar tax or governmental assessment.  Consistent with the foregoing, to the maximum extent permitted by section 1146 of the Bankruptcy Code, each recorder of deeds or similar official for any county, city or Governmental Unit in which any instrument under the Plan is to be recorded shall, pursuant to this Order, be ordered and directed to accept such instrument without requiring the payment of any filing fees, documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax or similar tax.

## XXXIII.        Reversal

67.        If any or all of the provisions of this Order are hereafter reversed, modified, or vacated by subsequent order of the Bankruptcy Court or any other court, such reversal, modification or vacatur shall not affect the validity or enforceability of the acts or obligations incurred or undertaken under or in connection with the Plan prior to the Debtors' receipt of

written notice of such order.  Notwithstanding any such reversal, modification, or vacatur of this Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Order prior to the effective date of such reversal, modification, or vacatur shall be governed in all respects by the provisions of this Order and the Plan and all related documents or any amendments or modifications thereto.

**XXXIV.    Waiver of Section 341(a) Meeting and Filing of SOFAs and Schedules and Rule 2015.3 Reports**

68.    Notwithstanding anything to the contrary in this Order, the Plan, the Scheduling Order, any other order by the Bankruptcy Court or any other filings or pleadings made in the Chapter 11 Cases, the requirement that the U.S. Trustee convene a meeting of creditors pursuant to section 341(a) of the Bankruptcy Code is hereby waived and, in accordance with the Scheduling Order, the requirement that the Debtors file SOFAs and Schedules and Rule 2015.3 Reports (each as defined in the Scheduling Order) is permanently excused.

**XXXV.    This Order Controlling**

69.    If there is any conflict between the Plan, the Plan Supplement, any order of the Bankruptcy Court entered prior to the date hereof, or any other instrument or document contemplated by the Plan, on the one hand, and this Order, on the other hand, the terms of this Order shall control.

Dated:  January 5, 2021

Brendan Linehan Shannon
United States Bankruptcy Judge